## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MY THI NHU TRAN, ET AL.                                    CIVIL ACTION

VERSUS                                                     NO. 24-1933

GULF COAST BANK & TRUST CO., ET AL.                        SECTION: D(1)

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Leave to File Supplemental Materials in Support of Their Pending Motion for Reconsideration Under Rule 54(b) and Plaintiffs' Motion for Reconsideration under Rule 54(b), both filed by Plaintiffs My Thi Nhu Tran and Tung Duc Vo ("Plaintiffs").[1] Defendants Gulf Coast Bank & Trust Company, Rance Mangipano, Nga Baird, New World Realty, LLC, Trieu Law, LLC, Lloyd & Taylor Mortgage, LLC, and Samantha Tuyet Nguyen Tran (collectively, "Defendants") have filed responses in opposition.[2] Plaintiffs have filed a Reply as to the Motion for Leave to File Supplemental Materials.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Motions are **DENIED**.

### I.    FACTUAL BACKGROUND[4]

This case arises out of an alleged mortgage lending scheme orchestrated by Defendants against Plaintiffs.  In 2020, Plaintiffs, who are Vietnamese immigrants

---

[1] R. Doc. 185; R. Doc. 155.
[2] R. Doc. 199; R. Doc. 159.
[3] R. Doc. 203.
[4] For context, the Court incorporates the factual background from the prior Order and Reasons. (R. Doc. 145).

with limited English proficiency, began the process of buying a home.[5]  Throughout this process, Plaintiffs worked with Nga Baird, through her company, New World Realty, LLC, as their realtor;[6] Samantha Tuyet Nguyen Tran, through her company, Lloyd & Taylor Mortgage, LLC, as their mortgage broker;[7] Trieu Law, LLC as their closing agent;[8] Gulf Coast Bank & Trust Co. as their bank;[9] and Rance Mangipano of Gulf Coast Bank & Trust Co. as their loan officer.[10]  Broadly speaking, Plaintiffs allege that Defendants defrauded Plaintiffs by deceiving them into signing a loan with terms far less favorable than those explained to and agreed upon by Plaintiffs. To execute the fraud, Plaintiffs allege that Defendants forged documents, created a sham LLC, and failed to translate documents for Plaintiffs.[11]

On August 2, 2024, Plaintiffs filed suit in this Court, alleging violations of Truth in Lending Act, 15 U.S.C. § 1601; the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1961; the Louisiana Racketeering Act, La. R.S. § 1353; and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*. Plaintiffs further raise claims for annulment, fraud, breach of contract, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy.[12]

---

[5] R. Doc. 61 at ¶ 16.  The operative complaint in this matter is the Fourth Amended Complaint, and it is the only iteration that the Court considers.
[6] *Id*. at ¶¶ 13-14.
[7] *Id*. at ¶¶ 10-11.
[8] *Id*. at ¶ 12.
[9] *Id*. at ¶ 8.
[10] *Id*. at ¶ 9.
[11] *Id*. at ¶¶ 44-45.
[12] R. Doc. 61.

On April 23, 2025, the parties attended a settlement conference with the then-assigned Magistrate Judge.[13]  On May 19, 2025, Plaintiffs filed a Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d), in which they explain that they "seek to supplement their Fourth Amended Complaint to add factual allegations and derivative causes of action arising from a judicially-supervised settlement conference held on April 23, 2025."[14]

### A. Plaintiffs' Motion for Reconsideration

The Court issued an Order and Reasons on July 10, 2025 denying Plaintiffs' Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d).[15]  In response to that Order, Plaintiffs have filed the present Motion, which seeks reconsideration of that Order.[16] Plaintiffs argue that reconsideration is warranted because the challenged ruling "rests on legal premises that are inconsistent with governing precedent and procedural posture."[17] They assert that they have pled facts sufficient to support a claim under: (1) 42 U.S.C. § 3617 because Defendants "renewed foreclosure threat in a coercive and institutionally-channeled manner intended to pressure abandonment of protected housing claims;" (2) 42 U.S.C. §1983 because Defendants allege "a form of joint action in which private Defendants simulated the authority of Louisiana foreclosure law in a judicial setting, thereby invoking the coercive power of the state without triggering its procedural safeguards;" and  (3) 42

---

[13] R. Doc. 98. To be clear, the parties agreed to proceed with a Settlement Conference with the Magistrate Judge in an effort to amicably resolve the matter early in the case.
[14] R. Doc. 119-2 at 2.
[15] R. Doc. 145.
[16] R. Doc. 155.
[17] R. Doc. 155-1 at p. 2.

