## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MY THI NHU TRAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1933** |
| **GULF COAST BANK & TRUST CO., ET AL.** | **SECTION: D(5)** |

### ORDER AND REASONS

Before the Court are three Motions to Dismiss: the first is filed by Lloyd & Taylor, LLC and Samantha Tuyet Nguyen Tran,[1] the second is filed by Nga Baird and New World Realty, LLC,[2] and the third is filed by Trieu Law, LLC.[3] Plaintiffs My Thi Nhu Tran and Tung Duc Vo oppose each Motion.[4] Lloyd & Taylor, LLC, and Samantha Tuyet Nguyen Tran[5] and Nga Baird and New World Realty, LLC,[6] have filed replies. Plaintiffs have filed a sur-reply as to Baird and New World Realty's Motion.[7]

Before the Court is also the remaining portion Plaintiffs' Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d) as it pertains to the RICO claim.[8] Defendants Nga Baird, New World Realty, LLC, Trieu Law, LLC, Lloyd & Taylor Mortgage, LLC, and Samantha Tuyet Nguyen Tran (collectively, "Defendants") oppose the Motion.[9] Plaintiffs filed a reply.[10] After careful

---

[1] R. Doc. 64.
[2] R. Doc. 65.
[3] R. Doc. 77.
[4] R. Docs. 75, 76, and 82.
[5] R. Doc. 80.
[6] R. Doc. 81.
[7] R. Doc. 153.
[8] R. Doc. 119.
[9] R. Doc. 122.
[10] R. Doc. 123.

consideration of the parties' memoranda, the record, and the applicable law, the Defendants' Motions to Dismiss are **GRANTED in part** and **DENIED in part**. The remaining portion of the Motion for Leave to File Supplemental Complaint is **DENIED**.

## I.    FACTUAL BACKGROUND

This case arises out of an alleged home-loan scheme orchestrated by Defendants against the Plaintiffs.   In 2020, Plaintiffs,[11] who are Vietnamese immigrants with limited English proficiency (LEP), began the process of buying a home.[12]   Throughout this process, Plaintiffs worked with Nga Baird, through her company, New World Realty, LLC, as their realtor;[13] Samantha Tuyet Nguyen Tran, through her company, Lloyd & Taylor Mortgage, LLC, as their mortgage broker;[14] Trieu Law, LLC as their Closing Agent;[15] Gulf Coast Bank & Trust Co., as their Bank;[16] and Rance Mangipano of Gulf Coast Bank & Trust Co., as their loan officer.[17]

In October 2020, Plaintiffs found a home to purchase and began the process of applying for a residential loan to purchase the property.[18]   Plaintiffs allege that they

---

[11] From the Court's understanding, Plaintiffs were married when they purchased the home at issue in this case and have since either separated or formally divorced and as such, more recent facts pertaining to this case involve only Ms. Tran. For the sake of clarity, particularly since this case involves a defendant with the surname Tran, the Court will refer to Ms. Tran, Mr. Vo, or the both of them as "Plaintiffs."

[12] Unless otherwise indicated, the Factual Background is taken from Plaintiffs' Fourth Amended Complaint, R. Doc. 61 at ¶ 16.

[13] *Id.* at ¶¶ 13-14.   Ms. Baird and New World Realty, LLC will be referred to collectively as the "Realtor."

[14] *Id.* at ¶¶ 10-11.   Ms. Tran and Lloyd & Taylor Mortgage, LLC will be referred to collectively as the "Mortgage Broker."

[15] *Id.* at ¶ 12.   Trieu Law, LLC will be referred to as the "Closing Agent" or "Trieu."

[16] *Id.* at ¶ 8.

[17] *Id.* at ¶ 9.   Mr. Mangipano and Gulf Coast Bank & Trust Co. will be referred to collectively as the "Bank."

[18] *Id.* at ¶ 17.

"expressed their concern about Plaintiffs' substantial existing debts but Realtor assured them that the debts would pose no problem" but that "an interest rate higher than the current rate of 2.6% and a 25% down payment were required."[19]   The Mortgage Broker ultimately presented Mr. Vo, who was the only applicant on the loan, with a $160,500.00, 20-year loan, which carried a fixed 4.85% interest rate and a monthly payment of $1,054.38.[20]  Plaintiffs allege that the Mortgage Broker advised that Plaintiffs could refinance the loan for no charge.[21]  The Bank approved the loan by the end of October 2020, and Plaintiffs closed on the home on December 3, 2020.[22]  Present at the closing were the Plaintiffs, the sellers, Trieu, the Mortgage Broker, and another individual who Plaintiffs believe to be the sellers' realtor.[23]  Plaintiffs allege that they "signed a single document written in English" and that "[n]o documents were explained or translated to Plaintiffs in Vietnamese."[24]

Plaintiffs allege that "[i]n or about fall 2023, Ms. Tran heard from another client of [the Mortgage Broker] that the Bank would seize the Property if the Loan was not paid off in three years."[25]  Plaintiffs allege that the Realtor "confirmed that the Loan had to be refinanced after three years and that the refinancing fees would cost around $1,200.00."[26]  In November 2023, Plaintiffs contacted the Mortgage Broker to refinance the loan and were advised that it would cost approximately

---

[19] *Id.*
[20] *Id.* at ¶ 20.
[21] *Id.* at 19.
[22] *Id.* at ¶¶ 23-24. Plaintiffs allege that although the closing documents have a date of December 4, 2020, the closing actually occurred on December 3, 2020.  *Id.* at ¶ 24 n.6.
[23] *Id.* at ¶ 24.
[24] *Id.*
[25] *Id.* at ¶ 31.
[26] *Id.*

$5,000 to refinance.[27]  Dissuaded by such a high fee, Plaintiffs contacted the Bank in February 2024 to discuss refinancing through the Bank directly.[28]  The Bank denied Plaintiffs' application to refinance, however, due to insufficient income and repayment ability.[29]

Shortly after, Plaintiffs discovered that the Bank had debited $1,508.04 on January 24, 2024, and February 26, 2024, from Ms. Tran's account, without her knowledge or authorization.[30]  Plaintiffs went to The Mortgage Broker, who allegedly advised Plaintiffs that the increased payments were applied towards interest only.[31] The Mortgage Broker told Plaintiffs that she would communicate with the Bank and that the Bank would return the payments.[32]  Plaintiffs allege that this never happened.[33] Later, The Mortgage Broker advised Plaintiffs "to lower the principal by paying $2,000.00 so as to be able to refinance the Loan."[34]

Concerned about the Bank's unauthorized debiting of her account and its lack of communication with Plaintiffs, Plaintiffs opened a deposit account with another financial institution.[35]  The Mortgage Broker advised that a new bank had approved Plaintiffs' refinancing application and was willing to refinance Plaintiffs' loan with an interest rate of $6.499% for a 30-year term.[36]  Plaintiffs allege that the Mortgage

---

[27] *Id.* at ¶ 32.
[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶ 33.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at ¶ 35.
[36] *Id.* at ¶ 36. It is unclear from the Complaint whether Plaintiffs ever successfully refinanced.

Broker advised Plaintiffs that the Bank would withdraw $1,508.04 again in March and that the Bank attempted to withdraw this amount on March 24, 2024.[37] Plaintiffs allege that "[s]ince about February 2024, [the Mortgage Broker] attempted to facilitate [Plaintiffs'] monthly mortgage payments to [the Bank].  On or about March 12, 2024, [the Mortgage Broker] requested the login information—username and password—for [Plaintiffs'] new checking account to review the daily transactions. Plaintiff[s] declined to disclose the login information to [the Mortgage Broker]."[38]  In April 2024, Plaintiffs received a mortgage statement showing that the Bank, without authorization, retroactively reversed the February 27, 2024 payment Plaintiffs made to the principal and applied it towards interest only.[39]

Plaintiffs allege that in March 2024, Plaintiffs learned through their attorney that their 2020 mortgage contains different terms and conditions than what had been relayed to them by the Defendants.[40]  Plaintiffs learned that the borrower is listed as Tungmy LLC, which Plaintiffs allege is a fictitious company, that the loan is a commercial loan, and that the mortgage indicated that  the property was to be used as a rental property instead of a primary residence as Plaintiffs intended.[41]  Plaintiffs further allege that "the interest computation method 'was on a 365/360 basis resulting in a higher effective interest rate than the numeric interest rate stated in the Note, the interest rate was variable and not fixed," and "the due date changed

---

[37] *Id.* at ¶ 37.
[38] *Id.* at ¶ 38.
[39] *Id.* at ¶ 47.
[40] *Id.* at ¶ 40.
[41] *Id.*

from the 4th to the 24th of the month."[42]    Plaintiffs further allege that the loan contained a related cash sale, a multiple indebtedness mortgage with a maximum indebtedness limit of $50,000,000, and a pledge leases and rents with Plaintiffs, as opposed to Tungmy, LLC, as the purchasers of the property, mortgagors, and assignees of leases and rents.[43]    Plaintiffs also contend that Tungmy, LLC was established on or about November 16, 2020, without Plaintiffs' knowledge or authorization.[44]

In June 2024, Plaintiffs obtained documents from the Bank, including allegedly forged loan documents, all in English. Plaintiffs allege that at least twenty documents were forged.[45]    Plaintiffs further contend that a loan application was approved prior to Plaintiffs' submitting their Uniform Residential Loan Application on October 23, 2020.[46]    The Uniform Residential Loan Agreement, Plaintiffs argue, shows that the information was obtained through face-to-face interviews but that Plaintiffs never met with the Mortgage Broker's staff.[47]    This document likewise describes Plaintiffs as United States citizens "despite the fact that the loan file contained their green cards, meaning the loan originator knew that they were not citizens."[48]    Plaintiffs further allege that the documents show that "in November 2020, there is a sudden switch [during the process of closing on the residence] from

---

[42] *Id.*; *see id.* at n. 12 ("The interest rate, 'subject to increase or decrease from time to time,' was 'based on corresponding increases or decreases in Lender's Prime Rate.'").

[43] *Id.* at ¶ 41; *see* La. Civ. C. art. 3141-3142.

[44] *Id.* at ¶ 42.

[45] *Id.* at ¶¶ 44-45.

[46] *Id.* at ¶ 49.

[47] *Id.* at ¶ 50.

[48] *Id.* at ¶ 51.

the residential to commercial loan through the establishment of the sham LLC by Defendants."[49]  Plaintiffs contend that the emails show that Defendants created two LLC's [sic]—one by Trieu's Lee Sharrock and another by the Mortgage Broker's Ms. Samantha."[50]  Plaintiffs argue that an email shows that a new checking account was requested for Plaintiffs but that Plaintiffs never authorized the opening of an additional account, nor were they given access to one.[51]  Plaintiffs point to two Certifications of Beneficial Owners and argue that while the versions contain the same wet signature from Plaintiffs, the loan amounts are different and one version has no loan number or information for Plaintiffs.[52]  Plaintiffs also allege that the Notice of Appraisal and Acceptance shows that Plaintiffs were notified and accepted the appraisal but that "[t]his never happened."[53]

On August 2, 2024, Plaintiffs filed suit in this Court, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601; the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1961; the Louisiana Racketeering Act (LRA), La. R.S. § 1353; and the Fair Housing Act (FHA), 42 U.S.C. § 3601, et seq. Plaintiffs further raise claims for annulment, fraud, breach of contract, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy.[54]  After the suit was filed, Defendants filed three Motions to Dismiss.  The Court will outline the parties' specific arguments in turn.

---

[49] *Id.* at ¶ 52.
[50] *Id.*
[51] *Id.* at ¶ 54.
[52] *Id.* at ¶ 55.
[53] *Id.* at ¶ 61.
[54] R. Doc. 61.  The operative Complaint in this matter is the Fourth Amended Complaint, and this is the only iteration that the Court considers.

### A. The Mortgage Broker's Motion to Dismiss

On March 2, 2025, Mortgage Broker Samantha Tuyet Nguyen Tran and Lloyd & Taylor Mortgage (together, the "Mortgage Broker"), filed the instant Motion.[55] In their Motion, the Mortgage Broker argues that all nine of the claims made against it must be dismissed because "the complaint consists of little more than conclusory, shotgun allegations against all seven defendants."[56] They first argue that Plaintiffs lack standing to bring a RICO claim because any RICO claim related to the loan belongs to the limited liability company listed as the borrower on the loan.[57] Regarding the substance of the claim, the Mortgage Broker argues that Plaintiffs have failed to allege specific facts concerning the conduct of an enterprise through a pattern of racketeering activity and its either closed- or open-ended continuity.[58] For the same reasons, they argue that the RICO claim should be dismissed, the Mortgage Broker believes the LRA claim must also be dismissed.[59] As to the claim for fraud, the Mortgage Broker argues that none of the factual allegations made in the Complaint against them support a claim of fraud.[60] The Mortgage Broker contends that the alleged statements of the Mortgage Broker were not misrepresentations and could not have caused justifiable reliance on those statements because Plaintiffs are not parties to the loan and because relying on oral statements about a loan's terms once reduced to writing is unreasonable.[61] The Mortgage Broker also contends that

---

[55] R. Doc. 64.
[56] *Id.* at p. 1.
[57] R. Doc. 64-1 at pp. 5-6.
[58] *Id.* at p. 7.
[59] *Id.* at p. 16.
[60] *Id.* at pp. 17-18.
[61] *Id.*

the negligent misrepresentation claim must also be dismissed because "Plaintiffs…

do not allege that defendants *told them* that the loan was a fixed-rate residential

mortgage loan."[62] Regarding the Fair Housing Act claim, the Mortgage Broker states

that Plaintiffs' claim is barred by the two-year statute of limitations under the FHA

because the violation of the FHA allegedly occurred when representations were made

in October 2020 and "[t]he statute of limitations thus ran two years after October

2020 (through October 2022)," with Plaintiffs not filing suit until August 2024.[63] The

Mortgage Broker argues that the breach of contract claim should likewise be

dismissed because Plaintiffs "do not explain what each defendant supposedly did, how

they failed to consider plaintiffs' financial status, which professional advice and

services the defendants failed to provide, or which contractual obligations each

defendant did not perform."[64] The Mortgage Broker contends that Plaintiffs have

failed to state a claim that they breached any fiduciary duty owed to Plaintiffs

because the agreement between the parties "makes clear that no duty exists" and

because Plaintiffs have neither "alleged that the defendants violated any applicable

statutory duty" nor "pointed to any case law imposing a specific duty on mortgage

brokers under Louisiana law."[65] The claim for unjust enrichment also fails, according

to the Mortgage Broker, because there are no allegations that any enrichment was

unjustified and because the claim by law is subsidiary in nature and cannot be pled

