**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MY THI NHU TRAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1933** |
| **GULF COAST BANK & TRUST CO., ET AL.** | **SECTION: D(5)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiffs' Motion to Reconsider Interlocutory Order and, in the Alternative, for Limited Leave to File Sixth Amended Complaint filed by Plaintiffs My Thi Nhu Tran and Tung Duc Vo ("Plaintiffs").[1]  Defendants Samantha Tuyet Nguyen Tran, Lloyd & Taylor Mortgage, LLC, Nga Baird, New World Realty, LLC, Gulf Coast Bank & Trust Company, Rance Mangipano, and Trieu Law, LLC (collectively, "Defendants") oppose the Motion.[2]  Plaintiffs filed a reply.[3]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an alleged mortgage lending scheme orchestrated by Defendants against Plaintiffs.  In 2020, Plaintiffs, who are Vietnamese immigrants with limited English proficiency, began the process of buying a home.[4]  Throughout this process, Nga Baird, through her company, New World Realty, LLC, served as

---

[1] R. Doc. 234.
[2] R. Doc. 248.
[3] R. Doc. 253.
[4] R. Doc. 61 at ¶ 16.  The present Motion seeks reconsideration of the Court's Order and Reasons granting in part and denying in part Defendants' Motions to Dismiss Plaintiffs' Fourth Amended Complaint for failure to state a claim (R. Doc. 227). For the purposes of this Order and Reasons, the Court considers the facts as alleged in that Complaint.

their realtor ("The Realtor");[5] Samantha Tuyet Nguyen Tran, through her company, Lloyd & Taylor Mortgage, LLC, served as their mortgage broker ("The Mortgage Broker");[6] Trieu Law, LLC served as their closing agent ("The Closing Agent");[7] Gulf Coast Bank & Trust Co. served as their bank;[8] and Rance Mangipano of Gulf Coast Bank & Trust Co. served as their loan officer.[9]  Generally, Plaintiffs allege that Defendants defrauded Plaintiffs by deceiving them into signing a loan with terms far less favorable than those explained to and agreed upon by Plaintiffs.[10] To execute the fraud, Plaintiffs allege that Defendants forged documents, created a sham LLC, and failed to translate documents for Plaintiffs.[11]

On August 2, 2024, Plaintiffs filed suit in this Court, alleging violations of Truth in Lending Act, 15 U.S.C. § 1601; the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1961; the Louisiana Racketeering Act, La. R.S. § 1353; and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.* Plaintiffs further raise claims for annulment, fraud, breach of contract, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy.[12]  The Realtor, the Mortgage Broker, and the Closing Agent each moved to dismiss certain claims in the Fourth Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[13]

---

[5] *Id.* at ¶¶ 13-14.
[6] *Id.* at ¶¶ 10-11.
[7] *Id.* at ¶ 12.
[8] *Id.* at ¶ 8.
[9] *Id.* at ¶ 9.
[10] *See generally id.* at ¶¶ 15-58.
[11] *Id.* at ¶¶ 44-45.
[12] R. Doc. 61.
[13] R. Docs. 64, 65, and 77.

On March 31, 2026, the Court issued an Order and Reasons granting in part and denying in part the Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(6).[14] On April 13, 2026, Plaintiffs filed the instant Motion to Reconsider Interlocutory Order and, in the Alternative, for Limited Leave to File Sixth Amended Complaint, seeking reconsideration of the Court's Order and Reasons on the Defendants' Motions to Dismiss.[15]

In their Motion, Plaintiffs request that the Court reconsider its Order and Reasons or, in the alternative, grant Plaintiffs limited leave to amend their Complaint.[16] Regarding the claim for fraud, Plaintiffs contend that the Court's application of the Fed. R. Civ. P. 9(b) standard "rested on a materially narrowed and partly recast account of the complaint and its exhibits."[17] Plaintiffs argue that the Court "evaluated the fraud claims against a factual baseline the Order had already compressed in consequential ways" and that the Court's analysis omitted facts contained in the Complaint.[18] Plaintiffs claim that the Court failed to consider exhibits that were attached to the Plaintiffs' Complaint and that these and the facts pleaded "make the pleaded fraud theory more chronological, more document-based, and less conclusory than the Order's discussion suggested."[19]

