**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MY THI NHU TRAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1933** |
| **GULF COAST BANK & TRUST CO., ET AL.** | **SECTION: D(5)** |

# ORDER AND REASONS

Before the Court is Gulf Coast Bank & Trust Company's and Rance Mangipano's Motion for Summary Judgment (collectively, "the Bank").[1] Plaintiffs My Thi Nhu Tran and Tung Duc Vo ("Plaintiffs") oppose the Motion.[2] No reply was filed. After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED in part** and **DENIED in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an alleged mortgage lending scheme orchestrated by Defendants against Plaintiffs. In 2020, Plaintiffs, who are Vietnamese immigrants with limited English proficiency, began the process of buying a home, namely 2540 Long Branch Drive in Marrero, Louisiana.[3] Plaintiffs reached an agreement with the sellers of the home to purchase the property from them.[4] Throughout this process, Nga Baird, through her company, New World Realty, LLC, served as their realtor ("The Realtor");[5] Samantha Tuyet Nguyen Tran, through her company, Lloyd &

---

[1] R. Doc. 283.
[2] R. Doc. 284.
[3] R. Doc. 284-1 at ¶ 2. Unless otherwise stated, the factual background is drawn from Plaintiffs' Responses to Defendants' Statements of Uncontested Material Facts.
[4] *Id.* at ¶ 4.
[5] *Id.* at ¶ 3.

Taylor Mortgage, LLC, served as their mortgage broker ("The Mortgage Broker");[6] Trieu Law, LLC served as their closing agent ("The Closing Agent");[7] Gulf Coast Bank & Trust Co. served as their bank;[8] and Rance Mangipano of Gulf Coast Bank & Trust Co. served as their loan officer.[9] To purchase the home, Plaintiffs sought a loan, secured by an accompanying mortgage on the property.[10] Throughout the process, neither Rance Mangipano nor Gulf Coast had any direct substantive communications with Plaintiffs regarding the structure, terms, or origination of the loan before the execution of the loan documents.[11] Furthermore, Plaintiffs had never met anyone from Gulf Coast before the closing.[12] Generally, Plaintiffs allege that Defendants, including the Bank, defrauded Plaintiffs by deceiving them into signing a loan with terms far less favorable than those explained to and agreed upon by Plaintiffs.[13] To execute the fraud, Plaintiffs allege that Defendants created and used forged documents, created a sham LLC, and failed to translate documents for Plaintiffs.[14]

On August 2, 2024, Plaintiffs filed suit in this Court, alleging violations against several defendants of Truth in Lending Act, 15 U.S.C. § 1601 (TILA); the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1961; the Louisiana Racketeering Act, La. R.S. § 1353 (LRA); and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*. Plaintiffs further raise claims for annulment, fraud, breach

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] R. Doc. 268-1 at ¶¶ 7-9.
[11] R. Doc. 284-1 at ¶¶ 15-16.
[12] *Id.* at ¶¶ 17-20.
[13] *See generally* R. Doc. 231, Fifth Amended Complaint, at ¶¶ 16-78.
[14] *Id.* at ¶ 216.

of contract, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy.[15]

After several amendments, Plaintiffs filed their Fifth Amended Complaint, asserting several claims against the Bank and Mangipano as follows: (1) violations of the Fair Housing Act against Bank and Mangipano; (2) violations of Truth in Lending Act against Bank; (3) Annulment/Nullity against the Bank; (4) fraud against Bank and Mangipano; (5) breach of contract against Bank; (6) negligent misrepresentation against Bank and Mangipano; and (7) civil conspiracy against Bank and Mangipano.[16]

In its Motion for Summary Judgment, the Bank first contends that the statute of limitations has run on each of Plaintiffs' federal claims asserted against the bank defendants.[17] Because the loan was consummated in December 2020 and Plaintiffs did not file suit until August 2024, the Bank states that both claims "are untimely as a matter of law" because "the allegedly wrongful conduct underlying both the FHA and TILA claims was complete and objectively knowable upon execution of the Loan Documents."[18] The Bank further argues that neither equitable tolling nor the continuing violation theory serve to toll the statute of limitations as to these claims "because the alleged post-closing servicing activity and financial consequences merely reflect the continuing effects of the original Loan transaction, not new discriminatory acts or disclosure violations" and because "mere nondisclosure is insufficient to

[15] R. Doc. 61.
[16] Plaintiffs' Fifth Amended Complaint, R. Doc. 231.
[17] R. Doc. 283-1 at p. 11.
[18] *Id.*

establish the active concealment necessary to toll prescription."[19] Addressing the merits of Plaintiffs' FHA claim, the Bank contends that Plaintiffs have failed to produce "competent evidence that Gulf Coast or Mr. Mangipano acted because of Plaintiffs' Vietnamese national origin, used LEP as a proxy for national origin, or maintained a policy that caused a cognizable disparate impact on Vietnamese borrowers."[20]

Turning to the fraud, forgery, negligent misrepresentation, breach of contract and civil conspiracy claims under Louisiana law, the Bank argues that Plaintiffs "cannot establish that Gulf Coast represented the Loan as a fixed-term loan" and that the record contains affirmative evidence to the contrary.[21] Furthermore, the Bank states that "the Loan Documents expressly disclosed the commercial nature and variable-rate structure of the Loan, and Plaintiffs admit Vietnamese-speaking individuals were available throughout the transaction to explain and translate those documents for them," precluding both the fraud claim and the claim for annulment of the mortgage.[22] As to any claim of forgery, the Bank argues that the instruments involved in the sale of the house "are entitled to the presumptions of validity and evidentiary weight afforded under Louisiana law, and the burden falls squarely on Plaintiffs to produce competent evidence sufficient to establish forgery or otherwise rebut the presumptive authenticity of the signatures appearing thereon," which the

[19] *Id*. at p. 16.
[20] *Id*. at p. 17.
[21] *Id*. at p. 20.
[22] *Id*. at p. 23.