U.S.C. §1985 and 1986 because Plaintiffs contend that they presented "plausible allegations of a coordinated attempt to deter litigation by threat of economic loss, delivered during a federal proceeding, and unsupported by valid legal authority."[18]

Defendants respond that Plaintiffs' Motion "identifies no factual, legal, or procedural basis to disturb the Court's July 10, 2025 Order and Reasons, and should therefore be denied."[19] They argue that "Plaintiffs' § 3617 and §§ 1985–1986 claims lack[ ] facts linking Defendants' lawful settlement conduct to actionable retaliation or conspiracy" and that Plaintiffs' proposed claim under §1983 must fail as a matter of law because they fail to allege state action—or even joint action with a state official.[20]

**B. Plaintiffs' Motion for Leave to File Supplemental Materials**

On November 17, 2025, Plaintiffs filed a Motion for Leave to File Supplemental Materials in Support of Their Pending Motion for Reconsideration under Rule 54(b).[21] Plaintiffs seek to supplement their Memorandum regarding the instant Motion for Reconsideration with "several material facts developed for the first time through discovery…that alter the factual foundation of the April 23, 2025, settlement conference ultimatum" because "the newly developed evidence bears directly on the issues raised in the pending Rule 54(b) motion and materially affects the Court's evaluation of Plaintiffs' claims under 42 U.S.C. §§ 3617, 1983, 1985(2), and 1986."[22]

---

[18] *Id.*
[19] R. Doc. 159 at p. 1.
[20] *Id.* at p. 2.
[21] R. Doc. 185.
[22] *Id.* at pp. 2-3.

The newly developed facts, according to Plaintiffs, include testimony from Defendant Rance Mangipano "that he did not attend the settlement conference, was unaware an ultimatum was being issued in his name, and did not authorize anyone to speak for him," discovery of "a twenty-one-year referral pipeline between Gulf Coast Bank/Mangipano and Lloyd & Taylor Mortgage/Samantha Tuyet Nguyen Tran," alleged contradictions between Rance Mangipano's discovery responses and his testimony, and "the events surrounding Ms. Tran's August 29, 2025 deposition."[23] Plaintiffs contend that this evidence strengthens the Fair Housing Act claim under Section 3617, strengthens their claim under Section 1983, supports a "plausible claim" under Section 1985(2), and revives its claim under Section 1986.[24]

Defendants respond that the "proposed supplemental memorandum does not address the deficiencies identified in the order and presents a distorted picture of the discovery in this case."[25] They argue that the deposition of an individual defendant—Rance Mangipano—does not support the claims Plaintiffs seek to add and that the information relied upon by Plaintiffs is not new as Plaintiffs and counsel met in joint session at the start of the Settlement Conference and was aware of all attendees, including counsel for Mr. Mangipano.[26] Furthermore, they contend that the deposition of Plaintiff My Tran does not support reconsideration because Plaintiffs' contentions about the deposition "comprise a list of grievances with no unifying

---

[23] R. Doc. 203 at p. 2.
[24] R. Doc. 185-1.
[25] R. Doc. 199 at p. 2.
[26] *Id*. at p. 5.

theme."[27] Lastly, Defendants state that the information Plaintiffs seek to add to their Motion for Reconsideration does not "cure the defects in their proposed supplemental claims" because (1) Plaintiffs fail to allege facts as to causation for their Fair Housing Act claim, (2)Plaintiffs fail to allege facts that demonstrate that Defendants acted under color of state law, and (3) the facts fail to cure deficiencies in Plaintiffs' proposed Section 1985(2) claim.[28]

Plaintiffs reply that the new evidence with which it seeks to supplement its briefing are new and relate to the "falsity of the ultimatum's asserted source" during the settlement conference and evidence that "bears directly on the dynamics of the ultimatum."[29] Plaintiffs argue (1) that the alleged "[f]abricated unanimity artificially magnifies coercive force and directly affects the Court's causation analysis" of the proposed Fair Housing Act claim, (2) that the supplemental evidence demonstrates that the Defendants "leveraged, simulated, or misused state authority in a manner inextricably intertwined with judicial machinery," and (3) that "supplemental evidence shows a coordinated pattern of conduct undertaken under a Joint Defense Agreement."[30]

## II.    LEGAL STANDARD

### A.    Motion for Leave to Supplement

Plaintiffs seeks leave to file supplemental materials in support of their pending Motion for Reconsideration under Rule 54(b).  Plaintiffs summarily contend that

---

[27] *Id*. at p. 7.
[28] *Id*. at pp. 7-10.
[29] R. Doc. 203 at p. 2.
[30] *Id*. at pp. 3-6.