---

[62] *Id*. at pp. 18-19.
[63] *Id*. at p. 19.
[64] *Id*. at p. 20.
[65] *Id*. at pp. 21-22.

alongside another legal theory.[66] Lastly, the Mortgage Broker argues that the claim for civil conspiracy must also be dismissed because Plaintiffs fail to allege any facts "to support the threshold allegation that defendants entered into any agreement to commit the supposed intentional tort of fraud."[67]

Plaintiffs first respond that the Mortgage Broker's Motion "improperly challenges the factual allegations contained in the complaint," which violates "the Rule 12(b)(6) standard, which requires the court to accept the Plaintiffs' factual allegations as true" at this stage of motion practice.[68] As to the Fair Housing Act claim, Plaintiffs argue that the Mortgage Broker violated the statute "by providing misleading information in Vietnamese while executing loan documents solely in English" and thus "prevented Plaintiffs from making an informed decision and engaged in conduct that had a discriminatory effect based on national origin."[69] Plaintiffs additionally state that their FHA claim has "not prescribed, based on the equitable principles of fraudulent concealment and equitable tolling" and continuing violations doctrine.[70] Plaintiffs next contend that their claim against the Mortgage Broker under the Truth in Lending Act ("TILA") should not be dismissed because the Broker was "a creditor, improperly steered Plaintiffs into a loan they could not afford, failed to properly consider their ability to repay, and failed to provide the requisite disclosures under TILA."[71] Plaintiffs further allege that the Mortgage Broker

---

[66] *Id.* at pp. 22-23.
[67] *Id.* at p. 24.
[68] R. Doc. 75 at p. 8.
[69] *Id.* at pp. 9-10.
[70] *Id.* at pp. 11-14.
[71] *Id.* at p. 15.

misrepresented loan terms and established and utilized a "sham LLC" in structuring the loan.[72] Plaintiffs insist that they have standing to bring their RICO claim because they bring such claim "in their independent, individual capacities, in all respects disassociated from the criminal LLC devised by the Defendants, including Mortgage Broker" and because they have successfully pleaded an injury by a predicate act.[73] Plaintiffs additionally argue that they have successfully alleged an enterprise under RICO because both their complaint and the case statement "clearly describe an association-in-fact enterprise comprising all Defendants, including Mortgage Broker, with clear knowledge of the general nature of the enterprise and the fact that the enterprise extends beyond its individual role" because both filings demonstrate that the "scheme was not an isolated event but part of a larger and ongoing pattern of racketeering activity involving mortgage fraud, wire fraud, and money laundering."[74] Plaintiffs contend that their allegations also satisfy the conduct and particularity requirements of a RICO complaint  and detail several actions that the Mortgage Broker allegedly undertook, including "submitting false loan applications and financial documents to qualify Plaintiffs for a loan that they would not have otherwise qualified for" and helping to establish "the sham LLC to serve as a fictitious borrower, misrepresenting the Plaintiffs' repayment capacity and the Loan's purpose."[75] Plaintiffs further argue that both closed- and open-ended continuity are present because Defendants "have continued sending misleading collection notices to

---

[72] *Id.* at pp. 17-18.
[73] *Id.* at pp. 24-26.
[74] *Id.* at pp. 28-29.
[75] *Id.* at pp. 31-32.

Plaintiffs as recently as December 2024, demonstrating a pattern of fraudulent activity over an extended period" and because, as part of the scheme, "Defendants continue to attempt to extract payments from Plaintiffs, demand refinancing fees under false pretenses, and threaten foreclosure, establishing a continued risk of financial harm."[76] Regarding the RICO claim, Plaintiffs state that they have sufficiently alleged a conspiracy and that the emails exchanged between Defendants demonstrates this conspiracy.[77] Based on the incorporated RICO allegations, Plaintiffs also claim that they have properly pleaded a claim under the LRA.[78] As to the breach of contract claim, Plaintiffs contend that the claim should survive because the "Mortgage Broker undertook specific obligations, including completing the loan application and securing a fixed-rate loan" and breached that agreement by failing to act in good faith, provide truthful information, disclose key financial obligations and ensure a proper loan application process, acting in bad faith throughout the process.[79] Next, Plaintiffs argue that they have sufficiently pled a claim for fraud under Louisiana law and in accordance with Fed. R. Civ. P. 9 because they allege that the Mortgage Broker

> affirmatively misrepresented the loan terms, promising Plaintiffs a 4.85% fixed-rate residential mortgage while securing a variable-rate commercial loan; concealed material facts, including that the loan was in the name of a sham LLC and carried a higher risk due to variable interest; misled Plaintiffs regarding refinancing fees, falsely stating that there would be no charges and later demanding excessive fees; and

---

[76] *Id.* at pp. 35-36
[77] *Id.* at pp. 37-43.
[78] *Id.* at pp. 44-48.
[79] *Id.* at pp. 49-50

> failed to disclose key loan terms in Vietnamese, knowing the Plaintiffs' limited-English proficiency and reliance on [the Mortgage Broker].[80]

Plaintiffs also allege that the Mortgage Broker engaged in fraud by silence by failing to disclose the true nature of the loan.[81] Plaintiffs state that their negligent misrepresentation claim should survive the Mortgage Broker's Motion to Dismiss because Plaintiffs have pled that the Mortgage Broker breached her duty "by misrepresenting and omitting critical details about the loan," including "that [she was] securing a fixed-rate residential mortgage when, in reality, the loan was a variable-rate commercial loan."[82] As to the breach of fiduciary duty claim, Plaintiffs respond that their claim should not be dismissed because they have successfully alleged that the Mortgage Broker owed a fiduciary duty to them and breached that duty as a result of her actions and by participating "in a fraudulent scheme by misrepresenting loan terms, concealing the true nature of the transaction, and facilitating the establishment of the sham LLC without the Plaintiffs' authorization."[83] Plaintiffs contend that, likewise, their claim for civil conspiracy survives the Mortgage Broker's motion because they have alleged a plausible claim with wrongful acts including "fraud, forgery, breach of fiduciary duty, filing false public records, false statements and entries, and violations of state and federal lending laws."[84] Lastly, Plaintiffs argue that they have properly pleaded a claim for unjust enrichment and that this claim should not be dismissed "[a]t this early stage"

---

[80] *Id.* at p. 54 (internal citations omitted).
[81] *Id.* at p. 57.
[82] *Id.* at p. 60.
[83] *Id.* at pp. 62-63.
[84] *Id.* at pp. 64-66.

because they are "entitled to plead unjust enrichment in the alternative to other claims."[85]

The Mortgage Broker replies generally that Plaintiffs' response, as a whole, "confuses the issues and misleads the Court with phantom quotes and straw man arguments."[86] The Mortgage Broker reiterates that the FHA claim is time barred and that even if the effect of an alleged FHA violation continues, a plaintiff "cannot use the continuing violation theory to resurrect claims . . . concluded in the past.[87]" The Mortgage Broker next contends that she is not a "creditor" within the meaning of the term in the TILA and thus that the claim cannot stand.[88] The Mortgage Broker urges the Court to dismiss the RICO claim because Plaintiffs lack standing to bring a RICO claim and because, even if they had standing, they fail to allege essential elements of claims under RICO and the LRA, including the existence of an enterprise and a pattern of racketeering activity.[89] The Mortgage Broker also contends that the standalone civil conspiracy claim must be dismissed because Plaintiffs fail to plead any facts that demonstrate an agreement among Defendants to violate RICO and the LRA.[90] As to the claims for fraud and negligent misrepresentation, the Mortgage Broker argues that Plaintiffs' pleadings fail to satisfy the requirements of Fed. R. Civ. P. 9(b) and that the fraud claim should be dismissed for a lack of justifiable reliance.[91] The breach of contract claim should also be dismissed, according to the Mortgage

---

[85] *Id.* at p. 69.
[86] R. Doc. 80 at p. 2.
[87] *Id.* at p. 3 (quoting *McGregor v. La. State University Bd. of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1993)).
[88] *Id.*
[89] *Id.* at pp. 4-5.
[90] *Id.* at p. 6.
[91] *Id.* at p. 7.

Broker, because the Mortgage Loan Origination Agreement does not specify the terms that the mortgage must contain and because the Mortgage Broker cannot be held liable for any breach of the Plaintiffs' loan agreement with the bank.[92] The Mortgage Broker contests the fact that the law imposes a fiduciary duty upon mortgage brokers generally and argues that Plaintiffs have failed to demonstrate that any fiduciary duty was owed.[93] Lastly, the Mortgage Broker urges the Court to dismiss the unjust enrichment claim because such claim is barred under Louisiana law unless the law provides no other remedy.[94]

### B. The Realtor's Motion to Dismiss

On March 3, 2025, Realtor Nga Baird and New World Realty, LLC (together, the "Realtor"), filed the instant Motion. In their Motion, the Realtor argues that eight of the nine claims made against it must be dismissed because the Complaint is absent of any factual allegations and thus fails to "state a claim to relief that is plausible on its face."[95] They argue that Plaintiffs' RICO and state racketeering claims fail because the Complaint does not sufficiently allege the Realtor's involvement in the alleged racketeering, the existence of an enterprise, a pattern of racketeering activity among the members of the enterprise, or a conspiracy.[96] Additionally, the Realtor contends that the "conclusory, shotgun" allegations made in the Complaint fail to meet the requirement that Plaintiffs must plead with specificity the alleged wrongful conduct

---

[92] *Id.* at p. 8.
[93] *Id.* at pp. 8-9.
[94] *Id.* at p. 9.
[95] R. Doc. 65-1 at p. 6 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[96] *Id.*

of each defendant named.[97] For the same reason, Realtor states that Plaintiffs have failed to allege any facts to support a fraud claim against them.[98] Realtor also notes that the representations that Plaintiffs allege the Realtor made do not evince "an intent to deceive or even that she knew the statement was incorrect when made."[99] As to the claim for negligent misrepresentation, Realtor argues that Plaintiffs do not allege that the Realtor "told them that the loan was a fixed-rate residential mortgage loan" or that there were "any alleged misrepresentations by Ms. Baird or New World Realty about the terms of the loan that plaintiffs justifiably relied on."[100] The Realtor also asserts that Plaintiffs have failed to state a claim for breach of contract because (1) Plaintiffs' conclusory allegations, "devoid of any factual support," cannot support a claim for breach, (2) the purported written agreement did not create a contractual relationship between Plaintiffs and the Realtor, and (3) there is no privity of contract between Plaintiffs and the Realtor regarding Plaintiffs' contract with Gulf Coast Bank.[101] Regarding the breach of fiduciary claim, the Realtor contends that Plaintiffs fail to explain they "owed plaintiffs a fiduciary duty to disclose information to them regarding the bank loan," to specify "what Ms. Baird and New World Realty supposedly knew and yet failed to disclose regarding the terms of the loan agreement," and to explain "how Ms. Baird or her real estate company allegedly failed to act in the plaintiffs' best interests or how they supposedly acted in bad faith."[102]

---

[97] *Id.* at p. 17.
[98] *Id.*
[99] *Id.* at p. 18.
[100] *Id.* at p. 20
[101] *Id.* at pp. 20-21.
[102] *Id.* at p. 22.

The Realtor contends that Plaintiffs' claim for unjust enrichment likewise fails because they do not allege that New World Realty received any "enrichment" and "[t]he complaint contains no allegations that Ms. Baird did not actually perform work as a real estate agent such that the enrichment would be unjustified."[103] The Realtor maintains that Plaintiffs have not alleged facts that establish a civil conspiracy because "[w]ithout any facts to support the threshold allegation that defendants entered into any agreement to commit the supposed intentional tort of fraud, plaintiffs failed to sufficiently allege the existence of a civil conspiracy."[104]

Plaintiffs respond broadly that the Realtor's Motion should be denied given their "pervasive tendency to challenge, distort, and contradict the Plaintiffs' factual allegations."[105] In their opposition, Plaintiffs also note that the Realtor did not address Plaintiffs' Fair Housing Act claim, and they argue that those claims should therefore be allowed to proceed.[106] Regarding the individual claims, Plaintiffs argue that their civil RICO claim should not be dismissed because Plaintiffs have specifically alleged that the Realtor "actively participated in the scheme" and "misrepresented the Loan terms, collected unearned commissions, and directly participated in the closing despite knowing the underlying misrepresentations."[107] As a result, they claim that these allegations "show that Realtor was an active participant in the conduct of the enterprise's affairs."[108] The Plaintiffs also contend

---

[103] *Id.* at pp. 23-24.
[104] *Id.* at pp. 24-25.
[105] R. Doc. 76 at p. 9.
[106] *Id.* at p. 10.
[107] *Id.* at pp. 17-18.
[108] *Id.*

that they have sufficiently alleged an enterprise because the Fourth Amended Complaint provides a common purpose—to profit from alleged fraudulent loan transactions—and alleges that the Defendants "worked together in an organized manner to accomplish this objective, with specific roles assigned to each participant."[109] Plaintiffs additionally argue that both closed-ended and open-ended continuity requirements have been successfully met and that they have successfully alleged a conspiracy under Section 1962(d) because they have demonstrated that the Realtor "knowingly agreed to participate in the enterprise's scheme to defraud Plaintiffs through misrepresentations, forged documents, and the improper use of a sham LLC to secure the loan."[110] Regarding the Louisiana Racketeering Act claim, Plaintiffs assert that, when "[r]ead in conjunction with the Plaintiffs' civil RICO claim," the Fourth Amended Complaint demonstrates that they "have successfully pleaded the LRA claim."[111] As to the breach of contract claim, Plaintiffs argue that (1) the Realtor had an "obligation to act in the Plaintiffs' best interest, provide accurate information about the Loan terms, and ensure that the Loan application process was handled correctly creates a contractual relationship under Louisiana law," (2) the Realtor's conduct "in misrepresenting the loan terms, concealing material information, and facilitating the creation of the sham LLC" constitutes breach, and (3) there was privity of contract between Plaintiffs and the Realtor because although she was not party to the loan agreement, "she was a party to the