Plaintiffs additionally seek reconsideration of the Court's Order as it relates to its claim under the Louisiana Racketeering Act ("LRA") by permitting them to amend

---

[14] R. Doc. 227.
[15] R. Doc. 234
[16] R. Doc. 234-1 at p. 1.
[17] *Id.* at p. 7.
[18] *Id.* at pp. 7-8.
[19] *Id.* at pp. 9-10.

their Complaint to reflect "not an isolated one-off event, but … a repeated method: the use of commercial form mortgage structures on owner-occupied residential property, sometimes through an LLC borrower structure and sometimes directly through commercial-form encumbrance packages imposed on homesteaded residences, as shown through public records and corroborated, in part, through direct consultations with affected borrowers."[20] As to their Fair Housing Act ("FHA") Plaintiffs ask the Court to reconsider its Order because "[p]roperly read, the complaint alleged that Plaintiffs were not provided the operative loan package at closing, were given no meaningful Vietnamese explanation of the transaction, later received only a limited English-language subset, and did not obtain broader mortgage and account records until 2024 through counsel."[21]

In their opposition, Defendants argue that "Plaintiffs do not offer any sufficient reason for this Court to reconsider its order" and instead "merely rehash arguments and issues already raised and rejected by the Court."[22] Furthermore, Defendants state that "the Court's order [on the Motions to Dismiss] correctly considered Plaintiffs' complaint and the attached documents and concluded that plaintiffs' FHA, LRA, and fraud claims must be dismissed" and that "none of the supposedly overlooked facts that Plaintiffs cite to [in the present Motion] warrant reconsideration."[23] Regarding Plaintiffs' request for leave to amend their Complaint, Defendants assert the appropriate inquiry is whether Plaintiffs' request comports

---

[20] *Id.* at p. 11.
[21] *Id.* at p. 19.
[22] R. Doc. 248 at p. 3.
[23] *Id.*

with Fed. R. Civ. P. 16(b) and then, if the "good cause" standard is satisfied, whether Plaintiffs' request comports with Fed. R. Civ. P. 15 regarding the amendment of pleadings.[24] Defendants contend that, even if the Court found good cause, "Plaintiffs have undoubtedly demonstrated their bad faith, their repeated failure to cure deficiencies by previous amendments, and the futility of amending their complaint."[25]

In reply, Plaintiffs assert that "Defendants' opposition answers labels, not the motion" and that their "alleged concealed lender and transaction substitution scheme was recast as an ordinary loan dispute" in the Court's Order, which merits reconsideration.[26] They further contend that the "approval and applicant allegations were likewise flattened" in the Court's Order and Reasons and that the Fourth Amended Complaint's "allegations supported Plaintiffs' theory that the transaction was prearranged and papered through irregular documents, not simply processed as an ordinary residential loan."[27]

Plaintiffs state that reconsideration is merited regarding their fraud claim because the Fourth Amended Complaint stated a claim for fraud under Louisiana law for suppression of the truth and was pleaded through "the transaction chronology and documents: the residential loan presentation; the approval and application irregularities; the pre-closing LLC coordination; Mangipano's personal title/LLC loan instruction; the one document closing; the later appearance of numerous purportedly executed commercial instruments; and the post-closing servicing and enforcement of

---

[24] *Id.* at pp. 4-5.
[25] *Id.* at p. 5.
[26] R. Doc. 253 at p. 1.
[27] *Id.* at pp. 2-3.