Bank contends that they have not met.[23] Regarding the claim for negligent misrepresentation, the Bank contends that "the evidence establishes the complete absence of any relationship or undertaking that could give rise to the threshold duty required under Louisiana law" and that "[w]hatever obligations Gulf Coast owed arose solely from those written agreements, not from any independent tort-based duty to advise, verify, or protect Plaintiffs from the terms of the transaction they elected to enter."[24]

The Bank next addresses Plaintiffs' breach of contract claim, arguing that Plaintiffs' claim relies "on a single alleged term supposedly existing outside the written Loan Documents, namely, an alleged agreement for a fixed-rate residential loan" and that "Plaintiffs necessarily cannot establish Gulf Coast communicated, offered, or agreed to fixed-rate terms outside the written Loan Documents."[25] Additionally, the Bank notes that "Plaintiffs' state-law claims premised upon alleged oral lending representations, unwritten loan terms, implied financial accommodations, or extra-contractual credit agreements fail as a matter of law" because the Louisiana Credit Agreement Statute ("LCAS"), which "broadly prohibits a debtor from maintaining an action on a credit agreement unless the agreement is in writing."[26] Lastly, the Bank argues that the civil conspiracy claim necessarily "fails because Plaintiffs have no competent evidence that Gulf Coast or Mr. Mangipano agreed with any other Defendant to commit fraud, breach of fiduciary duty, or any

[23] *Id*. at p. 25.
[24] *Id*. at pp. 29-30.
[25] *Id*. at pp. 30-31
[26] *Id*. at pp. 34-35 (internal quotations omitted) (citation modified).

other intentional tort against Plaintiffs" and because there is no evidence of any agreement among Defendants to commit tortious conduct against Plaintiffs.[27]

Plaintiffs respond that the Bank's Motion should be denied.[28] As a preliminary matter, Plaintiffs contend that neither the statutes of limitations nor the Louisiana Credit Agreement Statute (LCAS) conclusively resolve the motion.[29] Regarding the limitations period for the FHA and TILA, Plaintiffs contend that genuine disputes of material fact exist "concerning what Plaintiffs were given, what was explained, what was translated, what was authorized, when Plaintiffs reasonably could have discovered the operative structure, and whether Defendants may impute notice from the same documents Plaintiffs challenge."[30] As to LCAS, Plaintiffs note that the statute "preserves defenses including forgery, identity theft, mistaken identity, lack of authorization, lack of contractual capacity, and payment" and that Plaintiffs' claims revolve whether there was consent to the governing credit agreement and whether such agreement is legally enforceable against them.[31] On the merits of the FHA claim, Plaintiffs state that they "purchased and occupied the property as their family home," which supports FHA coverage because it was purchased as their principal residence.[32] Furthermore, Plaintiffs argue that the record supports an inference of discriminatory intent, which "may be proved through context, sequence, procedural departures, substantive departures, and other circumstantial evidence,

[27] *Id*. at pp. 35-37.
[28] R. Doc. 284.
[29] *Id*. at p. 10.
[30] *Id*. at p. 12.
[31] *Id*. at pp. 12-13.
[32] *Id*. at p. 14.

not only through direct admissions," and that a jury could find "that Plaintiffs' Vietnamese national origin and known language dependence played a significant role in that different housing credit treatment."[33]

Addressing the TILA claim, Plaintiffs argue that the Bank's Motion should be denied because record evidence demonstrates that the Bank "processed a residential loan application, relied on Plaintiffs' personal income, debt, and creditworthiness, financed the purchase of Plaintiffs' family home, and then routed the obligation into an LLC commercial form whose authorization and legal effect Plaintiffs dispute."[34] Plaintiffs contend that TILA applies to this transaction because there is a genuine issue of material fact as to whether the transaction was one for commercial credit "or whether a residential family home transaction was routed through a disputed LLC structure to avoid consumer credit treatment."[35] Regarding annulment of the mortgage contract, Plaintiffs allege a "lack of authorization, lack of informed consent, error, fraud, and suppression as to that transaction, not mere dissatisfaction with a term."[36] Plaintiffs contend that any duty to read "cannot supply consent to a transaction a jury could find was never knowingly authorized."[37] Ultimately, Plaintiffs assert that because there is a genuine dispute of fact concerning wither Plaintiffs "knowingly authorize[d] or consent[ed] to the LLC based commercial loan transaction Defendants seek to enforce, or at least that any apparent consent was

[33] *Id*. at pp. 17-18.
[34] *Id*. at p. 18.
[35] *Id*. at p. 19.
[36] *Id*. at p. 21.
[37] *Id*. at p. 23.

vitiated by error, fraud, or suppression," the Bank is not entitled to summary judgment regarding any annulment of the contract.[38]

Plaintiffs urge the Court to deny the Bank's motion as to the fraud and negligent misrepresentation claims.[39] Plaintiffs argue that a reasonable jury "could find that Defendants did not merely fail to repeat written terms; they implemented a transaction structure Plaintiffs never knowingly accepted."[40] Plaintiffs contend that because the record demonstrates that the Bank suppressed facts, failed to disclose them, and never ensured that Plaintiffs understood the nature of the transaction to which they were entering, there are genuine disputes of material facts as to essential elements of the fraud claim.[41] Even absent a showing of fraudulent intent, Plaintiffs argue that a jury could find the Bank liable for negligent misrepresentation because "Defendants failed to exercise reasonable care by implementing a commercial/LLC variable rate structure materially different from the residential financing Plaintiffs understood, without confirming informed authorization from the actual homebuyers."[42] Plaintiffs contend that the Bank is not entitled to summary judgment on the breach of contract claim because "Plaintiffs' evidence permits a finding that GCBT approved, serviced, and enforced a commercial/LLC structure without confirming that the actual homebuyers knowingly authorized it or understood the legal and payment consequences" and because Fed. R. Civ. P. 56 "does not permit

[38] *Id*. at p. 24.
[39] *Id*.
[40] *Id*. at p. 25.
[41] *Id*. at pp. 26-27.
[42] *Id*. at p. 28. Plaintiffs' opposition brief refers to "the defendants," "GCBT," "Gulf Coast," "the bank" and "Mangipano." It is unclear whether references to "the defendants" refers to Gulf Coast Bank and Mangipano, or all of the defendants named in the lawsuit. *See* R. Doc. 284.