"District courts possess broad discretion under Rule 54(b) and their inherent authority to consider supplemental materials before ruling on interlocutory motions . . ."[31] Plaintiffs cite Fifth Circuit authority they believe supports their request which provides that Rule 54(b) gives courts the power to revise an order in light of "additional evidence" or "changed circumstances."[32] While the Fifth Circuit has made clear that district courts have discretion in determining whether to grant leave to supplement argument and evidence,[33] it is unclear what standard should apply in exercising that discretion. The Court takes into consideration the good cause analysis applicable when determining whether a Scheduling Order deadline may be modified under Fed. R. Civ. P. 16(b)(4), which requires the Court to consider: (1) the movant's explanation for failing to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice.[34]

### B.    Motion for Reconsideration

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

---

[31] R. Doc. 185 at p. 2.

[32] *Id.,* quoting *McKay v. Novartis Pharm. Corp.*, 751 F. 3d 694, 701 (5th Cir. 2014).

[33] *See Snapt Inc. v. Ellipse Communications Inc.*, 430 Fed.Appx. 346, 353 (5th Cir. 2011) ("We consider the denial of Snapt's motion for leave to supplement its summary judgment evidence for an abuse of discretion.").

[34] Fed. R. Civ. P. 16(b)(4).

liabilities."[35]  "It is a well-established rule of trial procedure that a district court may reconsider and reverse a previous interlocutory order at its discretion."[36]

Unlike the high burden placed on parties seeking reconsideration of a judgment under Rule 59(e), under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[37]  Still, the broad authority to reconsider an interlocutory order under Rule 54(b) "must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays."[38]

## III.  ANALYSIS

### A.  Plaintiffs' Motion for Leave to File Supplemental Materials in Support of Their Pending Motion for Reconsideration under Rule 54(b)

Before beginning its analysis on Plaintiffs' Motion for Reconsideration, the Court addresses Plaintiffs' Motion for Leave to File Supplemental Materials. Plaintiffs make clear that they are not providing the Court with any new law; instead Plaintiffs allege "new facts" as detailed above.  While Plaintiffs attached as exhibits discovery responses,  they did not provide any deposition testimony alluded to in their Motion. Instead, Plaintiffs attached a Declaration by Plaintiffs' Counsel as to the deposition testimony.[39] Since Plaintiffs contend that Mr. Mangipano's deposition did

---

[35] FED. R. CIV. P. 54(b).
[36] *Holoway v. Triola*, 172 F.3d 866, at *1 (5th Cir. 1999) (per curiam).
[37] *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).
[38] *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 564–65 (E.D. La. 2013) (citing 18B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 4478.1 (2d ed. 2002)).
[39] *See* R. Doc. 185-5.

not take place until November 13, 2025, the Court understands the explanation for the late request. That factor falls in favor of granting the Motion for Leave. It is after consideration of the other factors, and primarily the importance, or lack thereof, of the supplemental materials that leads the Court to deny Plaintiffs' Motion for Leave. Having reviewed Plaintiffs' brief and the supporting documentation in detail, and for the reasons set forth further in this Order and Reasons as to each of the claims, Plaintiffs' "new facts" fail to move the needle in the Court's determination of whether it should exercise its discretion to reconsider its previous Order and Reasons.[40] Having determined that the "new facts" to do not lend any support to Plaintiffs' new claims, the Court finds that consideration of this factor, the importance of the requested relief, falls in favor of denying the motion. Further, the Court recognizes that the Defendants have asked to file a response if the Court were to allow the supplemental materials. Thus, Defendants would be prejudiced by allowing the supplemental materials without affording them that opportunity. The Court issued its Order and Reasons on Plaintiff's Motion to file their Fifth Amended Pleading on July 10, 2025.[41] To allow for additional supplemental briefing at this time would further delay the proceedings and be an invitation to revisit each of the Court's orders.[42] Finally, the Court recently granted the parties' Consent Motion to Extend Deadlines and Continue Trial Date.[43] It declines to delay the matter further by