---

[109] *Id.* at p. 19.
[110] *Id.* at p. 23.
[111] *Id.* at pp. 24-25.

separate real estate services agreement."[112] Plaintiffs further allege that the Realtor acted in bad faith because she knowingly misrepresented terms of the contract to gain leverage over the Plaintiffs.[113] Plaintiffs argue that they have sufficiently alleged a claim of fraud under Louisiana law because the Realtor "actively misrepresented the Loan terms and concealed the true nature of the loan" and was "aware of the creation of the LLC and actively participated in the Loan closing, despite knowing that the Loan terms were inconsistent with what had been represented to Plaintiffs."[114] Similarly, Plaintiffs contend that they have stated a claim for negligent misrepresentation because the Realtor had undertaken "a professional obligation to provide accurate and complete information regarding the Loan terms and structure" and that the statements that Ms. Baird made "about the loan terms were knowingly false and that her failure to disclose the true nature of the loan constitutes a material omission."[115] As to the claim for breach of fiduciary duty, Plaintiffs state that they have successfully stated a claim because realtors have a fiduciary duty to disclose under Louisiana law and Plaintiffs have alleged that the Realtor failed "to act in Plaintiffs' best interests and ensure that they obtained the most favorable loan terms available."[116] Plaintiffs further allege that the Realtor failed "to provide translated loan documents or ensure that Plaintiffs understood the true terms of the loan. Louisiana law imposes a duty on brokers to furnish truthful information and to take

---

[112] *Id.* at pp. 28-29.
[113] *Id.* at p. 30.
[114] *Id.* at p. 32.
[115] *Id.* at p. 37.
[116] *Id.* at pp. 40-41.

reasonable steps to ensure that the client understands the transaction term."[117] Regarding the claim for civil conspiracy, Plaintiffs aver that they have adequately pleaded all necessary elements of a civil conspiracy claim under Louisiana law "including the existence of an agreement among the defendants to commit an unlawful act, the actual commission of the act through misrepresentation and forgery, and resulting financial harm to Plaintiffs."[118] Lastly, Plaintiffs assert that their claim for unjust enrichment has successfully been alleged because they state that the Realtor "received a $5,425.00 commission from the fraudulent loan transaction," that "was tied directly to the improper structure of the Loan, which Plaintiffs never knowingly agreed to and which was obtained through misrepresentation and forgery," constituting unjust enrichment under Louisiana law.[119]

The Realtor replies that each of the challenged claims fails despite Plaintiffs' arguments. In their Reply, the Realtor first notes that Plaintiffs' opposition discusses the Truth in Lending Act and responds that Plaintiffs "did not seek leave to assert a TILA claim against Ms. Baird or New World Realty" and thus the claim "remains asserted only against Gulf Coast Bank."[120] The Realtor contends that the Plaintiffs' claims under RICO and the LRA fail because they have failed "to explain how the defendants supposedly functioned as a 'unit'" and have failed to plead necessary

---

[117] *Id.*
[118] *Id.* at p. 46.
[119] *Id.* at pp. 46-47.
[120] R. Doc. 81 at pp. 2-3.

elements of either closed- or open-ended continuity.[121] Substantively, the Realtor contends that Plaintiffs fail "to allege that Ms. Baird knew that the plaintiffs misunderstood the terms of the loan and yet failed to correct them."[122] The Realtor likewise argues that the standalone civil conspiracy claim must fall because Plaintiffs "did not specifically allege any facts that would show an agreement among the defendants to violate RICO and LRA."[123] As to the fraud and negligent misrepresentation claims, the Realtor states that Plaintiffs' allegations have failed to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) and that they misrepresent their allegations in opposition to the present Motion.[124] The Realtor further contends that the Plaintiffs' Complaint fails to state a claim for breach of contract because the Realtor was not party to the loan agreement at issue and "because the pamphlet [that the Realtor allegedly breached] is designed only to provide information on agency law and in no way creates any obligations"; as a result, "there can be no breach."[125] Regarding the claim for breach of fiduciary duty, the Realtor states that Plaintiffs' opposition mischaracterizes the allegations in the Complaint and that those allegations fail to state a claim for breach of fiduciary duty.[126] Lastly, the Realtor argues that Louisiana law precludes a claim for unjust enrichment because it is not available "if the law provides another remedy" and thus Plaintiffs' claim should be dismissed.[127]

---

[121] *Id.* at pp. 3-4.
[122] *Id.* at p. 5.
[123] *Id.* at p. 6.
[124] *Id.* at p. 7.
[125] *Id.* at p. 8.
[126] *Id.* at p. 9.
[127] *Id.* at p. 10.

Plaintiffs were granted leave to file a sur-reply solely as to their claim against the Realtor under the Truth in Lending Act.[128] Plaintiffs argue that TILA's scope extends to the Realtor because they "acted not as neutral sales agents, but as active participants in structuring and steering a residential loan disguised as a commercial credit line."[129] For that reason, Plaintiffs urge the Court not to dismiss their TILA claim as to the Realtor.

## C. The Closing Agent's Motion to Dismiss

On March 14, 2025, the Closing Agent, Trieu Law, LLC, filed the instant Motion.  In its Motion, the Closing Agent argues that Plaintiffs make only five allegations against it specifically and that these allegations, even when accepted as true and viewed in the light most favorable to Plaintiffs, do not give rise to any cognizable causes of action.[130]  Instead, the Closing Agent argues that the allegations show that its role was limited to that of a closing agent and that it had no involvement in the sale or financing of the property.[131] The only potential wrongdoing identified by Plaintiffs, the Closing Agent contends, is that it formed an LLC, that the closing was done by a non-Vietnamese speaker, and that the mortgage was not witnessed by uninterested, or impartial, witnesses.[132]  The Closing Agent insists that the Bank instructed it to set up the LLC and that in any event, the LLC was not used because the Mortgage Broker had already formed an LLC.[133] The Closing Agent further

---

[128] R. Doc. 150; R. Doc. 153.
[129] R. Doc. 153 at p. 3.
[130] R. Doc. 77-1 at 1-2.
[131] *Id.* at p. 2.
[132] *Id.* at p. 9.
[133] *Id.* at p. 10.

argues that there is no requirement that witnesses at a closing be uninterested or that the closing agent speak the same language as the buyers.[134]  The Closing Agent states that Plaintiffs' RICO and state racketeering claims fail because Plaintiffs have not alleged any facts showing that Trieu  Law controlled or managed an alleged enterprise, that there was a pattern of racketeering activity, or that Trieu Law's actions are continuous or present a threat of future criminal activity.[135] The Closing Agent further argues that Plaintiffs' claim under the FHA fails because Plaintiffs have not alleged any discrimination against Plaintiffs, which is evidenced in part by the fact that Plaintiffs' loan was approved.[136]  The Closing Agent contends that there is no basis to annul the mortgage because the mortgage was not based on any misrepresentations or fraud, Plaintiffs were appropriately apprised of the conditions of the mortgage, and because Plaintiffs had ample time to have all documents translated and Louisiana law presumes that a person who signs a contract understands the terms, conditions, and content of the document.[137]  The Closing Agent asserts that Plaintiffs' fraud claim is not particular enough to proceed and that any allegations of fraud are unsupported by evidence.[138]  As to Plaintiffs' negligent misrepresentation claim, the Closing Agent avers that it never made any representations to Plaintiffs and therefore, Plaintiffs' claim necessarily fails.[139]

---

[134] *Id.*
[135] *Id.* at pp. 12-14, 15-16.
[136] *Id.* at pp. 16-17.
[137] *Id.* at pp. 21-22.
[138] *Id.* at pp. 24-25.
[139] *Id.* at pp. 26-27.

Finally, Trieu Law argues that Plaintiffs' unjust enrichment claim fails as duplicative because the mortgage was a valid juridical instrument.[140]

In their opposition, Plaintiffs note that the Closing Agent did not address Plaintiffs' TILA and civil conspiracy claims, and they argue that those claims should therefore be allowed to proceed.[141]   Plaintiffs then attack many of the factual statements alleged by the Closing Agent, arguing that they "import[] new alleged facts" that are not included in, and often different from, those in Plaintiffs' Complaint. Plaintiffs reject the Closing Agent's position that their factual allegations do not give rise to any cognizable claim.  Plaintiffs argue that their Complaint supports their RICO and LRA claims because it alleges that Trieu, "along with other co-defendants, engaged in a coordinated scheme to defraud Plaintiffs through a series of fraudulent mortgage and financial transactions."[142]  Plaintiffs claim that they also successfully allege that the Closing Agent "conspired with other Defendants to misrepresent the Loan terms, forge Loan documents, and misappropriate funds."[143]  Plaintiffs argue that the cases cited by the Closing Agent are inapposite because they apply to racial discrimination, as opposed to national origin discrimination, which Plaintiffs allege is the basis of their claims.[144]  Plaintiffs maintain that they have sufficiently alleged that Trieu discriminated against them.[145]  Plaintiffs then point to their allegations as to the alleged sham LLC as evidence of Trieu's fraud and negligent

---

[140] *Id.* at pp. 27-29.
[141] R. Doc. 82 at p. 3.
[142] *Id.* at p. 8.
[143] *Id.* at pp. 8-13.
[144] *Id.* at pp. 13-15.
[145] *Id.* at p. 15.

misrepresentation.[146]  Finally, Plaintiffs reject the Closing Agent's arguments as to unjust enrichment on the basis that Plaintiffs have plead that the mortgage is not valid.[147]  Plaintiffs argue that Trieu was unjustly enriched when it received closing costs and that no other cause of action by Plaintiff will recover this money.[148]

### D.  Plaintiffs' Motion for Leave to File Supplemental Complaint[149]

On April 23, 2025, the parties attended a settlement conference with the then-assigned Magistrate Judge.[150]  On May 19, 2025, Plaintiffs filed a Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d), in which they explain that they "seek to supplement their Fourth Amended Complaint to add factual allegations and derivative causes of action arising from a judicially-supervised settlement conference held on April 23, 2025."[151]  Plaintiff allege that during the settlement conference, "Defendants presented a coordinated refinancing proposal under threat of foreclosure, delivered with the appearance of judicial endorsement and designed to coerce Plaintiffs into abandoning their claims."[152]  Plaintiffs allege that this conduct violated their rights under several acts, including federal conspiracy statutes, and Plaintiffs seek to add "post-filing acts in furtherance of the RICO conspiracy previously pled under 18 U.S.C. § 1962(d)."[153]

---

[146] *Id.* at pp. 16-23.
[147] *Id.* at p. 23.
[148] *Id.* at pp. 24-25.
[149] The Court incorporates the factual and procedural background from its prior Order and Reasons regarding the present motion. *See* R. Doc. 145.
[150] R. Doc. 98.
[151] R. Doc. 119-2 at p. 2.
[152] *Id.*
[153] *Id.*

In their opposition, Defendants point out that the parties' deadline to amend their pleadings expired on January 10, 2025, more than four months from the date of Plaintiffs' Motion; Defendants therefore argue that Plaintiffs must meet the standards under Federal Rules of Civil Procedure 16 *and* 15 in order to be granted leave to amend.[154]  Under these standards, Defendants argue, Plaintiffs' Motion must be denied as futile and in bad faith.[155]  Defendants argue that no violation of law arises from attending a settlement conference and extending an offer that the receiving party deems insufficient.[156]  Defendants argue that "[a] different answer— one that would open the door to ancillary disputes about the reasonableness or form of parties' offers—would make litigants reluctant to engage in settlement dialogue and threaten the confidentiality of settlement conferences" and that "[a]llowing offers made during a settlement conference to be the basis of supplemental complaints could result in a chilling effect for future settlement negotiations and discourage parties from future settlements."[157]  Even if failed settlement discussions could form the basis of a legal claim, Defendants argue, Plaintiffs' proposed claims fail on the merits.[158]

In their reply, Plaintiffs argue that "[t]his is a motion to supplement, not amend, and the standard under Rule 15(d) controls."[159]  Plaintiffs argue that their proposed pleading is proper under Rule 15(d) because the allegations and claims

---

[154] R. Doc. 122 at p. 4.
[155] *Id.* at p. 5.
[156] *Id.* at p. 6.
[157] *Id.*
[158] *Id.* at p. 9-10.
[159] R. Doc. 123 at p. 2 (citing *Rowe v. United States*, 633 F.2d 799, 801 (9th Cir. 1980)).

Plaintiffs seek to add occurred after the date of the pleading to be supplemented.[160]

Finally, Plaintiffs argue why the events at the April 23, 2025 status conference give

rise to claims under § 1962.[161]

On July 10, 2025, the Court issued an Order and Reasons denying Plaintiffs'

Motion in part.[162] The Court deferred ruling on its motion as it pertains to adding

factual allegations in support of their existing RICO claims.[163] The Court now

addresses that remaining portion of the motion in the present order.

## II.     LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal

of a complaint, or any part of it, for failure to state a claim upon which relief may be

granted.[164]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"[165]  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."[166]  But, no matter the factual content, a claim is

not plausible if it rests on a legal theory that is not cognizable.[167]  In ruling on a

---

[160] *Id.* at p. 4-5.
[161] *Id.* at p. 5-11.
[162] R. Doc. 145.
[163] *Id.* at p. 18.
[164] FED. R. CIV. P. 12(b)(6).
[165] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[166] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).
[167] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[168]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[169]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[170]

Fraud claims are analyzed under the heightened pleading standard of Federal Rule of Civil Procedure 9(b).[171]  In alleging fraud under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."[172]  The Fifth Circuit construes this standard "strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[173]

In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[174]  The Court can also consider matters of public record and matters subject to judicial notice.[175]  Finally, and with

---

[168] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[169] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[170] *Cutrer v. McMillan*, 308 Fed. App. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[171] FED. R. CIV. P. 9(b); *Van Velzer v. Amegy Bank*, 713 F. App'x 377, 378 (5th Cir. 2018).

[172] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206-07 (5th Cir. 2009).

[173] *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

[174] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

[175] *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodaux, Inc.*, No. 10-CV-4443, 2013 WL 1513406, at *3 (E.D. La. Apr. 11, 2013).

respect only to Plaintiffs' RICO claims, the Court may consider Plaintiffs' RICO Statement.[176]

## B. Motion for Leave to File Supplemental Complaint

Courts consider the following factors in considering whether it is appropriate to allow Plaintiffs to supplement their pleading:

> [W]hether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action.[177]

The Court now turns to an analysis of each of Plaintiffs' claims as it relates to each Defendant's Motion to Dismiss.