that substituted structure."[28] As to the Louisiana Racketeering Act claim, Plaintiffs argue that their proposed Sixth Amendment Complaint should be permitted because it "pleads comparator transactions at the address, instrument, and actor level, alleging repeated use of the same commercial-on-homestead method: owner-occupied residential property, commercial form mortgage instruments, rents and leases security, LLC or commercial borrower structures, and recurring participation by the same institutional and closing side actors," stating a claim under the statute.[29] As to the Fair Housing Act claim, Plaintiffs contend that they have alleged "protected national origin status, a covered residential real estate related transaction, concealment through English operative materials and commercial loan mechanics, and later adverse conduct tied to the same structure," which states a plausible claim under the act, is not barred by the statute of limitations, and merits the Court's reconsideration.[30] Plaintiffs reiterate that, should reconsideration be denied, amendment should be permitted because "[g]ood cause exists because Plaintiffs seek targeted amendment in response to the Court's interlocutory Order."[31]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action."[32]  Under Rule 54(b), "the

---

[28] *Id.* at p. 5.
[29] *Id.* at pp. 6-7.
[30] *Id.* at p. 9.
[31] *Id.* at p. 10.
[32] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (*quoting* Fed. R. Civ. P. 54(b)).

trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[33]  Whether to grant a motion to reconsider under Rule 54(b) "rests within the discretion of the court."[34]  Still, the broad authority to reconsider an interlocutory order under Rule 54(b) "must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays."[35] Motions for such reconsideration "are not the proper vehicle for rehashing evidence, legal theories, or arguments."[36]

## III.    ANALYSIS

Plaintiffs seek reconsideration of the Order and Reasons[37] on Defendants' Motions to Dismiss, dismissing Plaintiffs' state-law fraud claim and additional claims under the LRA and FHA. The Court takes each in turn.

### A. Reconsideration as to the Fraud Claim

Plaintiffs seek reconsideration of the Court's Order and Reasons dismissing Plaintiffs' fraud claims because the Court's application of the governing law and Fed. R. Civ. P. 9(b) "rested on a materially narrowed and partly recast account of the complaint and its exhibits" and that the Court "should have assessed particularity

---

[33] *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)) (internal quotation marks omitted).

[34] *Namer v. Scottsdale Insur. Co.*, 314 F.R.D. 392, 393 (E.D. La. 2016) (Africk, J.) (quoting *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 3485761, at *5 (E.D. La. June 2, 2015) (Fallon, J.)) (internal quotation marks omitted).

[35] *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 564–65 (E.D. La. 2013) (citing 18B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE § 4478.1 (2d ed. 2002)).

[36] *Whale Cap., L.P. v. Ridgeway*, No. CV 22-2570, 2024 WL 894866, at *1 (E.D. La. Mar. 1, 2024) (Currault, M.J.) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[37] R. Doc. 227

against the complaint as pleaded, including its exhibits, rather than against a stripped-down narrative account."[38] Plaintiffs argue:

> Most notably, the Order stated that "[t]hroughout this process, Plaintiffs worked with" Gulf Coast Bank and Mangipano "as their Bank" and "as their loan officer." But the Fourth Amended Complaint alleged the opposite structure: that Plaintiffs never communicated, engaged, or met with GCBT during the application and settlement process; that the broker did not disclose the real lender's identity; and that Ms. Tran "never met, interacted, or communicated with Mortgage Broker LTM," and saw Samantha only at closing.[39]

In assessing Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[40] Addressing Plaintiffs' arguments, the Court notes the following specific statements in its previous Order and Reasons: "The Uniform Residential Loan Agreement, Plaintiffs argue, shows that the information was obtained through face-to-face interviews but that Plaintiffs never met with the Mortgage Broker's staff."[41] "Plaintiffs also contend that Tungmy, LLC was established on or about November 16, 2020, without Plaintiffs' knowledge or authorization."[42] "Plaintiffs also allege that the Notice of Appraisal and Acceptance shows that Plaintiffs were notified and accepted the appraisal but that '[t]his never happened.'"[43] Finally, while Plaintiffs allege in their Motion for Reconsideration that "Ms. Tran never met, interacted, or communicated with Mortgage Broker LTM,"

---

[38] R. Doc. 234-1 at pp. 7, 9.
[39] *Id.* at pp. 7-8.
[40] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018); *see* R. Doc. 227 at n. 168.
[41] R. Doc. 227 at p. 6.
[42] *Id.*
[43] *Id.* at p. 7.