Defendants to win by assuming the validity, meaning, and good faith performance of the contract structure Plaintiffs dispute."[43] As to civil conspiracy liability, Plaintiffs urge "[b]ecause genuine disputes remain as to predicate fraud, shared intended result, furtherance acts, causation, and damages, summary judgment on civil conspiracy should be denied."[44]

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[46] Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[47] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[48] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only

[43] *Id.* at pp. 30-31.
[44] *Id.* at p. 35.
[45] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[46] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[47] *Liberty Lobby*, 477 U.S. at 248.
[48] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

a scintilla of evidence."[49] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[50]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[51] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[52] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[53] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[54]

---

[49] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[50] *Id.* at 399 (citing *Liberty Lobby*, 477 U.S. at 248).
[51] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[52] *Id.* at 1265.
[53] *See Celotex*, 477 U.S. at 322–23.
[54] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

## III. ANALYSIS

### 1. Plaintiffs' Claim against Bank and Mangipano under the Fair Housing Act (FHA)

Plaintiffs assert a claim under the Fair Housing Act against the Bank.[55] The Bank now moves for summary judgment on that claim, arguing that Plaintiffs' claim is prescribed due to the two-year statute of limitations period for claims arising under that statute.[56] Plaintiffs respond that "the challenged housing credit structure was not meaningfully disclosed and that discovery, concealment, diligence, and notice cannot be resolved by drawing Defendants' preferred inference from the disputed document universe" and thus the statute of limitations should be tolled.[57]

The Fair Housing Act ("FHA") makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[58] It likewise provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.[59]

---

[55] R. Doc. 231 at p. 16.
[56] R. Doc. 283-1 at pp. 11-12 (citing 42 U.S.C. § 3613(a)(1)(A)).
[57] R. Doc. 284 at p. 11.
[58] 42 U.S.C. § 3604(b).
[59] 42 U.S.C. § 3605(a).

The statute of limitations for FHA claims is two years, and it begins to run "after the occurrence or the termination of an alleged discriminatory housing practice."[60] "Equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[61] "Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law."[62] The Fifth Circuit has recognized that equitable tolling may be appropriate when a plaintiff is unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them.[63] The Fifth Circuit has found that a limitations period may be tolled when two elements are met: "first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim."[64] The Plaintiffs bear the burden of establishing that equitable tolling is appropriate.[65] The Bank argues that the allegedly wrongful conduct asserted by Plaintiffs to support their federal "FHA and TILA claims was completely and objectively knowable upon execution of the Loan Documents" and thus are prescribed.[66] Plaintiffs rely on their English language

---

[60] 42 U.S.C. § 3613(a)(1)(A); *Lawrence v. Ctr. Props., LLC*, 847 F. App'x 254, 256 (5th Cir. 2021).
[61] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (citation modified).
[62] *Id.* (citing *Rotella v. Wood*, 528 U.S. 549, 560 (2000)).
[63] *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402,404 (5th Cir. 1995)).
[64] *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 489 (5th Cir. 2016) (quoting *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988)).
[65] *Id.* (citing *Wilson*, 65 F.3d at 404).
[66] R. Doc. 283-1 at p. 11.

limitations "because defendants seek to impute notice from English language documents whose delivery, explanation, authorization, and legal effect are genuinely disputed."[67] Plaintiffs contend that they were not aware of the facts giving rise to the FHA claim until the 2024 payment increase and thus the claim was timely.[68] The parties do not dispute that the terms of the loan are present in the loan documents, nor that the loan documents are in English.[69] The issue is whether equitable tolling is appropriate due to Plaintiffs' limited English proficiency and arguable lack of knowledge until 2024. The Court is cognizant that the doctrine of equitable tolling should be used sparingly. The evidence presented in this case, viewed in a light most favorable to Plaintiffs, do not merit such equitable tolling. The Court is bolstered by a well-reasoned Order from its sister court in a similar case:

> In *Moor v. Travelers Ins. Co.*, the Fifth Circuit held: "To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, [the plaintiff] was unable to discover that conduct."[70] Put another way, the factual allegations plead by the plaintiff must demonstrate that she was actively misled by the defendant about the cause of action or prevented from asserting his or her rights in some extraordinary way. The Fifth Circuit, and various courts within the Fifth Circuit, have applied this standard in the context of TILA only when a plaintiff alleges or demonstrates wrongful conduct by the defendant that goes beyond mere nondisclosure.[70]

The record is devoid of any evidence that the Bank defendants concealed the reprobated conduct or "actively misled" the Plaintiffs. Both the Bank defendants and

[67] R.Doc. 284 at p. 11.
[68] *Id.*
[69] R. Doc. 284-1 at p. 17.
[70] *Hibbs v. Wells Fargo Bank, N.A.*, No. CV 17-615-SDD-RLB, 2018 WL 3245050, at *5 (M.D. La. July 3, 2018) (internal quotations omitted) (citation modified).

Plaintiffs recognize that Louisiana law imposes a duty to read on a contracting party. The Bank defendants argue that "the written Loan Documents independently defeat Plaintiffs' attempt to characterize the challenged terms as hidden or fraudulently concealed by Gulf Coast or Mr. Mangipano."[71] Plaintiffs counter that "A duty to read cannot supply consent to a transaction a jury could find was never knowingly authorized."[72] Plaintiffs' argument as to the duty to read misses the mark. The issue of whether the documents were authorized is separate and distinct from the issue of when and whether Plaintiffs were aware of the allegations giving rise to the claim. Drawing all reasonable inferences in favor of the Plaintiffs, Plaintiffs have failed to show the exercise of due diligence when they have been in possession of all documents from the closing since the closing in December 2020.[73] Plaintiffs have not met their burden to provide evidence of a genuine issue of material fact to support concealment such that equitable tolling would toll the two-year statute of limitations.