---

[40] R. Doc. 145.
[41] *Id.*
[42] Also pending before the Court is Plaintiffs' Motion for Appeal/Review of the Magistrate Judge's Decision. R. Doc. 204.
[43] R. Doc. 190.

granting further continuances for additional briefing on this matter. Having considered all of these factors, the Court denies Plaintiffs request to supplement their Motion.

## B.    Plaintiffs' Motion for Reconsideration under Rule 54(b)

As explained in the Court's prior Order and Reasons,[44] in considering a motion to file a supplemental complaint under Rule 15(d), courts consider the following factors: whether the amended pleading would cause undue delay in the proceedings or undue prejudice to the nonmoving party; whether the moving party is acting in bad faith or with a dilatory motive; whether the moving party has previously failed to cure deficiencies by prior pleadings; and whether the proposed pleading is futile.[45]

The most applicable obstacle to Plaintiffs' proposed supplemental allegations and causes of action is futility. A supplemental pleading is futile if it would fail to survive a Rule 12(b)(6) motion.[46] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[47]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[48]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[49]

---

[44] R. Doc. 145.

[45] *See Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983).

[46] *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 379 (5th Cir. 2014) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[48] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted).

[49] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

The court must accept all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[50]  The court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[51] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[52] "Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given."[53]

Plaintiffs sought in their original motion to supplement their Fourth Amended Complaint to add causes of action arising from the parties' April 23, 2025 settlement conference. After a subsequent careful review of the proposed supplemental complaint, the Court, again, finds only four factual allegations as to the wrongful conduct of Defendants:

6.  The Defendants, including Gulf Coast Bank & Trust Company, Lloyd & Taylor Mortgage LLC, Trieu Law LLC, New World Realty LLC, and their counsel, collectively presented a single proposal involving a refinancing of the underlying mortgage loan.  The proposal was materially identical to one previously offered and rejected by Plaintiffs prior to litigation.

8.  As of the April 23, 2025, settlement conference—and as of the date of this filing—no foreclosure action has been initiated by Gulf Coast Bank & Trust Company or any other Defendant. The threat of foreclosure was presented as an immediate and uncontested consequence despite the absence of any formal legal proceeding or pleading seeking such relief.

9.  Several insurers representing the Defendants, including representatives of CAN (Trieu Law's insurer) and RISC (insurer or administrator of New World Realty and/or Nga Baird), were present or participated in the settlement

---

[50] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[51] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[52] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[53] *Simmons v. Sabine River Auth. of La.*, 732 F.3d 469, 478 (5th Cir. 2013) (quoting *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980), abrogated on other grounds by *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 n.33 (1983)) (internal quotations omitted).

conference. A compliance officer for Gulf Coast Bank & Trust Company also attended the proceeding. These individuals supported the single refinancing proposal despite having no independent authority to initiate foreclosure or negotiate refinancing terms. Their presence and participation reinforced the appearance of a unified and enforceable settlement posture backed by legal authority and institutional coordination.

10. At no point did Defendant disclose the existence of a joint defense agreement, common interest arrangement, or coordinated settlement strategy. Nonetheless, all Defendants—including attorneys, corporate representatives, and insurer participants—presented a single unified refinancing proposal with no variation, qualification, or individual negotiation. The proposal was offered collectively and supported by every Defendant, regardless of their distinct roles or lack of foreclosure authority. Plaintiffs were not advised of any formal agreement or shared defense posture among Defendants, nor was any such alignment disclosed to the Court.[54]

These allegations, when reviewed together, suggest that Plaintiffs felt pressured by threat of foreclosure to accept a joint settlement offer proposed by Defendants. Plaintiffs did not accept the settlement offer. Plaintiffs allege that this conduct violated 42 U.S.C. §§ 3617, 1983, 1985(2), and 1986, as well as 18 U.S.C. § 1962(d). Here, Plaintiffs ask for reconsideration of the claims made under 42 U.S.C. §§ 3617, 1983, 1985(2), and 1986.[55] The Court will examine the viability of each claim:

### 1. Whether reconsideration is warranted of the Court's prior determination that Plaintiffs did not plead sufficient facts to support a claim under 42 U.S.C. § 3617.