## III.    ANALYSIS

## A. Plaintiffs' TILA Claims

Plaintiffs allege that the Mortgage Broker is liable under the Truth in Lending Act ("TILA").  TILA applies to creditors when four conditions are met: "(i) The credit is offered or extended to consumers; (ii) The offering or extension of credit is done regularly; (iii) The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (iv) The credit is primarily for

---

[176] R. Doc. 83.  *See Conwill v. Greenberg Traurig, LLP*, No. 09-CV-4365, 2009 WL 5178310, at *2 n.16 (E.D. La. Dec. 22, 2009) ("[W]hen considering a Rule 12(b)(6) motion, courts routinely consider the RICO case statement alongside the complaint.").

[177] *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983); *see also Jernigan v. McMillan*, No. 22-CV-2580, 2023 WL 5516315, at *1 (N.D. Tex. Aug. 3, 2023) ("Judicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a).") (internal quotations, citation, and brackets omitted).

personal, family, or household purposes."[178]  A creditor is defined as "a person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract."[179]

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' TILA Claim

The Mortgage Broker argues that to the extent Plaintiffs raise a TILA claim against the Mortgage Broker, it must be dismissed because the Mortgage Broker is not a creditor under TILA.  Plaintiffs argue in turn that the Mortgage Broker held itself out as the true lender and, thus, it qualifies as a lender under TILA.[180]

Based on the allegations in Plaintiffs' Complaint, and accepting them as true as the Court is required to do, Plaintiffs' Fourth Amended Complaint does not state a TILA claim against the Mortgage Broker.  Plaintiffs do not allege that the Mortgage Broker regularly extends credit or that Plaintiffs' loan was initially payable to the Mortgage Broker.[181]  Instead, Plaintiffs allege that the Mortgage Broker, along with the Closing Agent "established two LLCs in the name of Plaintiffs" at the direction of Gulf Coast Bank and in violation of TILA.[182]  But the regulation that defines creditor

---

[178] *Egana v. Blair's Bail Bonds, Inc.*, 2018 WL 2463210, at \*5 (E.D. La. June 1, 2018) (quoting 12 C.F.R. § 1026.1(c)(1)) (internal quotations omitted).

[179] 12 C.F.R. § 1026.2(a)(17).

[180] R. Doc. 75 at pp. 15-16.

[181] Although Plaintiffs argue in their opposition that a creditor is someone who regularly extends consumer credit *or* is the party to whom the debit is initially payable, the regulation clearly requires both conditions to be met for someone to be considered a creditor.  R. Doc. 75 at p. 15.  *See* 12 C.F.R. 1026.2(a)(17)(i) (defining a creditor as "A person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a downpayment), *and* to whom the obligation is initially payable . . . ").

[182] R. Doc. 61 at ¶ 61.

does not define it in a way that encompasses the Mortgage Broker, nor do Plaintiffs provide any support for the idea that the definition of a creditor can be expanded to include persons or businesses that hold themselves out as creditors.  Absent authority that TILA allows causes of action against a non-creditor that holds itself out as a creditor, the Court is unwilling to read into the statute an entirely new and broadened definition of the term creditor.  For this reason, Plaintiffs' TILA claim against the Mortgage Broker is dismissed.

### b. The Realtor's Motion to Dismiss as to Plaintiffs' TILA Claim

The Realtor argues that to the extent Plaintiffs raise a TILA claim against the Realtor, it must be dismissed because the Complaint fails to state a plausible claim against the Realtor for violations of the TILA. The Plaintiffs counter that the Realtor falls within the definition of a "creditor" under the TILA and that the facts in the Complaint are sufficient to allege the Realtor's violation of the TILA because the Realtor structured, arranged, or regularly facilitated credit secured by a dwelling.[183] In support of their contention, Plaintiffs cite to the Fifth Circuit's decision in *Arnold v. W.D.L. Investments, Inc.*, and claim that it stands for the proposition that "TILA applies to individuals compensated for offering credit on behalf of a developer."[184] The same definition of "creditor" described herein applies to Plaintiff's claim against the Realtor. Plaintiff's reliance on *Arnold* is misplaced. In that case, the individuals who were found to be creditors under TILA were both employees of the company that

---

[183] R. Doc. 153 at p. 4.
[184] 703 F.2d 848, 849 (5th Cir. 1983); R. Doc. 153.

offered the purchaser additional financing on the home that they were purchasing.[185] The *Arnold* court only held that liability reached employees of the company offering the additional financing; it did not address non-employees of "creditors." Accepting Plaintiffs' well-pleaded allegations as true, as the Court is required to do,[186] the Plaintiffs have failed to allege facts sufficient for the Realtor to be considered a creditor under the TILA.  For this reason, Plaintiffs' TILA claim against the Realtor is dismissed.

## B. Plaintiffs' RICO Claims

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[187] Plaintiffs argue that Defendants' conduct violates this provision of the RICO statute, as well as § 1962(d), which prohibits a person from conspiring to violate any of the provisions of the RICO statute.  Though the different subsections of RICO are distinct, they all share common elements: ""(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[188]

---

[185] *Id.*

[186] *See Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[187] 18 U.S.C. § 1962(c).

[188] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

### a. The Closing Agent's Motion to Dismiss as to Plaintiffs' RICO Claim

The Closing Agent argues that Plaintiffs have failed to satisfy the second element—a pattern of racketeering activity. The plain wording of the RICO statute requires two predicate criminal actions enumerated under 18 U.S.C. § 1961.[189] It is well established that the word pattern was meant to import something more than simply establishing the minimum number of predicates."[190] "To establish the pattern element, a plaintiff must show both a relationship between the predicate offenses and the threat of continuing continuity."[191] Courts refer to these terms as the "relationship" and "continuity" requirements, respectively.

"Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[192] Continuity, on the other hand, is "a temporal concept," which may be established by showing "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition."[193] These concepts are referred to as "closed-" and "open-ended" continuity.[194]

To show closed-ended continuity, a plaintiff must allege a series of related criminal acts extending over a substantial period of time.[195] Plaintiffs appear to

---

[189] 18 U.S.C. § 1961(1).

[190] *D&T Partners, LLC v. Baymark Partners Mgmt, LLC*, 98 F.4th 198, 205 (5th Cir. 2024) (citation modified).

[191] *Id.* (citation modified).

[192] *H.J. Inc. v. NW. Bell Telephone Co.*, 492 U.S. 229, 240 (1989) (citing 18 U.S.C. § 3575(e)).

[193] *Id.* at 241-42.

[194] *D&T Partners*, 98 F.4th at 205.

[195] *Id.*

argue that they clear this hurdle by alleging various violations of identity theft, access device, mail, wire, and bank fraud, and money laundering between 2020 and 2024.[196] The Fifth Circuit has generally considered racketeering acts committed over a period of one year to be a "substantial period of time."[197] Thus, viewing the facts as alleged in a light most favorable to Plaintiffs,[198] Plaintiffs have alleged that Defendants committed a series of criminal acts over a substantial amount of time. This finding is not dispositive, however, because duration is only one factor courts consider in determining whether a defendant has engaged in a pattern of RICO activity.[199]

Courts also consider the number of victims injured by the alleged racketeering acts.[200] The Fifth Circuit has found continuity when the racketeering scheme involved "systemic victimization"[201] and has, in contrast, been reluctant to deem criminal conduct part of a RICO scheme when the damage affects a limited number of victims.[202] Here, accepting Plaintiffs' well-pleaded facts in the Fourth Amended Complaint as true, Plaintiffs allege injury on behalf of themselves and no others. Plaintiffs' allegations center around Defendants' scheme to defraud *Plaintiffs*; they do not argue that Defendants' conduct is part of systemic or repeated conduct to individuals outside of Plaintiffs. Unlike other successful RICO cases, Plaintiffs allege

---

[196] R. Doc. 82 at p. 10.
[197] *D&T Partners*, 98 F.4th at 206.
[198] *See Midwest Feeders, Inc*, 886 F.3d at 513.
[199] *Id.*
[200] *Id.*
[201] *See Abraham*, 480 F.3d at 356.
[202] *D&T Partners*, 98 F.4th at 206.

a single injury caused by a single operation directed at one couple. Though not dispositive, the absence of multiple victims weighs against a finding of continuity.[203]

In addition to duration and the number of victims, the Fifth Circuit has also considered whether the unlawful conduct concerns one or multiple schemes. Allegations of multiple schemes are "highly relevant" and will often support a finding of continuity.[204] "On the other hand, courts are reluctant to find a RICO violation when the complaint alleges unlawful conduct in pursuit of a 'single effort, over a finite period of time.'"[205] While multiple schemes are not necessarily a prerequisite for a pattern of racketeering activity, "a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities is not the type of racketeering pattern RICO seeks to prohibit."[206] As noted above, Plaintiff's Complaint alleges a singular scheme to defraud Plaintiffs. In their Amended RICO Case Statement, Plaintiffs summarily state that "[t]he predicate acts alleged in the complaint directly furthered the enterprise's fraudulent purpose and were executed in coordination by the defendants to promote and conceal the unlawful scheme."[207] While Plaintiffs attempt to stretch the life of the scheme to include the creation of the fraudulent loan as well as the collection of the alleged fraudulent mortgage payments, the alleged scheme remains a singular effort to defraud Plaintiffs by entering into a fraudulent mortgage. Although this does not doom

---

[203] *Id.* at 206-07.

[204] *Id.* at 207 (citing *H.J. Inc.*, 492 U.S. at 240).

[205] *Id.* (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 21 (5th Cir. 2000)).

[206] *Id.* (quoting *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)).

[207] R. Doc. 83 at p. 41.

Plaintiffs' claims, accepting Plaintiffs' well-pleaded facts as true, as the Court must, Plaintiffs' claims do not support a finding of continuity.

Finally, courts consider "the alleged objective of the scheme and whether its goals were finite."[208] Plaintiff's Complaint alleges that the sole alleged scheme in this case is one to defraud Plaintiffs through a fraudulent mortgage, presumably to recover additional payments through inflated interest costs. By its definition, this alleged scheme is finite and will cease when the term of the loan ends. Based on Plaintiffs' allegations, the alleged enterprise poses no threat of continued criminal activity, because the alleged criminal activity exists for a singular purpose over a limited amount of time. Indeed, "the entire enterprise reaches its logical conclusion when the loan is paid off."[209]

Viewing the well-pleaded facts in the Fourth Amended Complaint in the light most favorable to the Plaintiffs, while Plaintiffs allege illegal activity over the course of several years, the alleged illegal activity is part and parcel of a singular scheme to defraud a singular couple through a singular transaction. While Plaintiffs may ultimately succeed on their underlying allegations and show that Defendants defrauded Plaintiffs, the theory of Plaintiffs' case as stated in the Fourth Amended Complaint[210] and the Amended RICO Case Statement,[211] accepted as true, does not give rise to a RICO claim.

---

[208] *D&T Partners*, 98 F.4th at 208 (citation modified).

[209] *See Nguyen v. JP Morgan Chase, N.A.*, 2024 WL 3877498, at *14 (E.D. La. Aug. 20, 2024) (finding that plaintiffs failed to plead a pattern of racketeering activity by Chase Bank and Fannie Mae to defraud plaintiffs by charging fraudulent interest fees because the purpose of the enterprise was for a limited amount of time and therefore could not constate a pattern).

[210] R. Doc. 61.

[211] R. Doc. 83.

Plaintiffs may prevail still on their RICO claim by showing open-ended continuity. Open-ended continuity "exists when a threat of continuing criminal activity extends indefinitely into the future."[212] A plaintiff may show this by alleging that "the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit . . . extending indefinitely into the future" or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business."[213] Plaintiffs argue that open-ended continuity applies in this case because Defendants' conduct is ongoing as to Plaintiffs and because the alleged conduct is part of Defendants' regular way of doing business.

As to Plaintiffs' first point, the Court notes that Plaintiffs repeatedly identify the alleged fraud as occurring between 2020 and 2024.[214] The Supreme Court has described the open-ended continuity concept as a threat of indefinite future criminal activity. Here, the alleged fraud is not indefinite; indeed, any fraud would necessarily cease with the life of the loan. Moreover, as to Plaintiffs' second argument, it is true that Plaintiffs allege in their RICO statement that Defendants "have employed nearly identical tactics in other real estate transactions, including the use of sham LLCs, forged documents, and the misclassification of commercial loans as residential loans."[215] While the Court will accept all well-pleaded facts as true, as is appropriate, it is not bound to accept as true conclusory allegations.[216] Plaintiffs' singular sentence

---

[212] *D&T*, 98 F.4th at 208.

[213] *H.J., Inc.*, 492 U.S. at 242.

[214] *See Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016) (a scheme that has concluded may not be the basis for open-ended continuity).

[215] R. Doc. 83 at p. 64.

[216] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

is just that—a conclusory allegation.[217] Plaintiffs allege no facts to support this statement. Accordingly, the Court finds that Plaintiffs have failed to properly allege a pattern of racketeering activity, and thus, Plaintiffs' § 1962(c) claim fails. And because a § 1962(d) claim cannot survive absent an underlying RICO claim, Plaintiffs' claim under § 1962(d) likewise fails.

### b. The Realtor's and the Mortgage Broker's Motions to Dismiss as to Plaintiffs' RICO Claims

The Realtor and the Mortgage Broker also allege that Plaintiffs' RICO claims against them must be dismissed because Plaintiffs fail to plead a pattern of RICO activity. For the reasons explained above, the Court agrees and grants the Realtor and the Mortgage Broker's Motions to Dismiss as to the RICO claim. Because the Realtor and the Mortgage Broker's RICO claims are not viable, the Court declines to consider any additional basis for dismissal of the RICO claims asserted by the Realtor or the Mortgage Broker.

### C. Plaintiffs' LRA Claims

The Louisiana Racketeering Act ("LRA") is modeled after the federal Racketeer Influenced and Corrupt Organization Act ("RICO") and due to the paucity of case law directly addressing the LRA, the Court "must look to federal case law construing the federal Racketeer Influenced and Corrupt Organization Act."[218] All claims under

---

[217] *See Bustos v. invierte En Tex. LLC*, 2024 WL 3364039, at *13 (S.D. Tex. June 3, 2024) (finding allegations that defendants' actions were not a one-time occurrence and that they had victimized dozens of investors through the same scheme since 2015 through the repeated use of email, telephone, and wire transmissions was conclusory and unable to support a finding of open-ended continuity).