(Lloyd & Taylor Mortgage),[44] Plaintiffs' Fourth Amended Complaint, which the Court

quoted from in its Order and Reasons, states that

> LTM presented the terms of the loan to plaintiffs as a $160,500.00 20-year term at a fixed 4.85% interest rate with a monthly mortgage payment of $1,054.38 due each month ("Loan"). Plaintiffs agreed to an automatic draft of monthly payment of $1,054.38 to be drafted on the same day of each month. LTM never disclosed to Plaintiffs that the loan in fact had a variable interest rate and that the rate was expected to fluctuate.[45]

The Court's summary recitation of the facts in the Order and Reasons provides

context for the order and is not dispositive regarding the Court's findings on the

sufficiency of Plaintiff's Fourth Amended Complaint. The Court reviewed the Fourth

Amended Complaint and the attachments applying the standard of Rule 12(b)(6) and,

in doing so, found that Plaintiffs had failed to meet the particularity requirement of

Rule 9(b).[46] The Court agrees with Defendants that failure to expressly reference

particular facts pled in the Complaint in its Order and Reasons (1) does not mean

that the Court failed to consider the facts as pled, as the Court is required to do and

(2) is insufficient to support reconsideration of the Court's Order and Reasons.[47] The

Court further finds that leave to amend is not warranted as to the fraud claim because

---

[44] R. Doc. 234-1 at p. 3.

[45] *See* Fourth Amended Complaint, R. Doc. 61 at ¶¶ 20-21; *see also* as quoted in the Court's Order and Reasons, R. Doc. 227 at pp. 3, 41.

[46] *See* R. Doc. 227 at pp. 39-45. The Court notes that it expressly quoted Plaintiffs' Fourth Amended Complaint throughout its Order and Reasons. *See also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009) ("This Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.")(internal quotations omitted) (citation modified).

[47] R. Doc. 248 at p. 3.

of the repeated failure to cure deficiencies by prior amendments and prejudice to the Defendants based on the advanced posture of the case.[48]

## B. Reconsideration as to the LRA Claim

While Plaintiffs seek reconsideration of the Court's Order and Reasons as to their claim under the Louisiana Racketeering Act (LRA), the sole argument they make in the present motion is that they should be allowed to replead their claim under the LRA.[49] Plaintiffs contend that their proposed amendment cures the deficiencies identified by the Court in its Order and Reasons "by identifying concrete comparator transactions showing repeated use of commercial form lending architecture on owner-occupied residential property."[50] Plaintiffs then proceed to discuss how these "comparator transactions" help to provide "a narrower and cleaner LRA theory."[51] Plaintiffs argue that their "proposed amendment that cures the precise defect identified by the Court, through a targeted amendment grounded in specific comparator files and corroborated, in part, by direct borrower accounts, is not futile on its face" and thus that they should be permitted to amend their claim.[52] Defendants oppose any leave to amend this claim.[53]

---

[48] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party.").

[49] R. Doc. 234-1 at p. 11.

[50] *Id.* at p. 12.

[51] *Id.* at p. 16.

[52] *Id.* at p. 19.

[53] R. Doc. 248 at p. 2 ("Leave should be denied for a myriad of reasons, but at its core, even this *eighth bite* at the apple does not cure pleading defects with respect to Plaintiffs' fraud, Louisiana Racketeering Act ("LRA"), and Fair Housing Act ("FHA") claims.") (emphasis in original).

When determining whether to permit a party to amend their claim, the Court may "consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment."[54] The Court finds that the repeated failure to cure deficiencies in Plaintiffs' pleading and the advanced posture of this case both prejudice Defendants and weigh against granting Plaintiffs leave to amend their LRA claim.[55] For these reasons, the Court declines to reconsider its Order and Reasons dismissing the LRA claim and denying Plaintiffs' request to replead this claim.