The second exception to the two-year limitations period for claims under the FHA is the continuing violation theory.[74] "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-

[71] R. Doc. 283-1 at p. 20.
[72] R. Doc. 284 at p. 23.
[73] Plaintiff My Thi Nu Tran testified in her deposition several times that she did not ask anyone to explain any of the paperwork to her. *See* R. Doc. 284-4 at p. 41 ("Q. Did you ask Nga or anyone else to explain any of that paperwork to you? A. No.") and at pp. 50-57 (Q. "Did you ask anybody to explain any of the documents to you? A. Well, they just brough the paperwork over to me and then just—you know, sign, sign. Nobody explain to me. I just sign and then take the key and then gave them the check. Nobody explain—None of them explain anything to me of what I signed.") and at p. 134 ("Q. Okay. You didn't ask anyone to explain them to you before then, any of these terms A. No. I didn't ask anybody.")
[74] *Pecan Acres Ltd. P'ship I v. City of Lake Charles*, 54 F. App'x 592, 2002 WL 31730433 at *1 (5th Cir. 2002).

barred."[75] As applied to the FHA, the exception "applies where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period."[76] The Court agrees with the Bank that the continuing violation theory does not apply to any alleged violation because Plaintiffs "cannot use the continuing violation theory to resurrect claims about discrimination … concluded in the past, even though its effects persist."[77] Plaintiffs have not provided any evidence to demonstrate that this exception to the two-year limitations period of FHA claim applies in this case or that the Bank was involved in an ongoing pattern of discrimination that occurred, at least in part, within the limitations period.[78] Thus, the Court finds that the Closing Agent is entitled to summary judgment on Plaintiffs' FHA claim against it as a matter of law.[79]

The Bank alternatively argues that, even if Plaintiffs' FHA claims were not prescribed, "Plaintiffs have no evidence that the present Defendants demonstrated any discriminatory animus toward them—much less that Plaintiffs' Vietnamese national origin motivated any challenged action."[80] The Bank contends that both Plaintiffs' disparate treatment and disparate impact theories fail.[81] Plaintiffs respond

---

[75] *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993).
[76] *Pecan Acres Ltd. P'ship I*, 54 F. App'x 592 at *1 (internal quotations omitted) (citation modified).
[77] *McGregor*, 3 F.3d at 867.
[78] Plaintiffs do not appear to argue that the continuing violation theory applies to their argument and focus their attention on the theory of equitable tolling. *See* R. Doc. 284 at pp. 10-12.
[79] Having found that Plaintiffs' claim under the FHA against the Bank are time-barred as a matter of law, the Court need not and does not address the Bank's arguments and Plaintiffs' response regarding the merits of the claim.
[80] R. Doc. 283-1 at pp.17-18.
[81] *Id*. at p. 18.

that "a reasonable jury could find that Plaintiffs' Vietnamese national origin and known language dependence played a significant role in that different housing credit treatment" but provide no evidence of any disparate treatment by the Bank or any policy or practice of the Bank that created a disparate impact.[82] Disparate treatment "refers to treating some people less favorably than others because of a protected trait" and requires evidence that demonstrates or creates a reasonable inference that the protected class under the FHA was a significant motivating factor in taking the discriminatory action.[83] For a disparate impact claim under the FHA, a plaintiff must provide evidence of a challenged policy or practice that robustly causes a substantial discriminatory effect on a protected class.[84] "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."[85] While Plaintiffs allege "that these Vietnamese, limited English proficient homebuyers sought and occupied a family home, while GCBT used residential and personal borrower inputs and then routed the obligation into a commercial/LLC variable rate structure without direct disclosure, any Vietnamese explanation confirmed by GCBT, or informed authorization,"[86] Plaintiffs have not provided evidence that any protected class was a significant motivating factor in taking any discriminatory action or any policy with accompanying statistical evidence that demonstrates a disparate impact on a

---

[82] R. Doc. 284 at p. 18.
[83] *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 909–10 (5th Cir. 2019) (internal quotation marks omitted) (citation modified).
[84] *Treece v. Perrier Condo. Owners Ass'n, Inc.*, No. CV 17-10153, 2020 WL 759567, at *8 (E.D. La. Feb. 14, 2020) (Morgan, J.).
[85] *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015).
[86] R. Doc. 284 at p. 15.

protected class. Plaintiffs' conclusory assertion that a reasonable jury could find that Plaintiffs' Vietnamese origin and limited English proficiency played a part, that statement lacks evidentiary support. For that additional reason, the Court grants summary judgment on the FHA claim as to the Bank and Mangipano.

**2. Plaintiffs' Claim against Bank under the Truth in Lending Act (TILA)**

Plaintiffs assert a claim against the Bank for damages under the Truth in Lending Act.[87] The Bank moves for summary judgment on this claim, arguing that the claim has prescribed because TILA imposes a three-year statute of limitations for claims to rescind transactions and a one-year statute of limitations for damages claims.[88] The Bank contends that because Plaintiffs' claim is one for damages, it is prescribed because the loan closed in December 2020 and Plaintiffs did not file suit until 2024.[89] Plaintiffs respond that "Defendants cannot obtain summary judgment by assuming notice from a file whose disclosure, delivery, execution, authorization, and legal effect remain disputed."[90]

The Truth in Lending Act (TILA) requires a lender to disclose "three pieces of information to a borrower: the amount financed, the finance charge, and the APR."[91] "Concluding a credit transaction without giving the required disclosures constitutes a TILA nondisclosure violation."[92] "The violation 'occurs' when the transaction is

[87] R. Doc. 231 at ¶ 114.
[88] 15 U.S.C. § 1635(f); 15 U.S.C. § 1640(e).
[89] R. Doc. 283-1 at pp. 11-12.
[90] R. Doc. 284 at p. 11.
[91] *Edwards v. Your Credit Inc.*, 148 F.3d 427, 432 (5th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Aug. 17, 1998).
[92] *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986).

consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations."[93] "Consummation means the time that a consumer becomes contractually obligated on a credit transaction."[94] "Under the plain language of TILA, a claim for damages must be brought within one year of the alleged violation, while a claim for rescission of a contract regulated by TILA must be brought not later than three years after the alleged violation."[95]

Plaintiffs acknowledge that their claim is one for damages, not rescission: "TILA provides damages and fees here, but not rescission, because this loan was used to finance the acquisition of Plaintiffs' principal dwelling."[96] Thus, the one-year statute of limitations period applies. The parties don't dispute that the loan was consummated in December 2020.[97] "Fifth Circuit precedent is clear that nondisclosure is not a continuing violation for purposes of the statute of limitations."[98] Furthermore, courts in this circuit have tolled the statute of limitations "in the context of TILA only when a plaintiff alleges or demonstrates wrongful conduct by the defendant that goes beyond mere nondisclosure."[99] Record evidence in this case demonstrates no such wrongful conduct by the Bank that goes