Plaintiffs argue that reconsideration of the Court's prior Order and Reasons as to this claim is warranted as "Plaintiffs have alleged more than a routine negotiation misfire: they have described a judicially supervised act of coercion carried out by

---

[54] R. Doc. 119-1 at ¶¶ 6, 8-10. To the extent Plaintiffs make additional factual allegations under the specific causes of action they attempt to supplement, those allegations are essentially reworded versions of the above-cited allegations.
[55] R. Doc. 155.

multiple Defendants lacking foreclosure authority, invoking a remedy they knew to be legally void."[56] Plaintiffs reassert that their supplemental allegations support a claim for retaliation under the FHA. They contend that they should be allowed to supplement their Complaint with allegations from the April 23, 2025 settlement conference because the conference "was procedurally rigged to isolate and pressure [Plaintiffs], eliminate meaningful legal participation, and extract their surrender through a coordinated institutional message – submit to refinancing or face foreclosure."[57] Plaintiffs further assert that "[t]his conduct, although framed as settlement, was in substance a litigation-based act of housing coercion."[58] In support of their Motion, Plaintiffs cite two out-of-circuit district court opinions[59] regarding Section 3617 and urge that these cases "have affirmed that § 3617 reaches even subtle, procedural, or institutionally enabled tactics that chill the exercise of housing rights."[60]

Section 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."[61] "Under its terms, the statute protects . . . . members of the protected class from coercion, intimidation, threats, or

---

[56] R. Doc. 155-1 at p. 3.
[57] R. Doc. 155-1 at p. 5.
[58] *Id.*
[59] *Nevels v. W. World Ins. Co.,* 359 F. Supp. 2d 1110 (W.D. Wash. 2004); *Connolly v. Lanham*, 685 F. Supp. 3d 312 (D. Md. 2023).
[60] R. Doc. 155-1 at pp. 5-6.
[61] 42 U.S.C. § 3617.

interference in the exercise or enjoyment of their Fair Housing Act rights."[62] Retaliation claims under the FHA are analyzed under the same framework as claims brought pursuant to Title VII.[63]  Under this framework, Plaintiffs must allege (1) that they were engaged in an activity protected by the FHA; (2) that Defendants took an adverse action against them; and (3) that a causal connection existed between the protected activity and the adverse action.[64]  Then, the burden switches to Defendants to "articulate a legitimate, nondiscriminatory reason for the challenged action."[65]

On reconsideration, Plaintiffs, again, cannot meet the requirements of pleading a violation of Section 3617.[66] Even accepting, for purposes of this analysis, Plaintiffs' assertion of the protected activity as the assertion of federal housing rights via filing the instant suit, Plaintiffs  fail to address the key deficiency that the Court identified with its proposed supplemental pleadings—that Plaintiffs allege no causal connection between the protected activity and the adverse action.[67] Plaintiffs, again, only allege that "Defendants' conduct . . . constituted interference, coercion, intimidation, and retaliation in violation of 42 U.S.C. § 3617."[68]  Plaintiffs do not allege that there was a causal nexus between the protected activity—asserting federal housing rights via litigation—and the adverse action—the threat of

---

[62] *Frazier v. Rominger*, 27 F.3d 828, 833 (2d Cir. 1994).

[63] *Osborne v. Belton*, No. 20-CV-208, 2022 WL 3093765, at *6 (W.D. La. Aug. 3, 2022) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)).

[64] *Chavez v. Aber*, 122 F.Supp.3d 581, 599 (W.D. Tex. 2015).

[65] *Id.* (quoting *Grimes v. Tex. Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)) (brackets omitted).

[66] The Court finds it unnecessary to make this determination as to these first two factors based on its finding, as indicated further, that Plaintiffs have failed to meet the third factor.

[67] R. Doc. 155-1 at p. 3; R. Doc. 145 at p. 10.