[218] *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013); *see also State v. Touchet*, 759 So. 2d 194, 196—197 (La. App. 3 Cir. 4/5/00).

RICO, and thus under the LRA, share three elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[219] Because the Court has found that Plaintiffs' RICO claims against the Closing Agent, the Realtor, and the Mortgage Broker are not viable because Plaintiffs have failed to plead a pattern of RICO activity, the Court likewise finds that the claims asserted under the LRA must also be dismissed due to a failure to plead a pattern of conduct that violates the LRA.

### D. Plaintiffs' Fraud Claims

Fraud under Louisiana law is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[220] To state a claim for fraud under Louisiana law, the plaintiff must allege: (1) a misrepresentation of a material fact; (2) that was made with the intent to deceive; (3) which caused justifiable reliance with resultant injury.[221]

Federal Rule of Civil Procedure 9 requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."[222] Allegations of fraud therefore "must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8."[223] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations,

---

[219] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).
[220] La. Civ. C. art 1953.
[221] *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) (applying Louisiana law).
[222] Fed. R. Civ. P. 9(b)
[223] *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).

as well as the identity of the person making the misrepresentation and what he obtained thereby."[224] "In other words, Rule 9(b) requires the who, what, when, where, and how to be laid out."[225] "Malice, intent, knowledge and other condition of mind of a person may be averred generally."[226] Still, "pleading scienter requires more than a simple allegation that a defendant had fraudulent intent."[227] To successfully plead scienter, "a plaintiff must set forth specific facts that support an inference of fraud."[228]

"When a claim is asserted against multiple defendants, Rule 9(b) requires specific, separate allegations detailing the allegedly fraudulent conduct of each defendant."[229] "In other words, a complaint cannot, consistent with Rule 9(b), group all defendants into 'one wrongdoing monolith.'"[230]

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' Fraud Claim

The Mortgage Broker argues that Plaintiffs' allegations, many of which fail to specify which allegations are against which Defendants, are insufficient to state a claim for fraud.[231] The Mortgage Broker argues that the allegations that relate specifically to the Mortgage Broker do not support a fraud claim.[232] Finally, the Mortgage Broker argues that, even if the Mortgage Broker had made fraudulent statements, those statements could not have caused justifiable reliance, as is required

---

[224] *Id.*

[225] *In re Pool Prods. Dist. Market Antitrust Litig.*, 988 F.Supp.2d 696, 723 (E.D. La. 2013) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)) (citation modified).

[226] *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting FED. R. CIV. P. 9(b)) (citation modified).

[227] *Id.*

[228] *Id.*

[229] *In re Am. Intern. Refinery*, 402 B.R. 728, 738 (W.D. La. 2008) (citations omitted); *see In re Pool Prods. Dist. Market Antitrust Lit.*, 988 F.Supp.2d 696, 722-23 (E.D. La. 2013)).

[230] *Id.* (quoting *1st Am. Bank & Tr. by Levitt v. Frogel, 726 F.Supp.* 1292, 1295 (S.D. Fla. 1989)).

[231] R. Doc. 64-1 at pp. 16-17.

[232] *Id.* at p. 17.

for a fraud claim, because: (1) the alleged statements concerning the loan because Tungmy, LLC—not Plaintiffs—is the borrower of the loan; (2) Plaintiffs knew there were income requirements before entering into the loan; and (3) it would be unreasonable to rely on oral representations concerning a loan when the loan was ultimately memorialized into writing.[233]

At the outset, the Court agrees that general allegations that "all Defendants," without naming or identifying a particular defendant, committed an act are insufficient to support a claim for fraud.[234] This style of pleading fails to provide any type of specificity, namely who is alleged to have committed the fraud. With that said, Plaintiffs' allegations as to the Mortgage Broker in particular are as follows: the Mortgage Broker "presented the terms of the loan to Plaintiffs as a $160,500.00, 20-year term at a fixed 4.85% interest rate with a monthly mortgage payment of $1,054.38, due each month" and the Mortgage Broker "never disclosed to Plaintiffs that the Loan in fact had a variable interest rate and that the rate was expected to fluctuate."[235]

Accepting these allegations as true and viewing them in the light most favorable to the Plaintiffs, the allegations fall short of Rule 9(b)'s pleading requirements. Plaintiffs do not indicate when or where this conversation took place

---

[233] *Id.*

[234] *In re Alamosa Holdings, Inc.*, 382 F.Supp.2d 832, 857 (N.D. Tex. 2005) ("Any allegations in the Complaint made against "Defendants" . . . do not meet the requirements of pleading allegations of fraud . . . ."); *Hawkins v. Sanders*, 2023 WL 2565403, at *3 (E.D. La. Mar. 17, 2023) ("Mere 'conclusory allegations against defendants as a group' that 'fail to allege the personal involvement of any defendant' are insufficient to put Defendants on notice of their alleged wrongdoing.") (citation modified); *Rodriguez v. Meta Platforms, Inc.*, 2025 WL 1262596 (E.D. La. Apr. 10, 2025).

[235] R. Doc. 61 at ¶¶ 20, 21.

or give any other supporting information. Rule 9(b) requires Plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[236] Further, Plaintiffs fail entirely to allege facts that could support an inference that the Mortgage Broker intended to defraud Plaintiffs. Plaintiffs do not even summarily allege that the Mortgage Broker intended to defraud Plaintiffs. At most, Plaintiffs allege that the Mortgage Broker provided information as to the terms of Plaintiffs' loan and that the information provided turned out to be incorrect. These generalized, vague allegations are not enough to support a claim for fraud under a Rule 12(b)(6) analysis.

### b. The Realtor's Motion to Dismiss as to Plaintiffs' Fraud Claim

The Realtor raises almost identical arguments in favor of dismissal of Plaintiffs' fraud claim. Specifically, the Realtor argues that many of Plaintiffs' allegations as to the Realtor itself fall short of Rule 9(b)'s pleading requirements.[237] The Realtor further argues that the few specific allegations pertaining to the Realtor itself fail to establish fraud because the alleged statements were either true or because Plaintiffs fail to allege fraudulent intent.[238] Finally, the Realtor argues that any fraudulent statement could not have caused justifiable reliance because: (1) the LLC, not Plaintiffs, is the proper party to the loan agreement; (2) Plaintiffs allege that they "fully relied on" the Mortgage Broker to convey the terms of the loan; (3)

---

[236] *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 15,,178 (5th Cir. 1997)) (citation modified).
[237] R. Doc. 65-1 at p. 17.
[238] *Id.* at p. 17-18.

Plaintiffs knew there were income requirements before entering into the loan; and (4) the loan was reduced to writing.[239]

For the same reasons explained above, the Court finds that general allegations as to Defendants' conduct as a collective fail to meet the Rule 9(b) pleading standard. Plaintiffs' specific allegations as to the Realtor are: "Plaintiffs expressed their concern about Plaintiffs' substantial existing debts but Realtor assured them that the debts would pose no problem, however, an interest rate higher than the current rate of 2.6% and a 25% down payment were required . . . . Realtor advised that there would be no income or credit requirements,"[240] "Realtor produced a purported contract containing the Plaintiffs' forged signatures and dates,"[241] and that the Realtor "confirmed that the Loan had to be refinanced after three years and that the refinancing fees would cost around $1,200.00, which turned out to be untrue."[242]

Accepting these allegations as true, these allegations fail to meet the pleading standards required by Rule 9(b). Similar to Plaintiffs' allegations against the Mortgage Broker, these allegations do not provide any supporting details, including where or when the alleged comments were made.[243] Moreover, Plaintiffs fail to explain how the first two allegations are fraudulent.[244] Finally, Plaintiffs fail to offer

---

[239] *Id.* at p. 18-19.

[240] R. Doc. 61 at ¶ 17.

[241] *Id.* at ¶ 115.

[242] *Id.* at ¶ 31.

[243] *See Elson*, 56 F.4th at 1009.

[244] Plaintiffs' claim that "Plaintiffs did not meet the financial and credit requirements of [the Bank] and in all respects did not qualify to receive any real estate mortgage loan in the amount and for the terms for which the application was made" is entirely conclusory and not afforded the benefit of truth. R. Doc. 61 at ¶ 22. *See Elson*, 56 F.4th at 1009 ("Plaintiffs must . . . explain why the statements were fraudulent.").

any allegations which, if proven at trial, would show that the Realtor intended to defraud Plaintiffs. While Plaintiffs make broad and conclusory allegations that the Realtor conveyed information which "turned out to be untrue" and provided falsified documents to Plaintiffs to sign, Plaintiffs do not allege—or allege any facts that would suggest—that the Realtor sought to defraud Plaintiffs. Accepting Plaintiffs' limited allegations as true, and viewing them in a light most favorable to Plaintiffs, Plaintiffs' fraud claim against the Realtor fails under this analysis.

### c. The Closing Agent's Motion to Dismiss as to Plaintiffs' Fraud Claim

The Closing Agent ("Trieu") too argues that Plaintiffs have failed to state a claim against it. Trieu argues that the bulk of Plaintiffs' fraud allegations relate to Defendants generally and that Plaintiffs fail to specify which Defendants participated in what conduct. Trieu then argues that Plaintiffs' forgery allegations fail to support a fraud claim because under Louisiana law, "an individual who signs a contract is presumed to have understood its contents absent evidence to the contrary" and "Plaintiffs have no evidence, other than their own self-serving testimony, to support the allegation that Plaintiffs' signatures on the mortgage loan documents were forged."[245]

For the reasons explained above, the Court does not consider Plaintiffs' generalized allegations relating to all Defendants without identifying any particular defendant. It considers only Plaintiffs' allegations relating specifically to Trieu, which

---

[245] R. Doc. 77-1 at p. 25-26.

is limited to an allegation that Trieu formed one of the allegedly fraudulent LLCs.[246] But this allegation, like Plaintiffs' allegations relating to other Defendants, falls short of Rule 9(b)'s pleading requirements. While Plaintiffs allege the "how" and "who" questions contemplated by Rule 9(b), Plaintiffs do not allege when or where in their Complaint. And despite Plaintiffs' argument in their opposition, and while viewing the facts in the light most favorable to Plaintiffs, the Court does not find that "during the Loan application and closing process" and "in loan documents, public filings, and communications with . . . Defendants" is sufficient to state a claim for fraud.[247] While such an allegation may be enough to meet the standard pleading requirements under Rule 8, these are precisely the type of general and imprecise allegations that Rule 9's heightened pleading standard seeks to prevent.

Finally, like their fraud claims against the Mortgage Broker and the Realtor, Plaintiffs fail to allege any facts going to Trieu's scienter. While Plaintiffs may raise generalized allegations that the purpose of the LLC was to defraud Plaintiffs, Rule 9(b) requires Plaintiffs to allege facts which, if proven, would establish that Trieu intended to defraud Plaintiffs. Plaintiffs have failed to do so and thus, for this reason, and the reasons outlined above, Plaintiffs' fraud claim against Trieu fails.

---

[246] R. Doc. 61 at ¶ 117 ("Defendants established the sham LLC in the name of Plaintiffs and without their knowledge and authorization. In fact, Defendants established two different LLCs. Settlement Agent, Mortgage Broker, and GCBT were directly involved in establishing the LLCs. Defendants then proceeded to file into the public records the false and fraudulent documents.") (internal citations omitted) The Court additionally notes that this allegation is made against all Defendants, which, the Court reiterates, is insufficient to satisfy the strictures of Rule 9(b).
[247] R. Doc. 82 at p. 19.

### E. Plaintiffs' Breach of Contract Claims

The elements for breach of contract under Louisiana law are: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee.[248] The Civil Code defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[249] "To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision."[250] Failure to do so "is enough to render the complaint deficient."[251]

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' Breach of Contract Claim

The Mortgage Broker argues that Plaintiffs have failed to state a claim against it for breach of contract. The Mortgage Broker argues that "Plaintiffs do not include any facts to support" their "conclusory allegations" that the Mortgage Broker breached the parties' contract.[252] The Mortgage Broker further argues that, to the extent Plaintiffs claim that the Mortgage Broker breached the loan agreement, Plaintiffs' claim must fail because the Mortgage Broker was not a party to that contract.[253]

---

[248] *SnoWizard, Inc. v. Robinson*, 897 F.Supp.2d 472, 478 (E.D. La. 2012).

[249] *Id.* (QUOTING LA. CIV. CODE art. 1756).

[250] *Engles v. Great Lakes Ins. SE*, 675 F.Supp.3d 702, 706 (E.D. La. 2023) (quoting *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002)) (internal quotations omitted).

[251] *Id.* at 707 (quoting *Omkar, LLC v. AmGUARD Ins. Co.*, 624 F.Supp.3d 646, 652 (E.D. La. 2002)) (internal quotations omitted).

[252] R. Doc. 64-1 at p. 20.

[253] *Id.* at p. 21.

As to the first element, the Court finds that the Complaint alleges facts sufficient to allege the existence of a contract between the parties. The Complaint alleges that "Plaintiffs entered into an agreement with . . . Mortgage Broker for the selection and purchase of a home, and obtainment of a residential mortgage loan."[254] The Complaint alleges that this agreement was memorialized in the Mortgage Loan Origination Agreement, which Plaintiffs attach to their operative Complaint.[255]

> Plaintiffs allege in their operative Complaint that:
>
> [T]he Mortgage Broker failed to honestly and truthfully fill out the loan application; failed to analyze the Plaintiffs' income and debt, and failed to properly determine the maximum mortgage that the Plaintiffs could afford; failed to educate Plaintiffs in the home buying and financing process, advise them about the different types of mortgage loan products, and demonstrate how closing costs and monthly payments would vary under each product; failed to provide the requisite disclosures (TILA, good faith estimate, etc.); failed to assist Plaintiffs in understanding and clearing credit problems; and failed to disclose the Mortgage Broker's compensation.[256]

Plaintiffs do not identify the specific provisions of the agreement that these failures are alleged to have violated. The Fifth Circuit has held that "in order to allege a valid 'claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision.'"[257] However, this requirement does not extend to general breach-of-contract claims under Louisiana law, and the Fifth Circuit recently declined to extend any requirement of pleading a specific breached

---

[254] R. Doc. 61 at ¶ 127.