## C. Reconsideration as to the FHA Claim

Plaintiffs additionally seek reconsideration of the Court's Order and Reasons as it relates to its Fair Housing Act (FHA) claim.[56] Plaintiffs contend that their Complaint alleged national-origin discrimination, as opposed to a neutral language-access problem and that their Vietnamese limited English proficiency status "shaped how the transaction was sold, documented, and later enforced."[57] Plaintiffs further state that the Court's analysis of the statute of limitations for a FHA claim was incorrect "because it rested on an overreading of 'access,' while the complaint alleged concealment, partial production, and later discovery through counsel."[58] Plaintiffs

---

[54] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (internal quotations omitted).
[55] *See also* R. Doc. 227 at pp. 69-72.
[56] R. Doc. 234-1 at p. 19.
[57] *Id*. at pp. 20-21.
[58] *Id*. at p. 21.

argue that "the Court should not have disposed of the FHA claim without separately accounting for those later alleged acts."[59]

Plaintiffs previously presented many of these arguments in opposition to the Mortgage Broker's Motion to Dismiss.[60] The Court previously analyzed those arguments and found that the claim against the Mortgage Broker under the FHA was barred by the statute of limitations.[61] Motions for reconsideration "are not the proper vehicle for rehashing evidence, legal theories, or arguments," and the Court finds that Plaintiffs' argument in the present motion do not sufficiently demonstrate a need for the Court to reconsider its prior Order and Reasons.[62] Plaintiffs note that the FHA claim as to the Mortgage Broker is in a different posture from the claim against the Closing Agent[63] and suggest that leave should be granted because it is not a matter of futility, but of greater factual precision.[64] However, Plaintiffs have been granted leave to amend their FHA claim against the Closing Agent, and the Court finds no reason to reconsider its prior finding that leave to amend should not be granted for the FHA claim against the Mortgage Broker because Plaintiffs repeatedly failed to cure the deficiency raised by the Mortgage Broker.

---

[59] *Id.* at p. 22.
[60] R. Doc. 75 at pp. 8-15.
[61] R. Doc. 227 at pp. 51-54.
[62] *Whale Cap., L.P. v. Ridgeway*, No. CV 22-2570, 2024 WL 894866, at *1 (E.D. La. Mar. 1, 2024) (Currault, M.J.) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).
[63] The Closing Agent did not raise a statute of limitations argument in its Motion to Dismiss, and because Plaintiffs had not had a prior opportunity to amend their FHA claim as to the Closing Agent, the Court granted leave to do so. *See* R. Doc. 227 at pp. 54-55 and 72; R. Doc. 77 at pp. 16-22.
[64] R. Doc. 234-1 at p. 24.

## D. Leave to File Sixth Amended Complaint

The Fifth Circuit has stated that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired" and that "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[65] In determining whether "good cause" exists to modify the Scheduling Order, a court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[66] A district court has "broad discretion to preserve the integrity and purpose of the pretrial order."[67] For the reasons stated herein, as well as those set forth in Defendants' opposition,[68] the Court finds that good cause does not exist to modify the Scheduling Order and permit the filing of a Sixth Amended Complaint. Plaintiffs have had the opportunity to amend their Complaint five times and have failed to cure the deficiencies therein.[69] Notably, most of the Amended Complaints were filed after Defendants filed Motions to Dismiss.[70] Thus, Plaintiffs have had several opportunities to address Defendants' arguments as to dismissal of claims. With a jury trial set for October 13, 2026, and the Final Pretrial Conference set for September 14, 2026, the Court finds that granting Plaintiffs the opportunity to file a Sixth Amended Complaint would

---

[65] S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003).
[66] Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003).
[67] S&W Enters., L.L.C., 315 F.3d at 536.
[68] R. Doc. 248 at pp. 4-7.
[69] See R. Doc. 227 at pp. 70-72.
[70] See R. Docs. 28, 31, 64, 65 and 77 by way of example.

13

prejudice Defendants with the case in this advanced posture. The Court thus denies leave to file a Sixth Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Reconsider Interlocutory Order and, in the Alternative, for Limited Leave to File Sixth Amended Complaint[71] is **DENIED.**

New Orleans, Louisiana, August 3, 2026.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[71] R. Doc. 234.

14