---

[93] *Id.* (citing *In re Smith*, 737 F.2d 1549, 1552 (11th Cir.1984)).
[94] 12 C.F.R. § 226.2.
[95] *Jeffcoat v. Lamar Props. LLC*, No. 6:20-CV-00557, 2021 WL 627747, at *4 (W.D. La. Feb. 17, 2021) (citing 15 U.S.C. § 1640(e) and (f)).
[96] R. Doc. 231 at ¶ 113.
[97] R. Doc. 284-1, *Plaintiffs' Responses to Defendants Rance Mangipano's and Gulf Coast Bank and Trust Co's Statement of Uncontested Material Facts*, at ¶ 2.
[98] *Hibbs v. Wells Fargo Bank, N.A.*, No. CV 17-615-SDD-RLB, 2018 WL 3245050, at *5 (M.D. La. July 3, 2018) (internal quotations omitted) (citation modified).
[99] *Id.* at *6 (citing *McLean v. Big Dog Grp., LLC*, No. CV 15-40-JWD-EWD, 2016 WL 3211514, *7 (M.D. La. March 11, 2016) (citing *Moor*, 784 F.2d at 633-34)); *see also* McCrimmon v. Wells Fargo Bank, N.A., 516 Fed.Appx. 372, 375–76 (5th Cir. 2013); Garcia v. Universal Mortg. Corp., No. 3:12-CV-2460-L, 2013 WL 1858195, at *5 (N.D. Tex. May 3, 2013).

beyond mere nondisclosure. Indeed, Plaintiffs center their argument on the Bank's failure to communicate directly with Plaintiffs.[100] Plaintiffs argue that

> the absence of direct preclosing communication between GCBT or Mangipano and Plaintiffs does not prove informed borrower consent. It supports the opposite inference: that the Bank never directly disclosed the commercial/LLC structure to the actual homebuyers, never confirmed Plaintiffs' understanding of the borrower identity or loan classification, and never confirmed Plaintiffs' authorization of the personal title / LLC loan split.[101]

Plaintiffs' argument is premised on nondisclosure. While the Court draws all reasonable inferences in favor of the Plaintiffs, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[102] As a result, the Court finds that the one-year statute of limitations on claims for damages under TILA applies and that such limitations period bars Plaintiffs' claim under TILA. Plaintiffs raised this claim only against the Bank. The Court grants summary judgment on this claim in the Bank's favor.

### 3. Plaintiffs' Claim against Bank for Annulment

Plaintiffs assert a claim against the Bank for annulment of the Promissory Note, Multiple Indebtedness Mortgage, Pledge of Leases and Rents, Commercial Guaranty, LLC Resolution to Borrow / Grant Collateral, arguing that the instruments are absolutely null, or alternatively, relatively null.[103]

---

[100] R. Doc. 284 at pp. 2-3.
[101] R. Doc. 284 at pp. 2-3.
[102] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[103] R. Doc. 231 at p. 26.

"A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral."[104] "A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made."[105] Contracts that are relatively null "may be confirmed," and only a person "for whose interest the ground for nullity was established" may invoke relative nullity.[106] Under Louisiana law, it is "well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, did not understand it, or that the other party failed to explain it to him"[107] Under the Louisiana Civil Code, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party."[108] Furthermore,"[u]nilateral error does not vitiate consent if the reason for the error was the complaining party's inexcusable neglect in discovery of the error."[109]

In the present case, as set forth in detail below, the Court has found that there is no genuine dispute of material fact regarding a claim of fraud or a claim of forgery. The remaining ground for annulling the mortgage appears to be one of unilateral error. The Court finds that there exists a genuine dispute of material fact regarding whether Plaintiffs' unilateral error vitiated their consent. Plaintiffs stated that they

[104] La. Civ. C. art 2030.
[105] La. Civ. C. art. 2031.
[106] *Id*.
[107] *Whitney Bank v. Garden Gate New Orleans, L.L.C.,* 236 So. 3d 774, 784 (La. App. 5 Cir. 12/27/17), *writ denied sub nom. Bank v. Garden Gate New Orleans, L.L.C.,* 239 So. 3d 298 (La. 3/23/18).
[108] La. Civ. C. art. 1949.
[109] *Whitney Bank,* 236 So. 3d at 784 (citing *Scott v. Bank of Coushatta*, 512 So.2d 356, 361 (La. 1987)).

"understood and believed [they] were approved for a residential loan" and that they were "borrowing money…solely to purchase a home for our family to live in."[110] There is also a genuine dispute of material fact regarding whether the Bank knew or should have known the cause of the contract, namely, to purchase a family home with a residential mortgage, by the submission to the bank of the Uniform Residential Loan Application and the Bank's possession of that application.[111] The Court thus finds there is a genuine dispute of material fact regarding whether Plaintiffs' unilateral error vitiated their consent and creating grounds for this Court to annul the contract. The Bank's Motion for Summary Judgment is denied as to Plaintiffs' claim for annulment. That claim remains against the Bank only.

#### 4. Plaintiffs' Claim against Bank and Mangipano for Fraud

Plaintiffs assert a claim of fraud against the Defendants ("Bank") based on statements allegedly made to Plaintiffs by individuals other than Bank defendants "that the loan would be a residential mortgage loan in the approximate amount of $160,500.00, for a 20-year term, at a fixed rate of 4.85%, with a monthly payment of approximately $1,054.38.[112] The Bank now moves for summary judgment on that claim, arguing that Plaintiffs cannot satisfy their burden against the Bank because "Plaintiffs have no evidence that Gulf Coast or Mr. Mangipano made those alleged statements, authorized them, knew they were made, knew they were false, or agreed

---

[110] R. Doc. 284-3 at ¶ 7; *see also* R. Doc. 284-5 at p. 11 ("We were just borrowing money to purchase a home.")
[111] *See* R. Doc. 284-7, *Deposition of Gulf Coast Bank & Trust through Deana Veal*, at pp. 33-37.
[112] R. Doc. 231 at p. 27.

that Plaintiffs should be misled."[113] While Plaintiffs acknowledge that they never spoke directly with Mangipano or the bank, Plaintiffs argue that the evidence would permit a reasonable jury to find that "Defendants did not merely fail to repeat written terms; they implemented a transaction structure Plaintiffs never knowingly accepted."[114]

Fraud under Louisiana law is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[115] "Fraud may also result from silence or inaction."[116] For a successful fraud claim under Louisiana law, the plaintiff must prove: (1) a misrepresentation of a material fact; (2) that was made with the intent to deceive; (3) which caused justifiable reliance with resultant injury.[117]