[68] R. Doc. 119-1 at ¶ 25.

foreclosure. Such an allegation is insufficient to state a claim or a necessary element of a claim; to pass Rule 12(b)(6) muster, "a plaintiff must plead specific facts, not mere conclusory allegations."[69] The out-of-circuit district court cases upon which Plaintiffs rely—*Nevels* and *Connolly*—are not applicable to the present case because neither considers a situation wherein a plaintiff has failed to plead the necessary element of causation or has been relieved of pleading that element in a claim under Section 3617. The decision in *Connolly* even acknowledges that causation is a necessary element to state a claim under the statute.[70] Because Plaintiffs have failed to allege any facts as to causation, Plaintiffs have failed to state a claim for retaliation under § 3617.[71] The Court declines to reconsider its prior Order on this basis.

---

[69] *Tuchman v. DCS Commc'n Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)) (citation modified).

[70] *See Connolly v. Lanham*, 685 F. Supp. 3d 312, 328–29 (D. Md. 2023).

[71] Even if the Court had allowed and considered Plaintiffs' proposed supplemental briefing and exhibits, its analysis and determination that reconsideration was not warranted as to this claim would not have changed.  Nothing in that supplemental material contains any facts or law that alter the Court's analysis of the cognizability of the claim under Section 3617. Plaintiffs argue their "new facts" are that Mangipano testified in his deposition that he did not attend the Settlement Conference and did not give authority for anyone to speak for him. Plaintiffs further allege "new facts" that Gulf Coast Bank and Lloyd & Taylor Mortgage/Samantha Nguyen Tran had a business relationship for over 20 years which, Plaintiffs allege, contradicts assurances from the Magistrate Judge that the business relationship was minimal. R. Doc. 185. Defendants counter that plaintiffs and their counsel were well aware of who attended the settlement conference as they appeared together for a joint session at the start of the conference. Further, defendants remind council that Mr. Mangipano was represented by counsel at the settlement conference. As to any comments regarding the business relationship between Gulf Coast Bank and Lloyd & Taylor Mortgage/Samantha Nguyen Tran, Defendants emphasize the lack of any basis to attribute comments in private discussion during a settlement conference made by the Magistrate Judge to the defendants. R. Doc. 199 at pp. 5-6. There are no "new facts" either in the record or in the supplemental briefing that Plaintiffs' seek to add that allege that the threat of foreclosure was caused by the assertion of federal housing rights in the present suit, again assuming for the purposes of this analysis that such action is protected activity under the Fair Housing Act.

> **2. Whether reconsideration is warranted of the Court's prior determination that Plaintiffs did not plead sufficient facts to support a claim under 42 U.S.C. § 1983.**

Next, Plaintiffs ask the Court to reconsider its order on its § 1983 claim. Plaintiffs' theory of liability under Section 1983 is that "defendants leveraged the threat of that process – knowing it was both premature and legally untenable – in a setting that rendered the threat procedurally uncontestable."[72] Plaintiffs argue that private actors may be found liable under Section 1983 when they participate willfully with a state official in a joint action and that, in this case, the private actors' actions were "closely intertwined with the authority of the state, such that it may be 'fairly attributable' to the state itself."[73] Defendants respond that the Court properly found that the claim was futile because it alleged no state action.[74]

As stated in the prior Order, and recognized by Plaintiffs,[75] "Section 1983 provides a claim against anyone who, under color of state law, deprives another of his or her constitutional rights."[76] Thus, the two essential elements of a § 1983 claim are: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.[77]

Here, Plaintiffs again on reconsideration fail to meet either factor because they have failed to identify any person acting under color of state law and, further, have

---

[72] R. Doc. 155-1 at p. 9.
[73] *Id*. at p. 10.
[74] R. Doc. 159 at p. 1.
[75] *See* R. Doc. 155-1 at p. 9.
[76] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (quoting § 1983) (internal quotations omitted).
[77] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

failed to allege deprivation of any right. As the Court previously noted, the Fifth Circuit has held that merely pursuing a state action, specifically a foreclosure action, does not amount to acting under color of state law.[78] Furthermore, even to the extent that a private person can be held liable under Section 1983, the person "must be a person who may fairly be said to be a state actor."[79] Such an individual could be considered a state actor "either because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."[80] Plaintiffs' reliance on *Daniel* and *Lugar*, here, is misplaced, because there is no allegation that the parties involved are (a) state actors, (b) acted together with or obtained significant aid from state actors, or (c) acted in a way that their conduct is chargeable to the state. Even *McCartney v. First City Bank*, upon which Plaintiffs rely, requires the allegation of participation in a joint action with state official.[81] None is present here. Plaintiffs simply argue, again, that Defendants, in renewing the potential of foreclosure, in a settlement conference, thus invoking "the threatened power of Louisiana's judicial foreclosure apparatus as if it were a foregone conclusion—exploiting its authority without initiating process, and doing so in a federal court setting that reinforced its force."[82] Notedly, Plaintiffs' arguments are almost verbatim recitation of the Proposed Supplemental Complaint which was the subject of the Court's prior Order and Reasons.[83] Plaintiffs raise no