[255] *Id.* at ¶ 137 (citing R. Doc. 61-25 at p. 13).

[256] R. Doc. 61 at ¶ 137.

[257] *Hibbets v. Lexington Ins. Co.*, 377 F. App'x 352, 355 (5th Cir. 2010) (quoting *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002)).

provision.[258] Viewing the allegations in a light most favorable to the Plaintiffs and accepting all well-pleaded allegations as true, the Court finds that Plaintiffs have sufficiently alleged a claim for breach of contract regarding the Mortgage Loan Origination Agreement.[259]

However, to the extent Plaintiffs argue that the Mortgage Broker breached the chief loan contract between Plaintiffs and the Bank,[260] Plaintiffs' claim fails. As the Mortgage Broker points out, the Mortgage Broker is not alleged to be a party to the loan agreement between Plaintiffs and the Bank, and "no action for breach of contract may lie in the absence of privity of contract between the parties."[261] Thus, any claim by Plaintiffs that the Mortgage Broker breached the chief loan contract fails.

### b. The Realtor's Motion to Dismiss as to Plaintiffs' Breach of Contract Claim

The Realtor argues that Plaintiffs have failed to state a claim against it for breach of contract. The Realtor argues that "Plaintiffs include no facts to support" their "conclusory allegations" that the Realtor breached the parties' contract.[262] The Realtor further argues that the alleged agreement between the Realtor and Plaintiffs

---

[258] *Spinosa v. Foremost Ins. Co. Grand Rapids Michigan*, No. 24-30472, 2025 WL 304530, at *1 (5th Cir. Jan. 27, 2025) ("…while Louisiana law is in play here, federal law is the key to the pleading standards, and we do not require plaintiffs to plead the specific breached provision."); *see also Innova Hosp. San Antonio, Ltd. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731–32 (5th Cir. 2018) (rejecting the notion that "to properly plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached").

[259] *See* R. Doc. 61-25 at p. 13.

[260] *See* R. Doc. 61 at ¶134 ("To the extent that Realtor and Mortgage Broker facilitated and executed the chief contract between Plaintiffs and GCBT, Realtor and Mortgage Broker stand in breach for the same reasons stated above.").

[261] *Pearl River Basin Land & Dev. Co. LLC v. Louisiana ex rel. Governor's Off. Of Homeland Security & Emergency Preparedness*, 29 So.3d 589, 592 (La. App. 1 Cir. 2009) (citation omitted).

[262] R. Doc. 65-1 at p. 20-21.

is not an agreement at all but is an informational pamphlet.[263]  Finally, the Realtor argues that, to the extent Plaintiffs claim that the Realtor breached the loan agreement, Plaintiffs' claim must fail because the Realtor was not a party to that contract.[264]

The Court finds that Plaintiffs' breach of contract claim against the Realtor fails at the first element, namely the undertaking of an obligation to perform. Plaintiffs allege that "Plaintiffs entered into an agreement with Realtor . . . for the selection and purchase of a home, and obtainment of a residential mortgage loan."[265] Plaintiffs attached the purported agreement to their operative Complaint and assert that "[t]his contract was never presented to Plaintiffs."[266]  Confusingly, Plaintiffs allege that the Realtor breached the "fraudulent contract."[267]

The most glaring issue with Plaintiffs' breach of contract claim against the Realtor is their own statement that the alleged contract "was never presented to Plaintiffs" and is therefore "fraudulent."[268] "Under Louisiana law, a contract is

---

[263] *Id.* at p. 21.

[264] *Id.*

[265] R. Doc. 61 at ¶ 127.

[266] *Id.* at ¶ 135 ("Exhibit 3 contains a copy of a purported written agreement between Plaintiffs and Realtor (Nga Baird). This contract was never presented to Plaintiffs, however, evidently, it was intended by Realtor to be the contract between the parties. The date of the purported execution is December 4, 2020, which is one day after the purchase of the Property. Plaintiffs never signed this document. In breach of that – fraudulent – contract, Realtor failed to promote the Plaintiffs' best interests; failed to treat Plaintiffs honestly; failed to help Plaintiffs compare different financing options; failed to explain the real estate terms; and failed to explain the closing costs and procedures. Ultimately, Realtor failed at its agency duties."). The Court finds it appropriate to consider the purported agreement in deciding the present motion because it is attached to the Complaint, referenced in the Complaint, and central to the Plaintiffs' claim of breach of contract. *See Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340–41 (5th Cir. 2011).

[267] *Id.* (citation modified).

[268] *Id.*

formed by the consent of the parties established through offer and acceptance."[269] "Consent is an absolute necessity to the formation of a contract, and where there is no meeting of the minds between the parties the contract is void for lack of consent."[270] Accepting Plaintiffs' allegations as true and viewing them in a light most favorable to Plaintiffs, Plaintiffs did not consent to the purported agreement, and there can be no breach of contract where there is no valid contract.[271] For this reason, Plaintiffs' breach of contract claim as to the alleged agreement (or lack thereof) between Plaintiffs and the Realtor fails, and the Court declines to consider the Realtor's additional arguments as to why Plaintiffs' claim as to this agreement should be dismissed.[272]

Finally, to the extent Plaintiffs argue that the Realtor breached the loan agreement between Plaintiffs and the Bank,[273] Plaintiffs' claim fails. As the Realtor points out, the Realtor is not alleged to be a party to the loan agreement, and "no action for breach of contract may lie in the absence of privity of contract between the parties."[274]    Thus, any claim by Plaintiffs that the Realtor breached the loan agreement fails.

---

[269] *Moridani v. Stone Clinical Labs., LLC*, 231 So.3d 803, 807 (La. App. 4 Cir. 2017).

[270] *Id.* (citing *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoore, LLC*, 111 So.3d 1099, 1111 (La. App. 4 Cir. 2001)) (citation modified).

[271] *See Bayou Rapides Corp. v. Dole*, 165 So.3d 33, 383 (La. App. 3 Cir. 2015); *J. Calderera & Co., Inc. v. Stigler*, 406 So.3d 1200, 1204 (La. App. 5 Cir. 2025).

[272] To the extent Plaintiffs contend that they entered into a verbal agreement with the Realtor and that the Realtor's alleged conduct violated the terms of the verbal agreement, Plaintiffs' claim fails because, among other things, Plaintiffs do not allege the terms of the agreements or specify factual allegations as to how the Realtor's conduct violated any verbal agreement.

[273] *See* R. Doc. 61 at ¶134 ("To the extent that Realtor and Mortgage Broker facilitated and executed the chief contract between Plaintiffs and GCBT, Realtor and Mortgage Broker stand in breach for the same reasons stated above.").

[274] *Pearl River Basin Land & Dev. Co. LLC v. Louisiana ex rel. Governor's Off. Of Homeland Security & Emergency Preparedness*, 29 So.3d 589, 592 (La. App. 1 Cir. 2009) (citation omitted).

### F.  Plaintiffs' FHA Claims

The Fair Housing Act ("FHA") makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[275]  It likewise provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.[276]

### a.  The Mortgage Broker's Motion to Dismiss as to Plaintiffs' FHA Claim

The Mortgage Broker argues that Plaintiffs' FHA claims must be dismissed as time-barred.  The statute of limitations for FHA claims is two years, and it begins to run "after the occurrence or the termination of an alleged discriminatory housing practice."[277]  Plaintiffs allege that the Mortgage Broker violated the FHA by communicating incorrect loan terms and information to Plaintiffs in connection with the purchase of their home.  Plaintiffs advise in their Complaint that their association with the Mortgage Broker began in October 2020 and that Plaintiffs closed on the property on December 3, 2020.[278]  Reading the Complaint in the light most favorable to Plaintiffs, the Court considers December 3, 2020, to be the end of the occurrence

---

[275] 42 U.S.C. § 3604(b).
[276] 42 U.S.C. § 3605(a).
[277] 42 U.S.C. § 3613(a)(1)(A); *Lawrence v. Ctr. Props., LLC*, 847 F. App'x 254, 256 (5th Cir. 2021).
[278] R. Doc. 61 at ¶¶ 17, 24 n.6.

that Plaintiffs allege gives rise to their FHA claim. Plaintiffs filed suit on August 2, 2024, over three and a half years later.[279]  Plaintiffs do not appear to dispute that the actions that give rise to their FHA claim occurred more than two years before they filed suit.[280]  Plaintiffs argue, however, that their claims are not prescribed due to equitable tolling and the continuing violation theory.  The Court disagrees.

"Equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[281]  "Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law."[282]  The Fifth Circuit has recognized that equitable tolling may be appropriate when a plaintiff is unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them.[283] The Fifth Circuit has found that a limitations period may be tolled when two elements are met: "first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim."[284]  The Plaintiffs bear the burden of establishing that equitable tolling is appropriate.[285]

---

[279] R. Doc. 1.

[280] *See supra* note 278.

[281] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (citation modified).

[282] *Id.* (citing *Rotella v. Wood*, 528 U.S. 549, 560 (2000)).

[283] *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402,404 (5th Cir. 1995)).

[284] *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 489 (5th Cir. 2016) (quoting *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988)).

[285] *Id.* (citing *Wilson*, 65 F.3d at 404).

Plaintiffs argue that the Mortgage Broker fraudulently concealed the true terms of the loan by communicating false terms to Plaintiffs in Vietnamese. Taking this allegation as true, as the Court must do at this stage, Plaintiffs cannot prevail in showing fraudulent concealment because Plaintiffs have not alleged that they exercised due diligence in discovering their claims. Quite the opposite. Plaintiffs allege that based on the paperwork they had access to, their attorney was able to review the loan terms and determine that "the Note contains different terms and conditions than what had been relayed to Plaintiffs by Defendants."[286] While the Mortgage Broker may have verbally communicated to Plaintiffs loan terms that are different than those in the executed loan documents, Plaintiffs do not allege that they have not been in possession of the loan documents. Had Plaintiffs exercised due diligence in having the loan documents translated or had an attorney review the documents prior to signing them, they would have uncovered the alleged fraud.[287] Thus, equitable tolling is not appropriate.

Nor does the continuing violation theory save Plaintiffs' claims. "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred."[288] Plaintiffs argue that the continuing violation applies here because "Ms. Tran was and remains subject to the illicit and fraudulent terms of the Loan" and therefore, the violations are ongoing.[289] This

---

[286] R. Doc. 61 at ¶ 40.

[287] *See id.* at ¶ 24.

[288] *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993).

[289] R. Doc. 61 at ¶ 145.

application of the continuing violation theory has been expressly rejected by the Fifth Circuit.  As stated by the Fifth Circuit, "a plaintiff cannot use the continuing violation theory to resurrect claims about discrimination . . . concluded in the past, even though its effects persist."[290]  That Plaintiffs refer to Plaintiffs' ongoing obligations to pay the loan as "continuing violations" does not change the fact that the alleged FHA violation is the mortgage itself.  Everything after the execution of the mortgage is merely a result of a violation.  For this reason, the continuing violation theory is unavailable to Plaintiffs, and their FHA claim must be dismissed as time-barred.

### b.  The Closing Agent's Motion to Dismiss as to Plaintiffs' FHA Claim

The Closing Agent ("Trieu") likewise seeks dismissal of Plaintiffs' FHA claim, although Trieu does so on the merits of the claim.[291]  Trieu argues that the Complaint fails to allege that Trieu discriminated against Plaintiffs and that, as a result, Plaintiffs' FHA claim fails as a matter of law. Plaintiffs argue that this claim "is rooted in allegations that Defendants engaged in a deliberate and coordinated scheme to mislead and defraud Plaintiffs by exploiting their national origin and LEP status" and that Defendants' actions "constitute intentional discrimination under the Fair Housing Act."[292]

For a claim of intentional discrimination or "disparate treatment," which "refers to treating some people 'less favorably than others because of a protected

---

[290] *McGregor*, 3 F.3d at 867.

[291] *See* R. Doc. 77-1 at pp. 16-19. Because Trieu has not argued that Plaintiffs' FHA claim is time-barred, the Court does not consider the statute of limitations as applied to the FHA claim against Trieu.

[292] R. Doc. 82 at p. 14.

trait,'" there must be "evidence of discriminatory action" or "inferences from the fact of differences in treatment."[293] "With discriminatory treatment claims, there can be no liability without a finding that the protected trait (*e.g.*, race [or national origin]) motivated the challenged action."[294] Plaintiffs' Complaint alleges:

> Defendants communicated information to Plaintiffs verbally in Vietnamese, while all the documents and purported agreements were in English, that is, a language that Defendants knew that Plaintiffs cannot read and understand. Defendants also failed to provide the pertinent documents in Vietnamese, the language that Plaintiffs can read and understand.[295]

Accepting these facts as true, the Court finds that the vague and conclusory allegations asserted against all Defendants collectively to be "legally insufficient to support a reasonable inference of intentional [national origin] discrimination" against the Closing Agent.[296] For that reason, the FHA claim asserted against the Closing Agent must be dismissed.

### G. Plaintiffs' Unjust Enrichment Claims

Plaintiffs also bring claims for unjust enrichment.[297]  To plead a claim for unjust enrichment under Louisiana law, a plaintiff must allege: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) an absence of justification or cause for the enrichment or impoverishment; and (5) no other remedy at law available."[298]

---

[293] *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890, 909-910 (5th Cir. 2019) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009)).

[294] *Id*.

[295] R. Doc. 61 at ¶ 142.

[296] *See Inclusive Communities*, 920 F.3d at 910.

[297] R. Doc. 61 at ¶ 150.

[298] *Nine-O-Five Royal Apartment Hotel, Inc. v. Atkins*, 151 So.3d 739, 755 n.25 (La. App. 4 Cir. 2014) (citing *United Enterprises Corp. v. Dixon Mortgage Group, Inc.*, 762 So.2d 43, 47 (La. App. 4 Cir. 2000)).