There is no evidence, nor do Plaintiffs contend, that there was direct communication between Plaintiffs and the Bank, including Mangipano.[118] Generally, a defendant cannot be held liable for fraud based on a third party's misrepresentations unless (1) the defendant knew the information was false and (2) the false information was used to induce the plaintiff's consent.[119] The undisputed record evidence demonstrates that Rance Mangipano neither communicated nor authorized any other person to communicate to Plaintiffs "loan terms inconsistent

[113] R. Doc. 283-1 at p. 20.
[114] R. Doc. 284 at p. 25.
[115] La. Civ. C. art. 1953.
[116] *Id.*
[117] *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) (applying Louisiana law).
[118] *See* R. Doc. 284 at p. 26 (referencing "[t]he absence of direct Bank communication").
[119] *See Jackson v. Fontenot Bldg., Inc.*, 314 So. 2d 516, 521 (La. App. 1 Cir. 1975).

with the terms reflected in the Loan Documents."[120] While Plaintiffs argue that this lack of communication supports their fraud claims because the Bank never took steps to ensure that Plaintiffs understood the terms of the loan documents,[121] and drawing all reasonable inferences from the lack of direct communication from the bank in favor of Plaintiffs, the Court disagrees. "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read or understand it, or that the other contracting party failed to explain it to him.[122] Language limitations do not relieve a party of a duty to read, particularly when that party has access to individuals with whom the party is able to communicate.[123] In *Rizzo*, the Louisiana Fourth Circuit Court of Appeal upheld the district court's grant of summary judgment regarding the validity of an insurance waiver, in part, due to the fact that the plaintiff was able to communicate with his insurance agent in Spanish.[124] The Court here finds, based on record evidence, that Plaintiffs were able to communicate about the loan documents with other people in Vietnamese. Both Plaintiffs testified to such in their depositions. There is no evidence of an intent to conceal or deceive on behalf of the Bank, and the loan documents reveal the commercial nature and variable-rate structure of the loan.[125]

[120] R. Doc. 283-10 at ¶ 10.
[121] R. Doc. 284 at p. 26.
[122] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820–21 (5th Cir. 2012).
[123] *See Rizzo v. Ward*, 32 So. 3d 986, 989 (La. App. 4 Cir. 2/24/10).
[124] *Id.*
[125] R. Docs. 283-3 and 283-4.

To the extent that Plaintiffs' fraud claim depends upon an allegation of forgery, the record evidence is insufficient to overcome the presumptive validity of the documents. Louisiana law presumes validity for promissory notes and other negotiable instruments.[126] This presumption is maintained until the person denying the validity of his or her signature proves the forgery.[127] Similar to the party alleging forgery in *Greenwood Community Center v. Calep*, Plaintiffs' only evidence is their own testimony that their signatures were forged. There is no forensic evidence of a forgery, no theory of who might have forged the document, and no idea as to when or how a forgery could have happened.[128] The Plaintiffs' "speculation is insufficient to create an issue of fact."[129] The Court finds that there is no genuine dispute of material fact as to any allegation of forgery or fraud. Thus, Defendant's motion as to the fraud claim raised against Mangipano individually is granted.

**5. Plaintiffs' Claim against Bank for Breach of Contract**

Plaintiffs assert a breach of contract claim against the Bank.[130] The Bank seeks summary judgment on this claim, arguing that Plaintiffs have failed to adduce any competent evidence that the Bank agreed to a fixed-rate residential loan with a

---

[126] La. R.S. 10:3-308(a) ("In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.").

[127] *Greenwood Cmty. Ctr. v. Calep*, 132 So. 3d 470, 474–75 (La. App. 2 Cir. 1/15/14).

[128] *See id.* at 475; *see also Bosley v. Rowan*, No. 3:21-CV-4146, 2023 WL 5120264, at *5 (W.D. La. Aug. 9, 2023).

[129] *In re Mike Hooks LLC*, No. 2:20-CV-00959, 2022 WL 6252711, at *3 (W.D. La. Oct. 7, 2022) (granting partial summary judgment where the party alleging forgery failed to offer "competent evidence" that explained how the person's signature appeared on the document other than "by his own hand").

[130] R. Doc. 231 at p. 30.

20 year term at the interest rate of 4.85%.[131] The Bank argues that Plaintiffs' claim necessarily fails because there is no evidence of "the existence of the contract they claim Gulf Coast breached."[132] Further, the Bank invokes the Louisiana Credit Agreement Statute (LCAS) to argue that Plaintiffs are barred from seeking to impose "liability based upon alleged unwritten, implied, or extra-contractual loan terms purportedly inconsistent with the written Loan transaction."[133] Plaintiffs respond that genuine disputes of material fact remain as to "what transaction was authorized and what legal effect the written instruments acquired."[134] Plaintiffs summarize that

> [i]f the commercial/LLC instruments were not knowingly authorized, Defendants cannot rely on them as conclusive proof defeating Plaintiffs' contract theory. If the instruments are treated as legally effective, factual disputes remain over the obligations GCBT undertook, Plaintiffs' performance or excuse from further performance, whether GCBT performed in good faith, and whether Plaintiffs' damages flowed from the structure GCBT approved, serviced, and enforced.[135]

The elements for breach of contract under Louisiana law are: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee.[136] The Civil Code defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[137] "A contract is formed by consent of the parties established through offer and acceptance."[138]

---

[131] R. Doc. 283-1 at pp. 30-31.
[132] *Id.* at p. 32.
[133] *Id.* at p. 33.
[134] R. Doc. 284 at p. 29.
[135] *Id.*
[136] *SnoWizard, Inc. v. Robinson*, 897 F.Supp.2d 472, 478 (E.D. La. 2012).
[137] *Id.* (QUOTING LA. CIV. CODE art. 1756).
[138] La. Civ. Code art. 1927.