---

[78] *Earnest v. Lowentritt*, 690 F.2d 1198, 1201 (5th Cir. 1982).
[79] *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988).
[80] *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 923, 102 S. Ct. 2744, 2746, 73 L. Ed. 2d 482 (1982).
[81] 970 F.2d 45, 47-48 (5th Cir. 1992).
[82] R. Doc. 155-1 at p. 10.
[83] *See* R. Doc. 119-1 at ¶ 32.

new factual basis or Fifth Circuit authority warranted reconsideration of the Court's previous Order and Reasons.[84] The Court declines to reconsider its order regarding the claim under 42 U.S.C. § 1983.

> **3. Whether reconsideration is warranted of the Court's prior determination that Plaintiffs did not plead sufficient facts to support a claim under 42 U.S.C. §§ 1985, 1986.**

The Court now turns to Plaintiffs' claims under 42 U.S.C. §§ 1985(2) and 1986. Plaintiffs request that the Court reconsider its ruling because they consider the Court's denial "premature at the pleading stage and based on an unduly narrow interpretation of the statute."[85] Plaintiffs argue that the Court should reconsider its Order and that the supplementation should be allowed because

> all defendants jointly participated in a judicially supervised settlement event, during which they presented a non-negotiable foreclosure threat as the exclusive path to resolution – despite knowing the underlying instruments were void and unenforceable, and with the effect of pressuring Plaintiffs to abandon their claims. The unified nature of this pressure, its timing within active federal litigation, and the structural conditions of the conference together support a plausible inference of conspiratorial intent to interfere with Plaintiffs' access to court. That is sufficient to state a claim under § 1985(2).[86]

---

[84] Even if the Court had allowed and considered Plaintiffs' proposed supplemental briefing and exhibits, its analysis and determination that reconsideration was not warranted as to this claim would not have changed. Plaintiffs argue that Mr. Mangipano testified in his deposition that he did not attend the settlement conference did not authorize any person to speak in his name. Therefore, Plaintiffs argue that "the ultimatum that was presented to plaintiffs as a unified directive of all institutional actors when, in fact, one of the primary institutional figures had no knowledge of it. The coercive force attributed to Mangipano's supposed involvement was therefore a fabrication created within a judicial proceeding." R. Doc. 185-1 at p. 2. Defendants point out that Plaintiffs were always aware of the Settlement Conference attendees as all of the parties met together at the start of the conference. Defendants further advise that Plaintiffs were aware that Mr. Mangipano was represented by counsel at the Settlement Conference. R. Doc. 199 at p. 5. Plaintiffs reply that Mangipano's "institutional authority was being deployed without his knowledge. The falsity of the ultimatum's asserted source is the new fact." R. Doc. 203 at p.2. Plaintiffs "new fact" fails to allege joint action with a state official, as required under Section 1983.

[85] R. Doc. 155-1 at p. 11.

[86] *Id.* at p. 12.

Defendants respond that the Plaintiffs' request for reconsideration "merely reasserts the same arguments the Court has already rejected—precisely the kind of repetitive argument that warrants denial."[87]

> Section 1985(2) provides:
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror . . . .[88]

To state a cause of action under § 1985, Plaintiffs must allege: (1) a conspiracy; (2) to deter a witness or litigant by force, intimidation, or threat from attending federal court or testifying; and (3) an injury.[89]  Section 1985(2) "has been read by the Supreme Court as protecting any party, witness, or juror from intimidation, regardless of any racial animus on the part of the defendant, and as encompassing claims of pure economic loss."[90]  The Fifth Circuit has explained that the statute

> [D]oes not create liability for every adverse action taken against a witness after the witness testifies in a federal case.  In addition to the requirement that there be a cognizable injury to the witness or his property . . . , the statute itself contains another limiting principle: the conspirator must threaten or injure the witness 'on account of his having so attended or testified'—that is, because of, and by reason of, a person's participation of a witness.[91]

---

[87] R. Doc. 159 at p. 2.
[88] 42 U.S.C. § 1985(2).
[89] *Mitchell v. Johnson*, No. 07-CV-40996, 2008 WL 3244283, at *2 (5th Cir. Aug. 8, 2008) (quoting *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988)).
[90] *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Kush v. Rutledge*, 460 U.S. 719, 723-27 (1983) and *Kinney v. Weaver*, 367 F.3d 337, 353 (5th Cir. 2004)).
[91] *Kinney*, 367 F.3d at 355.