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' Unjust Enrichment Claim

The Mortgage Broker argues that Plaintiffs' unjust enrichment fails because Plaintiffs do not allege that the only enrichment the Mortgage Broker received—the broker fee—was unearned.[299] The Mortgage Broker further argues that unjust enrichment is subsidiary in nature and can only survive if all of Plaintiffs' other claims fail.[300]

The Court addresses the Mortgage Broker's final argument first.  Louisiana Civil Code Article 2298, the Article pertaining to unjust enrichment, instructs that unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."[301]  Courts interpreting this Article, including the Louisiana Supreme Court, have explained that the existence of another remedy at law will preclude an unjust enrichment claim.[302]  Plaintiffs argue that this does not preclude their claim for unjust enrichment because "Louisiana law allows unjust enrichment claims to proceed where other remedies may fail or prove unavailable."[303]  Plaintiffs argue that if their

---

[299] R. Doc. 64-1 at p. 22.

[300] *Id.* at pp. 22-23.

[301] LA. CIV. CODE art. 2298.

[302] *Andretti Sports Marketing La, LLC v. NOLA Motorsports Host Committee, Inc.*, 2015 WL 13540096, at *7 (E.D. La. Dec. 2, 2015); *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 581 F. App'x 440, 444 (5th Cir. 2014); *United States v. Cytogel Pharma, LLC*, 2018 WL 5297753, at *16-17 (E.D. La. Oct. 25, 2018); *Walters v. MedSouth Record Mgmt, LLC*, 38 So.3d 241, 242 (La. 2010); *JP Mack Industries, LLC v. Mosaic Fertilizer, LLC*, 970 F.Supp.2d 516, 521 (E.D. La. 2013); *Patriot Contracting, LLC v. Star Ins. Co.*, 2018 WL 1123586, at *5 (E.D. La. Mar. 1, 2018).

[303] R. Doc. 75 at p. 68.

remaining claims—the subject of three motions to dismiss—"fail, unjust enrichment would provide the only available remedy."[304]

Plaintiffs' statement of the law is in direct conflict with what the law actually provides. Indeed, courts interpreting Article 2298, including various sections of this Court, the Fifth Circuit, and the Louisiana Supreme Court, have explained that "[t]he important question is whether another remedy is *available*, not whether the party seeking a remedy will be successful."[305] This distinction is highlighted in the Louisiana Supreme Court's decision in *Walters v. MedSouth Record Management, LLC*.[306] In that case, the plaintiff amended his petition to raise a claim for unjust enrichment after his tort claim was dismissed.[307] The defendant filed an exception of no cause of action, which the district court denied.[308] In reviewing the district court's decision, the state Supreme Court held that the plaintiff was precluded from recovering under unjust enrichment because he had pleaded a tort claim.[309] It was of no moment, the Court explained, that plaintiff's tort claim was ultimately unsuccessful; "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[310] Indeed, to find otherwise "would be tantamount to allowing

---

[304] *Id.* at p. 69.
[305] *Ferrara*, 581 F. App'x at 443-44.
[306] 38 So.3d 241.
[307] *Id.* at 242.
[308] *Id.*
[309] *Id.*
[310] *Id.*

any plaintiff who let his cause of action prescribe, or any plaintiff who knowingly wrote a bad contract, to recover under an enrichment theory."[311]

Plaintiffs have asserted ten causes of action against Defendants in this case. However, unlike in *Walters*, Plaintiffs here have additionally asserted a claim for unjust enrichment against many of the same Defendants. Whether Plaintiffs are ultimately successful in pursuing those claims is of no import.[312] While Fed. R. Civ. P. 8(d) permits a party to plead separate, inconsistent claims in the alternative, "the Fifth Circuit and Louisiana Supreme Court agree that if a plaintiff pleads alternative claims, such as contract or delictual claims, the plaintiff cannot maintain a cause of action for unjust enrichment on those same facts."[313] Plaintiffs' Fourth Amended Complaint clearly establishes that other remedies exist and are available to Plaintiffs and that Plaintiffs' unjust enrichment claim is based on identical facts as their other claims, and therefore, unjust enrichment is unavailable to Plaintiffs.[314] Plaintiffs' claim for unjust enrichment against the Mortgage Broker must be dismissed.

---

[311] *Id.* (quoting *Jim Walter Homes v. Jessen*, 732 So.2d 699, 706 (La. App. 3 Cir. 1999)).

[312] *Ferrara Fire Apparatus, Inc.,* 581 F. App'x at 443–44 ("the important question is whether another remedy is available, not whether the party seeking a remedy will be successful.").

[313] *Matrix HVAC, LLC v. Daikin Applied Americas, Inc.*, No. CV 23-1669, 2023 WL 8701330, at *6 (E.D. La. Dec. 15, 2023) (Barbier, J.) (citing *Ferrara Fire Apparatus, Inc.*, 581 F. App'x at 443-444; *Walters v. Medsouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010)); *see also Oliver v. Roehm Am., LLC*, No. CV 21-1831, 2023 WL 2475695, at *5 (E.D. La. Mar. 13, 2023) (Brown, J.); *Shaw v. Restoration Hardware, Inc.*, No. CV 21-1540, 2022 WL 343458, at *6 (E.D. La. Feb. 4, 2022) (Lemelle, J.); *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *7–8 (E.D. La. May 26, 2021) (Vance, J.).

[314] Even if this were not the law, the Court notes that not all of Plaintiffs' claims are the subject of a motion to dismiss as to every Defendant. By way of example, the Realtor notes that Plaintiffs' FHA claim "is not the subject of [its] motion." R. Doc. 65-1 at p. 2. Furthermore, Defendants Gulf Coast Bank and Trust and Rance Mangipano did not file a motion to dismiss. *See also id.* at 444 (holding that because the plaintiff could have brought a claim for breach of contract for any damages it incurred during the time the contract was still in effect, the Plaintiff cannot maintain a cause of action for unjust enrichment during that time).

### b. The Realtor's Motion to Dismiss as to Plaintiffs' Unjust Enrichment Claim

The Realtor likewise argues that dismissal of Plaintiffs' unjust enrichment claim is appropriate. As a basis for dismissal, the Realtor argues that Plaintiffs' claim may not succeed because Plaintiffs have pleaded other theories of recovery and because the only enrichment Plaintiffs allege is work that the Realtor actually performed.

For the same reasons stated above, the Court grants the motion to dismiss Plaintiffs' unjust enrichment claim against the Realtor under Fed. R. Civ. P. 12(b)(6).

### c. The Closing Agent's Motion to Dismiss as to Plaintiffs' Unjust Enrichment Claim

The Closing Agent also argues that dismissal of Plaintiffs' unjust enrichment claim is appropriate. As a basis for dismissal, the Closing Agent argues that Plaintiffs' claim may not succeed because Plaintiffs have pleaded other theories of recovery and because "unjust enrichment cannot result from a valid juridical act."[315]

For the same reasons stated above, the Court grants the motion to dismiss Plaintiffs' unjust enrichment claim against the Closing Agent under Fed. R. Civ. P. 12(b)(6).

### H. Plaintiffs' Breach of Fiduciary Duty Claims

Plaintiffs also argue that the Realtor and the Mortgage Broker breached their fiduciary duties to Plaintiffs.[316] Under Louisiana law, the elements of a breach of

---

[315] R. Doc. 77-1 at pp. 27-28.
[316] R. Doc. 61 at ¶¶ 154 and 155.

fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the duty by the fiduciary; and (3) damages resulting from the breach.[317]

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' Breach of Fiduciary Duty Claim

The Mortgage Broker argues that Plaintiffs' fiduciary claims against it must be dismissed because the Mortgage Broker did not owe a fiduciary duty to Plaintiffs. The Mortgage Broker further alleges that Plaintiffs have not suffered any injury because the LLC, not Plaintiffs, are the borrowers on the loan.

A fiduciary duty requires a fiduciary relationship.[318] "A fiduciary relationship has been described as one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other."[319]

> One is said to act in a fiduciary capacity when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other.[320]

"Whether a fiduciary duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties."[321]

Despite the Mortgage Broker's insistence to the contrary, the Court finds that Plaintiffs have successfully pleaded that the Mortgage Broker owed a fiduciary duty to Plaintiffs. Plaintiffs pleaded that they were referred to the Mortgage Broker "for

---

[317] *United States Small Business Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003) (citing *Omnitech Int'l, Inc. v. The Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994)).

[318] *Scheffler v. Adams & Reese, LLP*, 950 So.2d 641, 647 (La. 2007) (citation modified).

[319] *Id.* (quoting *Plaquemines Par. Commission Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1040 (La. 1987)) (citation modified).

[320] *Id.* (quoting *State v. Hagerty*, 251 La. 477, 493 (La. 1967)) (citation modified).

[321] *Hunters Run Gun Club, LLC v. Baker*, 2019 WL 3400696, at *4 (M.D. La. July 26, 2019) (quoting *Scheffler*, 950 So.2d at 647) (citation modified).

a residential loan to purchase the Property."[322]  Plaintiffs further allege that they provided their tax returns to the Mortgage Broker and that after review, the Mortgage Broker advised Plaintiffs on the type of loan for which Plaintiffs were eligible.[323]  These factual allegations, which are accepted as true and viewed in the light most favorable to Plaintiffs as is required under Fed. R. Civ. P. 12(b)(6), plausibly allege that the Mortgage Broker owed a duty to Plaintiffs in facilitating their mortgage and then breached that duty by failing to disclose to Plaintiffs that the loan had a variable interest rate.[324] Plaintiffs have also sufficiently alleged damages as a result of the alleged breach.[325] For those reasons, the Court denies the Mortgage Broker's motion to dismiss as it pertains to the claim for breach of fiduciary duty.

### b. The Realtor's Motion to Dismiss as to Plaintiffs' Breach of Fiduciary Duty Claim

The Realtor argues that Plaintiffs "include no facts in their fourth amended complaint that support their claim for breach of fiduciary duty against either Ms. Baird or New World Realty" and that the Realtor had no duty to disclose information to Plaintiffs regarding the bank loan.[326]

For a breach of fiduciary duty to have occurred, a fiduciary relationship must have necessarily existed. A real estate broker "stands in a fiduciary relationship to his client, and is bound to exercise reasonable care, skill and diligence in the

---

[322] R. Doc. 61 at ¶ 17.
[323] *Id*. at ¶ 19.
[324] *Id*. at ¶¶ 20-21.
[325] *Id*. at ¶¶ 33, 145.
[326] R. Doc. 65-1 at p. 22.

performance of his duties."[327] A broker's duties are generally "limited to those which can be analogically drawn from La. R.S. 37:1454 and from the customs and practices of real estate brokers in general."[328] Because Plaintiffs have alleged that the Realtor worked as a real estate broker for the Plaintiffs, and viewing the allegations in the Complaint as true and in the light most favorable to the plaintiffs, Plaintiffs have successfully alleged that the Realtor owed a fiduciary duty to them.

However, when isolating the facts as pled in the Complaint, and accepting them as true, the Court finds that the allegations as stated do not give rise to a cognizable claim of breach of fiduciary duty against the Realtor because the allegations do not demonstrate that the Realtor breached their duty. While Plaintiffs argue in their opposition to the present motion that they alleged that "Ms. Baird assured them that the loan would be a fixed-rate residential loan with an interest rate of 4.85%," this allegation does not appear in the operative Complaint.[329] As such, the Court finds that the claim for breach of fiduciary duty against the Realtor must be dismissed.

## I. Plaintiffs' Negligent Misrepresentation Claims

To state a claim for negligent misrepresentation in Louisiana, the plaintiff must allege: (1) a legal duty on the part of the defendant to provide correct

---

[327] *Mallet v. Maggio*, 503 So. 2d 37, 38 (La. Ct. App. 1 Cir. 1986), *writ denied sub nom. Mallett v. Maggio*, 504 So. 2d 880 (La. 1987) (internal citation omitted).

[328] *Id.* (quoting *Leggio v. Realty Mart, Inc.,* 303 So.2d 920, 923–24 (La. App. 1 Cir.1974), *writ denied,* 307 So.2d 629 (La.1975)).

[329] *Compare* R. Doc. 76 at p. 41 *with* R. Doc. 61 at ¶ 19.

information; (2) breach either by omission or affirmative misrepresentation; and (3) damages based on the plaintiff's reasonable reliance on the misrepresentation.[330]

### a. The Mortgage Broker's Motion to Dismiss as the Plaintiffs' Negligent Misrepresentation Claim

The Mortgage Broker argues that Plaintiffs' claim fails because Plaintiffs "do not allege that defendants told them that the loan was a fixed-rate residential mortgage."[331] Plaintiffs allege in their operative Complaint that the Mortgage Broker "presented the terms of the loan to Plaintiffs as a $160,500.00, 20-year term at a fixed 4.85% interest rate" and that the Mortgage Broker "never disclosed to Plaintiffs that the Loan in fact had a variable interest rate and that the rate was expected to fluctuate."[332]  This allegation, however, is insufficient to meet the pleading requirements of Rule 9(b).[333]  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[334] As the Court explained with relation to Plaintiffs' fraud claim based on the same allegation, Plaintiffs fail to allege when and where the Mortgage Broker made this representation. Without these supporting factual allegations, Plaintiffs' negligent misrepresentation claim cannot stand.

---

[330] *Kadlec*, 527 F.3d at 418.

[331] R. Doc. 64-1 at p. 19.

[332] R. Doc. 61 at ¶¶ 20, 21.

[333] *See Benchmark*, 343 F.3d at 723 ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims.  That is the case here, as Benchmark's fraud and negligent misrepresentation claims are based on the same set of alleged facts.") (citation modified) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

[334] *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).

**b. The Realtor's Motion to Dismiss as the Plaintiffs' Negligent Misrepresentation Claim**

"A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation."[335]   Plaintiffs argue that the Realtor breached this duty by assuring Plaintiffs "that they were securing a fixed-rate residential mortgage loan at an interest rate of 4.85%" when "in reality, the Loan was a variable-rate commercial loan issued in the name of a sham LLC without Plaintiffs' consent or knowledge."[336] In support of their argument, Plaintiffs cite to paragraphs 19 and 20 of the operative Complaint. Those paragraphs, however, allege representations made by the *Mortgage Broker*.  The only allegation relating to what the Realtor represented to Plaintiffs regarding the loan is that the "Realtor assured them that the debts would pose no problem, however, an interest rate higher than the current rate of 2.6% and a 25% down payment were required . . . . Realtor advised that there would be no income or credit requirements."[337]  The basis of Plaintiffs' claim is that they were bound to an adjustable-rate mortgage despite being advised that they were receiving a fixed rate mortgage. Plaintiffs do not allege that the Realtor made any representation to Plaintiffs that they would receive a fixed rate mortgage.[338] For that reason, the claim does not survive the Realtor's Motion.