Plaintiffs must "establish that a contract exists."[139] Plaintiffs state that their breach of contract theory stems from "a family home purchase routed into a commercial/LLC variable rate structure whose authorization, consent, performance, and legal effect remain genuinely disputed."[140] To the extent that Plaintiffs argue that the Bank entered into a valid agreement to provide a residential mortgage loan in the "approximate amount of $160,500.00, for a 20-year term, at a fixed interest rate of 4.85%, with a monthly payment of approximately $1,054.38,"[141] Plaintiffs have provided no competent summary judgment evidence of that fact or evidence of any agreement stating such between the Bank and Plaintiffs.[142] Absent proof of a valid contract containing the terms that Plaintiffs allege, the breach of contract claim fails.

The Court now addresses the claim assuming that the promissory note and mortgage attached[143] are the operative contract to support Plaintiffs' breach of contract claim. The claim additionally fails because Plaintiffs have failed to identify which provision of the valid contract that the Bank has breached.[144] The promissory note and mortgage both reflect a loan for $160,500.00, with a variable interest rate and a term of 20 years.[145] Plaintiffs have not demonstrated by competent record evidence that the Bank has breached any of the terms of the operative contracts. In

---

[139] *Dealer Servs. S., Inc. v. Martin Auto. Grp., Inc.*, 375 So. 3d 628, 636 (La. App. 3 Cir. 11/29/23).
[140] R. Doc. 284 at p. 29.
[141] R. Doc. 231 at ¶¶ 141-42.
[142] *See* La. Civ. C. art. 3287 ("A conventional mortgage may be established only by written contract."); *see also* R. Doc. 283-10, *Declaration of Rance Joseph Mangipano*, at ¶ 8 ("The only loan terms approved, offered, or extended by Gulf Coast in connection with the Loan were the terms reflected in the Loan Documents.").
[143] R. Docs. 283-3 and 283-4.
[144] *Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 643 (E.D. La. 2019) ("To state a claim for breach of contract under Louisiana law, a plaintiff must allege a breach of a specific provision of the contract.") (internal quotations omitted) (citation modified).
[145] *See* R. Doc. 283-3, *Promissory Note*, and R. Doc. 283-4, *Multiple Indebtedness Mortgage*.

support, the Court points out that Plaintiffs admit in their Uncontested Statement of Facts that the bank documents for the loan included the commercial loan structure, investment classification and variable rate terms.[146] Plaintiffs maintain that the documents fail to show that Plaintiffs "knowingly understood, authorized, or consented to" these terms.[147] However, Plaintiffs fail to allege, and provide sufficient record evidence to raise a genuine issue of material fact as to how specifically the Bank breached the contract.[148] Drawing all reasonable inferences in favor of Plaintiffs, the evidence reflects that the bank documents contained undisputed terms. The Court grants summary judgment on Plaintiffs' breach of contract claim, finding that the Bank is entitled to judgment as a matter of law.

**6. Plaintiffs' Claim against Bank and Mangipano for Negligent Misrepresentation**

Plaintiffs assert a claim for negligent misrepresentation against the Bank and Mangipano.[149] The Defendants ("Bank") seeks summary judgment on this claim, arguing that "the evidence establishes the complete absence of any relationship or undertaking that could give rise to the threshold duty required under Louisiana law."[150] The Bank further urges that there is no evidence that the Bank "solicited Plaintiffs, advised them regarding the structure of the transaction, explained or interpreted the loan documents for them, recommended they enter the transaction,

---

[146] R. Doc. 284-1 at ¶¶ 24, 25, 30, 31, 35, 36.
[147] *Id.*
[148] *See* R. Doc. 284 at pp. 28-31; *see Barbe*, 383 F. Supp. 3d 634, 643 (requiring the allegation of a breach of a specific provision of the operative contract).
[149] R. Doc. 231 at pp. 34-39.
[150] R. Doc. 283-1 at p. 31.

or otherwise undertook any obligation to provide financial, legal, or advisory guidance."[151] Plaintiffs respond that a jury "could find Defendants failed to exercise reasonable care by implementing a commercial/LLC variable rate structure materially different from the residential financing Plaintiffs understood, without confirming informed authorization from the actual homebuyers."[152]

To establish negligent misrepresentation in Louisiana, the plaintiff must prove: (1) a legal duty on the part of the defendant to provide correct information; (2) breach either by omission or affirmative misrepresentation; and (3) damages based on the plaintiff's reasonable reliance on the misrepresentation.[153] As a general matter, privity is not required to recover for a negligent misrepresentation provided that Plaintiffs show that they, "as a result of their actual and justifiable reliance on negligently made representations, suffer[ed] economic damages."[154] In claims of negligent misrepresentation, "[w]hether a duty is owed is a question of law.[155]

"In Louisiana, the only duty a financial institution owes a borrower is the duty to comply with the contract between the institution and the borrower."[156] Absent a written agreement expressly creating a fiduciary or any other kind of special relationship between a bank and borrower, a bank's duties to a borrower are limited to those stated in the contract.[157] Louisiana courts have recognized that certain

---

[151] *Id.*
[152] R. Doc. 284 at p. 28.
[153] *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008).
[154] *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1013 (La. 1993).
[155] *Id.* at 1015.
[156] *Obioha v. Proctor Fin. Ins. Co.*, No. CIV.A. 06-5364, 2007 WL 2903227, at *3 (E.D. La. Oct. 2, 2007) (Vance, J.).
[157] La. R.S. 6:1124.

special circumstances will give rise to an independent duty of care on behalf of a bank to a borrower.[158] However, courts generally only impute such a duty when a bank has undertaken a duty to perform a specific task, such as to instruct a customer on the disbursal of account funds.[159] While Plaintiffs acknowledge and do not claim that the bank owed them a fiduciary advisory duty, Plaintiffs argue that Louisiana courts have rejected the view that these statutes "totally immunize banks from ordinary legal duties or eliminate Civil Code good faith obligations."[160] Plaintiffs have failed to demonstrate why the statute does not apply to their claim.[161] Plaintiffs' argument is that

> GCBT and Mangipano undertook to approve, adopt, classify, coordinate, and transmit material transaction information for closing they knew involved plaintiff's family home purchase. A jury could find defendants failed to exercise reasonable care by implementing a commercial/LLC variable rate structure materially different from the residential financing understood, without confirming informed authorization from the actual homebuyers."[162]

*BizCapital*, upon which Plaintiffs rely, is inapposite to the facts at present because that case involved a financial institution's misrepresentations to another financial institution involving borrower solvency, not any implied duty from a credit agreement regarding a home mortgage.[163] Absent such an agreement, the Court finds that