"The same logic limits liability for adverse actions taken against parties and witnesses who have not yet testified in the proceeding: in that case, the conspirator must injure the party or witness *in order to* deter him from attending or testifying in federal court."[92]  A viable § 1985 claim is a prerequisite for bringing a claim under §1986, which penalizes a party's failure to act to prevent a conspiracy under § 1985.[93]

In their present motion, Plaintiffs argue that the Fifth Circuit's holding in *Montoya* effectively expands the scope of Section 1985 to permit claims from a settlement conference.[94] The Court remains skeptical "that the law has been expanded so far as to deem settlement negotiations subject claims arising under § 1985(2)."[95] It is a dubious proposition that the proposal to abandon a claim in return for something of value during a settlement conference can rise to the level of "cognizable injury" required to plead a cause of action under Section 1985. No case law has been cited, and the Court has not found any precedent that demonstrates that the Fifth Circuit has expanded its interpretation of Section 1985 to such a degree.[96] Reconsideration is denied.

Plaintiffs request, in the alternative, that they be given leave to amend their supplementation rather than a denial of reconsideration. The Court previously

---

[92] *Montoya*, 614 F.3d at 150.
[93] *See Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998) ("If the § 1985 claim fails, so must the § 1986 claim.") (citing § 1986).
[94] R. Doc. 155 at p. 12.
[95] R. Doc. 145 at p. 16.
[96] Because the Court finds that Plaintiffs' theory of liability is not cognizable under Section 1985, any "new facts" provided by Plaintiffs in their Motion for Leave to file Supplemental Materials fail to support such a theory, even if it had been allowed and considered by the Court, does not affect the Court's analysis. *See* R. Doc. 185-1 at p. 7.

detailed in its Order and Reasons its basis for finding why amendment would be futile.[97] The Court must "freely give leave [to amend] when justice so requires."[98] However, denying leave to amend "is not an abuse of discretion if allowing an amendment would be futile."[99] As the Fifth Circuit has advised, "Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given."[100] Here, because the Plaintiffs cannot demonstrate that Section 1985 permits claims arising out of alleged conduct at a settlement conference with a federal judge. The Court finds that Fifth Circuit precedent forecloses a claim under Section 1985 as a matter of law and thus that leave to amend would be futile.[101] Finally, the Court contends that allowing this supplemental pleading would indeed prejudice Defendants in trial preparation.  Further, allowing the supplemental pleading would cause undue prejudice and chill defendants from candid conversations with Plaintiffs' counsel during any future settlement discussions to amicably resolve the matter as the case proceeds.

---

[97] R. Doc.145.

[98] Fed. R. Civ. P. 15(a).

[99] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

[100] *Simmons v. Sabine River Auth. of La.*, 732 F.3d 469, 478 (5th Cir. 2013) (quoting *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980), abrogated on other grounds by *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 n.33 (1983)) (internal quotations omitted).

[101] The Court further notes that Plaintiffs have previously been granted leave to file Amended Complaints, resulting in Four Amended Complaints, and thus has had numerous opportunities to plead their best case. While Plaintiffs contend that the newest iteration rests on facts which occurred after the Fourth Amended Complaint, for the reasons previously stated, the Court finds the claims not cognizable. *See* R. Doc. 1, R. Doc. 4, R. Doc. 19, R. Doc. 44, R. Doc. 57, R. Doc. 58, Ro Doc. 60, R. Doc. 61.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Materials in Support of Their Pending Motion for Reconsideration under Rule 54(b)[102] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Reconsideration under Rule 54(b)[103] is **DENIED.**

New Orleans, Louisiana, February 4, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[102] R. Doc. 185.
[103] R. Doc. 155.