---

[335] *Merlin v. Fuselier Const., Inc.*, 789 So.2d 710, 717 (La. App. 2 Cir. 2001).

[336] R. Doc. 76 at p. 37.

[337] R. Doc. 61 at ¶ 17.

[338] As the Realtor points out, none of Plaintiffs' other allegations relating to the Realtor support a claim for negligent misrepresentation.

### c. The Closing Agent's Motion to Dismiss as the Plaintiffs' Negligent Misrepresentation Claim

The Closing Agent argues that Plaintiffs' claim against it fails because Plaintiffs have not alleged that Trieu owed them a duty or that it made any misrepresentations to Plaintiffs. Plaintiffs allege that Trieu's actions "extended far beyond ministerial functions, creating a duty to disclose material facts about the Loan's structure and terms."[339] In response to Trieu's argument regarding its lack of duty, Plaintiffs summarily declare that "[a] duty to disclose arises where one party has superior knowledge or control over material facts that are not accessible to the other party, and the other party is relying on that information."[340] Plaintiffs fail to cite any legal source for this statement. While the scope of the duty owed by Trieu to Plaintiffs is unclear, the Court need not resolve the issue. Plaintiffs make no allegation in the Complaint that Trieu was aware that Plaintiffs lacked any knowledge regarding the mortgage arrangement or that Trieu made any statement to Plaintiffs regarding the mortgage arrangement.[341] Similar to the allegations concerning the Mortgage Broker, these too are insufficient to meet the pleading requirements of Rule 9(b) because they do not allege when and where the alleged statement was made.[342] Without supporting factual allegations, and accepting the

---

[339] R. Doc. 82 at p. 21.

[340] *Id.*

[341] *See* R. Doc. 61 at ¶ 52.

[342] *See Benchmark*, 343 F.3d at 723 ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. That is the case here, as Benchmark's fraud and negligent misrepresentation claims are based on the same set of alleged facts.") (citation modified).

allegation in the Complaint as true, Plaintiffs' Fourth Amended Complaint fails to state a claim for negligent misrepresentation as to the Closing Agent.

### J. Plaintiffs' Civil Conspiracy Claims

Finally, Plaintiffs bring a claim for civil conspiracy. A claim for civil conspiracy under Louisiana law is rooted in Civil Code Article 2324. That Article does not by itself impose liability for a civil conspiracy.[343] Instead, the actional element under Article 2324 is the tort which the conspirators agreed to and ultimately perpetrate.[344] Thus, to state a claim for civil conspiracy under Louisiana law, the plaintiff must allege: (1) an agreement existed to commit an illegal or tortious act; (2) the act was actually committed; (3) the act caused the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.[345]

### a. The Mortgage Broker's Motion to Dismiss as to Plaintiffs' Civil Conspiracy Claim

The Mortgage Broker argues that Plaintiffs have failed to properly allege the existence of an agreement, thereby implicating the first and fourth elements required to state a claim for civil conspiracy.[346] The Mortgage Broker insists that "Plaintiffs did not allege any facts that would support a finding that the defendants entered into . . . an agreement—only that defendants 'actively communicated.'"[347] This, the Mortgage Broker argues, is insufficient to state a claim for civil conspiracy.

---

[343] *Thames v. Thames*, 196 So.3d 653, 655 (La. App. 2 Cir. 2016) (citing *Haygood v. Dies*, 174 So.3d 1211 (La. App. 2d Cir. 2015)).

[344] *Id.* (citing *Haygood*, 174 So.3d at 1211).

[345] *Jeff Mercer, LLC v. State ex rel. Dep't of Transp. & Dev.*, 222 So.3d 1017, 1024 (La. App. 2 Cir. 2017) (collecting cases).

[346] R. Doc. 64-1 at 24.

[347] *Id.*

A claim under Article 2324 requires the plaintiff to allege the existence of "the requisite agreement between the parties, i.e., the plaintiff must [allege] a meeting of the minds or collusion between the parties for the purposes of committing wrongdoings."[348]   Plaintiffs argue that they meet this standard by demonstrating "direct coordination between Defendants to perpetrate fraud, as evidenced by their joint participation in forging documents, misrepresenting loan terms, and creating the sham LLC" which Plaintiffs allege is established through emails.[349]

Despite Plaintiffs' insistence to the contrary, Plaintiffs fail to make any allegations that Defendants entered into an agreement to defraud Plaintiffs.  While Plaintiffs allege that certain loan documents were forged, Plaintiffs do not allege that Defendants agreed to forge the documents or that they did so with the purpose of defrauding Plaintiffs.  Plaintiffs merely allege that "Additional loan documents . . . were obtained from [the Bank] in or about June 2024.  All the documents were forged."[350]   The same rings true for Plaintiffs' allegations that Defendants misrepresented the terms of the loan.  Plaintiffs do not allege that Defendants agreed to misrepresent to Plaintiffs that their adjustable-rate mortgage was a fixed-rate mortgage.  Instead, Plaintiffs' allegations regarding the alleged misrepresentation from the Mortgage Broker appear to undercut Plaintiffs' argument that there was an agreement among Defendants to misrepresent the terms of the mortgage.  Plaintiffs allege in their operative Complaint that "[the Mortgage Broker] presented the terms

---

[348] *Agrifund, LLC v. Radar Ridge Planting Co., Inc.*, 278 So.3d 1025,
[349] R. Doc. 75 at p. 66.
[350] R. Doc. 61 at ¶ 44.

of the loan to Plaintiffs as a $160,500.00, 20-year term at a fixed 4.85% interest rate

. . . . [The Mortgage Broker] never disclosed to Plaintiffs that the Loan in fact had a

variable interest rate and that the rate was expected to fluctuate."[351]  Any allegations

that the terms of the loan were misrepresented to Plaintiffs is limited to an allegation

that the Mortgage Broker misrepresented the terms of the loan.

Finally, Plaintiffs point to a thirty-page exhibit attached to their Complaint as

support for their argument that Defendants formed an agreement to defraud

Plaintiffs by binding them to an adjustable-rate mortgage instead of a fixed rate

mortgage.[352] The cited exhibit includes various emails between Gulf Coast employees,

the Mortgage Broker, and Trieu.[353]  Plaintiffs point to certain emails discussing the

creation of LLCs in Plaintiffs' names as allegations that Defendants agreed to defraud

Plaintiffs.  While the emails may show at least an understanding that Trieu and the

Bank intended to create an LLC to facilitate the loan, they do not show that the

purpose of the LLC was to defraud Plaintiffs.  Creating an LLC in Plaintiffs' names

does not necessarily equate to binding Plaintiffs to an adjusted rate mortgage even

though they were told they were receiving a fixed rate mortgage.  In other words,

even if Plaintiffs were to successfully show that all Defendants entered into an

agreement to create an LLC in Plaintiffs' name, Plaintiffs would not succeed in

---

[351] R. Doc. 61 at ¶¶ 20, 21.

[352] The Court finds it appropriate to consider the email chain in deciding the present motion because it is attached to the Complaint, referenced in the Complaint, and central to the Plaintiffs' claim of civil conspiracy, which concerns an alleged agreement among Defendants that Plaintiffs alleges the emails evince. *See Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

[353] *See generally* R. Doc. 61-26.

proving that Defendants entered into an agreement to bind Plaintiffs to an adjustable-rate mortgage as opposed to a fixed-rate mortgage.

Plaintiffs' Complaint make no allegation that Defendants entered into an agreement to defraud Plaintiffs. Absent such an allegation, Plaintiffs cannot successfully state a civil conspiracy claim under Article 2324.

### b. The Realtor's Motion to Dismiss as to Plaintiffs' Civil Conspiracy Claim

The Realtor likewise argues that Plaintiffs' civil conspiracy claim fails because Plaintiffs have failed to allege that Defendants agreed to defraud Plaintiffs.[354] For the reasons explained above, the Court agrees. Accordingly, Plaintiffs fail to state a civil conspiracy claim against the Realtor.

### K. Whether Plaintiffs Should be Granted Leave to Amend

#### 1. Leave to Amend the Dismissed Claims

Plaintiffs do not specifically ask for leave to amend in their response to any of the present Motions; however, because the Federal Rules of Civil Procedure state that the Court "should freely give leave when justice so requires," the Court now considers whether to grant Plaintiffs leave to amend.[355] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[356] Furthermore, "an amended complaint is futile if it fails to state a claim upon which relief may be granted."[357] A district court's decision regarding leave to amend is "reviewed for an abuse of discretion," and that

---

[354] R. Doc. 65-1 at p. 24.
[355] Fed. R. Civ. P. 15(a)(2)
[356] *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).
[357] *Id.* at 379.

discretion is properly exercised "when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility."[358] Here, Plaintiffs have filed five complaints since filing suit in August 2024.

Because the Plaintiffs' claims under the Truth in Lending Act and for unjust enrichment as to all three moving Defendants and the Fair Housing Act as to the Mortgage Broker, are barred as a matter of law, the Court finds that any amendment would be futile and thus declines to grant Plaintiffs leave to amend these claims.[359] The Court also finds that amendment of the RICO, LRA, and fraud claims would be futile under the standard set forth in *Maurcci Sports*, in which the Fifth Circuit affirmed the district court's denial of leave to amend after allowing the Plaintiff three opportunities to do so.[360] While the Court has never identified the deficiencies present in Plaintiffs' pleading, Plaintiffs have had notice of deficiencies identified by Defendants in Motions to Dismiss filed by the Realtor[361] and the Mortgage Broker[362] prior to the filing of the Fourth Amended Complaint. In the Realtor's prior motion to

---

[358] *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) (quoting *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014)); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party.").

[359] *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) ("When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint.").

[360] *Marucci Sports, L.L.C.*, 751 F.3d at 379 ("After allowing Marucci three opportunities to state a claim upon which relief could be granted, the district court was satisfied that the defects in the complaint could not be cured.").

[361] R. Doc. 28.

[362] R. Doc. 31.

dismiss which was pending before Plaintiffs filed their Fourth Amended Complaint, she challenges Plaintiffs' RICO, LRA, fraud, and unjust enrichment claims in the Second Amended Complaint for similar, if not identical, reasons as she does the claims in the Fourth Amended Complaint.[363] The Mortgage Broker challenged all five of the claims levied against her in the Second Amended Complaint: Plaintiffs' RICO, LRA, fraud, FHA, and unjust enrichment claims, for largely the same reasons as it does now in the present motion.[364] Because Defendants had given notice to Plaintiffs regarding deficiencies in these claims in the form of Motions to Dismiss prior to the filing of the Fourth Amended Complaint, the Court finds that leave to amend should not be granted regarding Plaintiffs' RICO, LRA, fraud, FHA, and unjust enrichment claims because Plaintiffs had the opportunity to previously cure deficiencies identified by the Defendants.

Furthermore, even if leave to amend these claims was not found appropriate to be denied for the reasons stated above, Plaintiffs have amended the Complaint multiple times, and this case has progressed well into discovery and is currently set for trial on June 29, 2026.[365] The Court finds that Plaintiffs have failed repeatedly to cure deficiencies in their pleadings and that allowing leave to amend at this later stage in the litigation would cause undue prejudice to Defendants and delay to the Court as to these claims. For that additional reason, the Court declines to grant leave

---

[363] *See* R. Doc. 28-1. Notably, in their Second Amended Complaint, Plaintiffs only assert four claims against the Realtor: RICO, LRA, fraud, FHA, and unjust enrichment. (R. Doc. 19). Like her original motion, in the present motion, the Realtor does not move to dismiss Plaintiffs' claim under the FHA.
[364] *Compare* R. Doc. 31-1 *with* R. Doc. 64-1.
[365] *See* R. Docs. 14, 19, 61; R. Doc. 208.

to amend the dismissed claims previously addressed in Defendants' Motions to Dismiss that were later denied as moot and without prejudice.[366]

Regarding the claims of negligent misrepresentation, breach of fiduciary duty, and civil conspiracy as to all moving Defendants and the Fair Housing Act claim as to the Closing Agent, the Court finds that Defendants have not failed repeatedly to cure deficiencies regarding these claims and further finds that justice so requires leave to amend *these claims only*.[367]

### 2. Plaintiffs' Motion for Leave to File Supplemental Complaint

Because the Court has granted the Mortgage Broker's, Realtor's, and Closing Agent's Motions to Dismiss as they pertain to the claims brought under RICO, and having considered the factors pursuant to *Lewis v. Knutson*, the Court denies Plaintiffs' Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d).[368] The Court has found that Plaintiffs' claim under § 1962(d) is futile and, as a result, denies the remaining portion of Plaintiffs' Motion for Leave to File Supplemental Complaint as it relates to the claim under RICO, stemming from the April 23, 2025 settlement conference.

---

[366] R. Doc. 60.

[367] Fed. R. Civ. P. 15(a)(2).

[368] 699 F.2d 230, 239 (5th Cir. 1983) ("whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action."); R. Doc. 119.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motions to Dismiss[369] are **GRANTED in part** and **DENIED in part**. The Mortgage Broker's Motion to Dismiss[370] is **DENIED** as it pertains to Plaintiffs' claims for breach of contract and for breach of fiduciary duty. The Motions are, in all other respects, **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Complaint Pursuant to Rule 15(d)[371] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their Fourth Amended Complaint **only** as it relates to their claims of negligent misrepresentation as to the Mortgage Broker, the Realtor, and the Closing Agent; breach of fiduciary duty as to the Realtor; civil conspiracy as to the Mortgage Broker, the Realtor, and the Closing Agent; and Fair Housing Act as to the Closing Agent.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **Friday, April 10, 2026,** to file a comprehensive Fifth Amended Complaint addressing the deficiencies raised in this Order.  The comprehensive amended pleading shall include all of Plaintiff's numbered allegations, as revised, supplemented, and/or amended, which will become the operative complaint in this matter without reference to any other document in the record. No new claims may be added, and no other remaining claims may be supplemented, except for the ones noted above. Failure to timely file a

---

[369] R. Docs. 64, 65, and 67.

[370] R. Doc. 64.

[371] R. Doc. 119.

comprehensive Fifth Amended Complaint shall result in the dismissal of the claims as set forth in this Order.

New Orleans, Louisiana, March 31, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**