[158] *Simmons, Morris & Carroll, LLC v. Cap. One, N.A.*, 144 So. 3d 1207, 1215 (La. App. 2 Cir. 6/27/14), *writ denied*, 152 So. 3d 886 (La. 11/14/14).
[159] *See*, e.g., *In re Succession of McKnight*, 768 So. 2d 794, 797–98 (La. App. 2 Cir. 10/4/00), *writ denied sub nom. Succession of McKnight*, 785 So. 2d 822 (La. 2/9/01).
[160] R. Doc. 284 at p. 27 (citing *BizCapital Bus. & Indus. Dev. Corp. v. Union Planters Corp.*, 884 So. 2d 623, 626–27 (La. App. 4 Cir. 2004).
[161] *See Bass v. Chase Home Fin. LLC*, No. CIV.A. 09-3339, 2010 WL 3922709, at *4 (E.D. La. Oct. 1, 2010) (Vance, J.).
[162] R. Doc. 284 at pp. 27-28.
[163] *BizCapital Bus. & Indus. Dev. Corp.*, 884 So. 2d at 624-25.

Plaintiffs have failed to provide evidence that raises any genuine issue of material fact regarding a duty owed in the context of a negligent misrepresentation claim against the Bank or Mangipano. As a result, the Court grants summary judgment in the Bank and Mangipano's favor on this claim.

7. **Plaintiffs' Claim against Bank and Mangipano for Civil Conspiracy**

The Defendants argue that "Plaintiffs' civil conspiracy claim fails because Plaintiffs have no competent evidence that Gulf Coast or Mr. Mangipano agreed with any other Defendant to commit fraud, breach of fiduciary duty, or any other intentional tort against Plaintiffs."[164] Plaintiffs respond that the Bank's Motion should be denied as to this claim because a jury could find that there was "the coordinated suppression and implementation of a materially different commercial/LLC variable rate structure without informed authorization from the actual homebuyers" and that the record permits "the inference that the agreement was not merely to use an LLC, but to implement the commercial/LLC structure Plaintiffs contend was never knowingly authorized."[165]

A claim for civil conspiracy under Louisiana law is rooted in Civil Code Article 2324. That Article does not by itself impose liability for a civil conspiracy.[166] Instead, the actional element under Article 2324 is the tort which the conspirators agreed to and ultimately perpetrate.[167] For a claim of civil conspiracy under Louisiana law a

[164] R. Doc. 283-1 at p. 35.
[165] R. Doc. 284 at pp. 31-32.
[166] *Thames v. Thames*, 196 So.3d 653, 655 (La. App. 2 Cir. 2016) (citing *Haygood v. Dies*, 174 So.3d 1211 (La. App. 2d Cir. 2015)).
[167] *Id.* (citing *Haygood*, 174 So.3d at 1211).

plaintiff must show that: (1) an agreement existed to commit an illegal or tortious act; (2) the act was actually committed; (3) the act caused the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.[168]

To prove such a conspiracy, a plaintiff must demonstrate that "an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury" and that there was also "an agreement as to the intended outcome or result."[169] Put differently, "the plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing."[170] The Bank has pointed to the lack of record evidence that "Gulf Coast or Mr. Mangipano authorized those alleged statements [made by non-bank actors involved in the transaction], knew they were being made, knew they were false, intended Plaintiffs be misled, or otherwise shared any unlawful objective with the alleged speakers."[171]

While Plaintiffs contend that the record contains evidence of a "coordinated implementation of the disputed [LLC] structure without informed authorization,"[172] the record contains no evidence that demonstrates that there was either collusion or a meetings of the minds of the bank defendants "for the purpose of committing wrongdoing."[173] While the Court acknowledges that an agreement may be inferred based on the "assistance and encouragement" of Defendants, no such evidence is

---

[168] *Jeff Mercer, LLC v. State ex rel. Dep't of Transp. & Dev.*, 222 So.3d 1017, 1024 (La. App. 2 Cir. 2017) (collecting cases).
[169] *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. App. 1 Cir. 4/8/98), *writ denied*, 721 So. 2d 473 (La. 6/19/98).
[170] *Thomas v. N. 40 Land Dev., Inc.*, 894 So. 2d 1160, 1174 (La. App. 4 Cir. 1/26/05).
[171] R. Doc. 283-1 at p. 37.
[172] R. Doc. 284 at p. 34
[173] *Thomas*, 894 So. 2d at 1174.

presented here.[174] While the Court draws all reasonable inferences in favor of the nonmoving party—Plaintiffs—in a motion for summary judgment, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[175] Here, Plaintiffs arguments rests on speculation. Plaintiffs argue, without pointing to supporting evidence, that "A reasonable jury could find that GCBT [Bank] and Mangipano were participants in, and furtherance actors withing, the transaction architecture that produced Plaintiffs' injury."[176] Drawing all inferences most favorably to Plaintiffs, Plaintiffs' argument is buttressed by conclusory allegations and unsubstantiated assertions, not record evidence. Plaintiffs have failed to point the Court to any evidence of an agreement among the Bank Defendants to act tortiously toward Plaintiffs. Similar to the Court in *Thames v. Thames*, the Court here finds that the record "is devoid of any indicia of intent" on behalf of the Bank to assist in any tortious activity toward Plaintiffs.[177] A dearth of any evidence on an agreement among Defendants to act tortiously toward Plaintiffs dooms Plaintiffs' opposition to the present Motion. The Court finds that the Bank and Mangipano are entitled to summary judgment on Plaintiffs' claim regarding a civil conspiracy.

---

[174] *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995) (applying Louisiana law).

[175] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[176] R. Doc. 284 at p. 34.

[177] 196 So. 3d 653, 656 (La. App. 2 Cir. 5/18/16).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Bank's Motion for Summary Judgment[178] is **GRANTED in part** and **DENIED in part**.

**IT IS HEREBY ORDERED** that all claims against Rance Mangipano individually are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to Plaintiffs' claim of annulment against the Bank. That claim remains pending against the Bank.

**IT IS FURTHER ORDERE**D that the Motion is, in all other respects, **GRANTED**.

New Orleans, Louisiana, September 18, 2026.

**WENDY B. VITTER**
**United States District Judge**

[178] R. Doc. 283.