**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MY THI NHU TRAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1933** |
| **GULF COAST BANK & TRUST CO., ET AL.** | **SECTION: D(5)** |

**ORDER AND REASONS**

Before the Court are three Motions for Summary Judgment, one filed by Samantha Tuyet Nguyen Tran and Lloyd & Taylor Mortgage, LLC (collectively, "The Mortgage Broker"),[1] one filed by Nga Baird and New World Realty, LLC (collectively, "The Realtor"),[2] and one by Trieu Law, LLC ("TLL" or "the Closing Agent").[3] Plaintiffs My Thi Nhu Tran and Tung Duc Vo ("Plaintiffs") oppose each Motion.[4] The Mortgage Broker, the Realtor, and Trieu have each filed a Reply.[5] After careful consideration of the parties' memoranda, the record, and the applicable law, Tran and Lloyd & Taylor's Motion for Summary Judgment is **GRANTED in part and DENIED in part**, Nga Baird and New World Realty, LLC's Motion for Summary Judgment is **GRANTED**, and Trieu Law, LLC's Motion for Summary Judgment is **GRANTED**.

[1] R. Doc. 256.
[2] R. Doc. 258
[3] R. Doc. 282.
[4] R. Docs. 267, 268, 270, respectively. The Court notes that Plaintiffs' Opposition to the Motion for Summary Judgment filed by Trieu Law is mistakenly referenced in the docket as a response to R. Doc. 257. It is Plaintiffs' Opposition to Trieu Law's Motion for Summary Judgment. *See* R. Doc. 270.
[5] R. Docs. 272, 273, 274, respectively.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an alleged mortgage lending scheme orchestrated by Defendants against Plaintiffs. In 2020, Plaintiffs, who are Vietnamese immigrants with limited English proficiency, began the process of buying a home, namely 2540 Long Branch Drive in Marrero, Louisiana.[6] Plaintiffs reached an agreement with the sellers of the home to purchase the property from them.[7] Throughout this process, Nga Baird, through her company, New World Realty, LLC, served as the realtor ("The Realtor");[8] Samantha Tuyet Nguyen Tran, through her company, Lloyd & Taylor Mortgage, LLC, served as the mortgage broker ("The Mortgage Broker");[9] Trieu Law, LLC served as the closing agent ("The Closing Agent");[10] Gulf Coast Bank & Trust Co. served as the bank;[11] and Rance Mangipano of Gulf Coast Bank & Trust Co. served as the loan officer.[12] To purchase the home, Plaintiffs sought a loan, secured by an accompanying mortgage on the property.[13] Generally, Plaintiffs allege that Defendants defrauded Plaintiffs by deceiving them into signing a loan with terms far less favorable than those explained to and agreed upon by Plaintiffs.[14] To execute the fraud, Plaintiffs allege that Defendants forged documents, created a sham LLC, and failed to translate documents for Plaintiffs.[15]

---

[6] R. Doc. 268-1 at ¶ 3. Unless otherwise stated, the factual background is drawn from Plaintiffs' Responses to Defendants' Statements of Uncontested Material Facts.
[7] *Id*. at ¶ 4.
[8] *Id*. at ¶ 1.
[9] *Id*. at ¶ 5.
[10] R. Doc. 270-1 at ¶¶ 32-33.
[11] *Id*. at ¶ 26.
[12] *Id*.
[13] R. Doc. 268-1 at ¶¶ 7-9.
[14] *See generally* R. Doc. 231, *Fifth Amended Complaint*, at ¶¶ 16-78.
[15] *Id*. at ¶ 216.

On August 2, 2024, Plaintiffs filed suit in this Court, alleging violations of Truth in Lending Act, 15 U.S.C. § 1601 (TILA); the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), § 18 U.S.C. § 1961; the Louisiana Racketeering Act, La. R.S. § 1353 (LRA); and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*. Plaintiffs further raise claims for annulment, fraud, breach of contract, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy.[16]

The Realtor, the Mortgage Broker, and the Closing Agent each moved to dismiss certain claims in the Fourth Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[17] After the Court's Order and Reasons on the Motions to Dismiss[18] and in compliance with that order, Plaintiffs filed their Fifth Amended Complaint, alleging violations of the FHA and TILA and further asserting state-law claims for annulment, fraud, breach of contract, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy.

The Mortgage Broker, the Realtor, and the Closing Agent now move for summary judgment on all claims asserted against each of them.[19]

**A. The Mortgage Broker's Motion for Summary Judgment**

Defendants Samantha Tuyet Nguyen Tran and Lloyd & Taylor Mortgage, LLC (collectively, "The Mortgage Broker") move for summary judgment on the four claims asserted against them, namely, (1) breach of contract, (2) negligent

[16] R. Doc. 61.
[17] R. Docs. 64, 65, and 77.
[18] R. Doc. 227.
[19] R. Docs. 256, 258, and 282, respectively.

misrepresentation, (3) breach of fiduciary duty, and (4) civil conspiracy.[20] The Mortgage Broker contends that the undisputed record evidence demonstrates that

> (1) Plaintiffs cannot show the existence of a contract requiring Samantha or Lloyd & Taylor to procure any particular type of loan, let alone any breach of such a contract; (2) Plaintiffs cannot establish the elements of negligent misrepresentation because the plaintiff, My Tran, admitted she never directly communicated with Samantha Tran about loan terms before closing, never received a written representation promising a fixed-rate residential loan, and obtained all of her information about the loan secondhand through her husband; and plaintiff, Tung Vo, testified that it was another defendant who told him about the fixed rate loan; (3) Plaintiffs cannot establish the elements of breach of fiduciary duty because Louisiana law does not impose a fiduciary duty on mortgage brokers absent special circumstances not present here; and (4) Plaintiffs cannot establish a civil conspiracy claim because there is no evidence of an agreement between Defendants and any other defendant to commit an intentional tort.[21]

The Mortgage Broker argues that, because there is a lack of record evidence as to an essential element of each of the claims, there is no genuine dispute of material fact, and thus they are each entitled to judgment as a matter of law.[22]

Plaintiffs respond that the Mortgage Broker's motion should be denied.[23] Plaintiffs contend that the negligent misrepresentation claim should not be dismissed because the "claim turns on whether Movants, after undertaking borrower facing mortgage origination and loan information functions, used reasonable care in obtaining, processing, communicating, and correcting material information Plaintiffs needed to understand the transaction" and a genuine issue of material fact exists as to whether the Samantha Tran breached her duty to Plaintiffs by supplying

---

[20] R. Doc. 256
[21] R. Doc. 256-1 at pp. 1-2.
[22] *Id*. at p. 24.
[23] R. Doc. 267.

inaccurate or materially incomplete loan information or failing to correct information that she knew or should have known was misleading.[24] Plaintiffs further argue that the breach of "contract claim survives because the record permits a reasonable jury to find that Movants undertook mortgage origination obligations and performed them defectively."[25] As to the breach of fiduciary duty claim, Plaintiffs state that the Mortgage Broker is not entitled to summary judgment because Samantha Tran owed a duty to the Plaintiffs based on her mortgage origination undertaking, her advice and loan information functions, the Plaintiffs' dependence upon the Mortgage Broker's Vietnamese language skills, her handling of confidential financial information, and her participation in the commercial structure of the loan.[26] Lastly, Plaintiffs urge that their civil conspiracy claim should survive because the "record supports a triable underlying intentional or willful act" by Defendants and that the record as it stands "permits a reasonably jury to find coordinated action" among the Defendants as Plaintiffs allege that Samantha Tran received the Long Branch residence file from Nga Baird and then coordinated with the lender and title company concerning closing matters.[27] In sum, Plaintiffs contend that the Motion should be denied because

> [T]he record permits a reasonable jury to find that Samantha Tran and Lloyd &Taylor undertook borrower facing mortgage origination and loan information functions, knew Plaintiffs' language limitations, and participated in creating, processing, and implementing an LLC based commercial/investment structure for Plaintiffs' family home purchase. The same record permits a jury to find that Movants failed to supply

[24] *Id*. at pp. 8-13.
[25] *Id*. at p. 13.
[26] *Id*. at p. 17.
[27] *Id*. at p. 23.

> accurate material information, failed to obtain knowing authorization, and coordinated with others in using documents and structures Plaintiffs deny authorizing.[28]

In Reply, the Mortgage Broker maintains that they are entitled to summary judgment on the claims asserted against them because "Plaintiffs still do not identify competent summary judgment evidence sufficient to establish the essential elements of any claim asserted against Defendants."[29] The Mortgage Broker reiterates that Plaintiffs have failed to provide competent summary judgment evidence of "(1) an enforceable contractual obligation, and breach thereof, (2) an actionable misrepresentation by Defendants, (3) a legally cognizable fiduciary duty owed by Defendants, and (4) an agreement by Defendants to commit an underlying intentional tort."[30] Arguing that Plaintiffs have failed to provide evidence to prove an essential element of each of the claims against the Mortgage Broker, the Mortgage Broker urges that the Court should grant summary judgment in its favor.[31]

**B. The Realtor's Motion for Summary Judgment**

Defendants Nga Baird and New World Realty, LLC (collectively, "The Realtor") move the Court for summary judgment on Plaintiffs' remaining three claims against them, specifically, claims for (1) negligent misrepresentation, (2) breach of fiduciary duty, and (3) civil conspiracy.[32] The Realtor states that the negligent misrepresentation claim must be dismissed because Plaintiff My Tran conceded that

---

[28] *Id.* at p. 24.
[29] R. Doc. 272 at p. 1.
[30] *Id.* at p. 2.
[31] *See generally id.* at pp. 2-9.
[32] R. Doc. 258.

Baird "did not discuss with her whether the interest rate would be fixed or variable."[33] Furthermore, the Realtor contends that Plaintiffs "cannot prove that they justifiably relied on any alleged misrepresentation" by the Realtor.[34] The Realtor argues additionally that "Plaintiffs have ratified the purchase of their home" and, as a result may not "recover damages for any misrepresentations that they relied on in purchasing the home."[35] As to the breach of fiduciary duty claim, the Realtor urges that Plaintiffs cannot establish the breach of any fiduciary duty and have no evidence that Baird "*knew* that plaintiffs were entering into a loan agreement that they did not understand or that differed from their understanding of the terms."[36] Regarding the civil conspiracy claim, the Realtor contends that Plaintiffs have no evidence "to establish an agreement between defendants to forge documents or otherwise defraud plaintiffs" and "that any defendant forged plaintiffs' signatures."[37] Lastly, the Realtor states that "[i]n addition to the deficiencies on the merits, plaintiffs' claims must be dismissed as prescribed" because Plaintiffs failed to file suit prior to the end of the one-year prescriptive period for delictual actions of negligent misrepresentation and civil conspiracy as well as their claims of breach of fiduciary duty.[38]

Plaintiffs respond to the Realtor's last contention first.[39] Plaintiffs contend that the Realtor's prescription argument "rests on the premise that a December 2020 or

---

[33] R. Doc. 258-1 at p. 7.
[34] *Id.*
[35] *Id.* at p. 9.
[36] *Id.* at p. 10.
[37] *Id.* at pp. 11-12.
[38] *Id.* at pp. 15-16 (citing La. Civ. Code art. 3492, repealed and replaced by article 3493.1 (effective July 1, 2024)).
[39] R. Doc. 268.

January 2021 bank statement bearing 'Tungmy LLC' put Plaintiffs on notice of the claims asserted here" but that evidence "does not establish notice as a matter of law," especially since Plaintiff My Tran testified that she did not understand that statement as notice that the family home had been financed through a commercial LLC borrower.[40] In short, Plaintiffs argue that that "Tungmy LLC" designation was nothing more than a confusing account designation."[41] Plaintiffs contend that "Plaintiffs did not discover the material facts concerning the commercial/LLC structure, variable rate consequences, payment increase, and disputed documents until 2024, after the payment increased and they obtained help reviewing records."[42]

Next, Plaintiffs contend that Baird's duties as their agent present jury questions on misrepresentation, fiduciary breach, reliance and causation because she had a duty as their real estate agent to "promote the client's best interests, seek a transaction at terms acceptable to the client, and exercise reasonable skill and care in performing brokerage services" under Louisiana law and failed to do so.[43] Plaintiffs argue that Baird is liable for negligent misrepresentation because she was present and involved in the closing of the real estate transaction and that a jury could find that her "communications materially misleading if she helped move Plaintiffs forward while failing to disclose or correct that the transaction being closed was an LLC based commercial/investment loan Plaintiffs did not understand or knowingly

---

[40] R. Doc. 268 at p. 4.
[41] *Id.* at p. 7.
[42] *Id.* at pp. 7-8.
[43] *Id.* at p. 9 (citing La. R.S. 9:3893(A)).

approve."[44] Plaintiffs oppose summary judgment on the civil conspiracy mode of liability arguing that the record evidence permits a jury to find that "Plaintiffs' family home purchase was coordinated into an LLC based commercial/investment structure Plaintiffs did not request, understand, or authorize; that disputed borrower, LLC, mortgage, pledge, and closing documents were used to implement that structure; and that Plaintiffs were moved through the transaction despite their known inability to read English documents."[45]

Plaintiffs summarize that the record evidence in this case

> permits a reasonable jury to find that Baird was not merely a background realtor, but Plaintiffs' Vietnamese speaking buyer agent and transaction participant; that she knew Plaintiffs sought a family home and could not independently evaluate English loan and closing documents; that she supplied, reinforced, or failed to correct material transaction information; and that Plaintiffs were moved through a closing that implemented an LLC based commercial/investment structure they did not understand, authorize, or knowingly approve.[46]

Baird replies that the breach of fiduciary duty and negligent misrepresentation claims must be dismissed. The Realtor argues, "For there to be a viable negligent misrepresentation claim based on omission, 'there must be a duty to inform in the first place.'"[47] Baird contends that the existence of a duty is also required to establish a claim for breach of fiduciary duty.[48] Baird maintains that "to establish a duty, plaintiffs must show that Ms. Baird specifically undertook the obligation to study and then explain their loan terms to them" and Plaintiffs have failed to provide evidence

[44] *Id.* at pp. 11-12.
[45] *Id.* at pp. 13-14.
[46] *Id.* at pp. 15-16.
[47] R. Doc. 273 at p. 2.
[48] *Id.* at p. 3.

to support that." Baird argues that it is "without contradiction, [that] she has 'no role in proposing, offering or approving any mortgage or loan.'" Furthermore, the Realtor contends that the commercial nature of the loan was disclosed to Plaintiffs prior to closing and states that Plaintiffs "have presented no evidence that they told Ms. Baird that they thought or assumed their loan was residential in nature and in their personal names."[49] The Realtor contends that the negligent misrepresentation claim must be dismissed because there is no evidence that Plaintiffs justifiably relied on an representation or omission by the Realtor.[50] As to the civil conspiracy claim, the Realtor argues that Plaintiffs have provided no evidence to "prove an agreement between defendants…to forge documents in an effort to defraud plaintiffs."[51] The Realtor additionally argues that Plaintiffs' claims are prescribed because Plaintiffs were put on notice in either December 2020 or January 2021 and failed to file suit until 2024.[52] The Realtor reiterates that there "is no evidence that (1) Ms. Baird assumed a duty to explain loan documents to plaintiffs; (2) plaintiffs justifiably relied on any alleged misrepresentation or omission regarding written loan documents; (3) defendants had an agreement to forge documents; or (4) any defendant forged plaintiffs' signatures on any document."[53]

---

[49] *Id*. at pp. 4-5.
[50] *Id*. at pp. 6-7.
[51] *Id*. at p. 7.
[52] *Id*. at pp. 8-9.
[53] *Id*. at p. 10.

**C. The Closing Agent's Motion for Summary Judgment**

Defendant Trieu Law, LLC, seeks summary judgment on all claims that Plaintiffs assert against it.[54] The Closing Agent states that Plaintiffs "have no evidence of any wrongdoing, breach, or negligence by TLL [Trieu Law] and as such, will be unable to meet their burden at trial."[55]

The Closing Agent contends that each of the three causes of action against it, (1) violation of the Fair Housing Act (FHA), (2) negligent misrepresentation, and (3) civil conspiracy, must be dismissed.[56] As to the FHA claim, the Closing Agent states that it must be dismissed because "(1) Plaintiffs' FHA claims is time-barred by the two-year statute of limitations, and (2) Plaintiffs do not have any evidence to suggest TLL violated the FHA."[57] The Closing Agent urges that neither of the exceptions to the two-year limitation period are applicable in this case.[58] The Closing Agent maintains that there was no duty to provide any meaningful explanation of the closing documents and, thus, "there can be no basis for arguing tolling of the prescriptive period due to a failure to provide the same."[59] The Closing Agent further contends that the continuing violation exception does not apply because "it had no role whatsoever in the on-going servicing and enforcement of the loan."[60] Addressing the substance of the FHA claim, the Closing Agent argues that "the uncontroverted evidence in the record establishes that Plaintiffs were able to get a loan and purchase

---

[54] R. Doc. 282.
[55] R. Doc. 282-1 at p. 2.
[56] *Id.* at p. 15.
[57] *Id.* at pp. 16-17.
[58] *Id.* at p. 17.
[59] *Id.* at p. 19.
[60] *Id.*

a desired property" and thus "because they [ ] were not deprived anything by way of discrimination, Plaintiffs cannot meet their burden of proof with respect to an FHA claim."[61]

As to any claim for fraud asserted by Plaintiffs against the Closing Agent, the Closing Agent urges that Plaintiffs cannot prove required elements of a fraud claim under Louisiana law, that the allegations of forgery are insufficient to support a fraud claim, that the allegation that the Closing Agent formed a fraudulent LLC is insufficient to support a fraud claim, and that there were no misrepresentations by the Closing Agent that could support a fraud claim.[62] The Closing Agent contends that Plaintiffs have no evidence to support a claim of negligent misrepresentation against it because there was no representation made by the Closing Agent and because Plaintiffs, as a matter of Louisiana law, are not permitted to "rely on any alleged verbal representations when presented with contradictory documents as a matter of Louisiana law."[63] Regarding to any liability for a civil conspiracy, the Closing Agent states that "[b]ecause Plaintiffs cannot prove that TLL [Trieu Law] committed any underlying tort—including fraud or misrepresentation, or a violation of the FHA as discussed above—Plaintiffs cannot maintain a claim for civil conspiracy against TLL."[64] Additionally, the Closing Agent notes that "because Plaintiffs cannot prove the existence of an agreement existed among any of the Defendants to commit

[61] *Id*. at p. 22.
[62] *Id*. at pp. 28-30.
[63] *Id*. at p. 31 (citing *Leger v. Bank of New York Mellon as Tr. of GSAMP Tr. 2004-SEA-2,* 329 So.3d 354, 360 (La.App. 3 Cir. 9/1/21), *writ denied*, 328 So.3d 85 (La. 11/23/21)).
[64] *Id*. at p. 32.

a tortious act that caused an injury to Plaintiffs, there exists no genuine issue of material fact as to Plaintiffs' claim for civil conspiracy," and therefore the Closing Agent contends that summary judgment is appropriate."[65]

Plaintiffs oppose the Closing Agent's Motion for Summary Judgment.[66] Plaintiffs contend that record evidence viewed in favor of Plaintiffs "supports competing reasonable inferences on TLL's role, Plaintiffs' authorization and understanding, negligent misrepresentation, and coordinated implementation of the disputed structure."[67] As to the FHA claim, Plaintiffs do not address the Closing Agent's statute of limitations argument but do address the merits of the claim.[68] Plaintiffs contend that record evidence permits a jury finding that "Plaintiffs' residential purchase was processed through a materially different and disadvantaging structure: an LLC borrower, commercial/investment classification, commercial guaranty, multiple indebtedness mortgage, pledge of leases and rents, and nondisclosable business loan documents."[69] Furthermore, Plaintiffs state that the evidence shows a question of material fact as to whether the Closing Agent "helped provide materially deficient, unequal, or misleading housing related settlement services to Vietnamese [limited English proficiency] buyers in connection with their family home purchase."[70] The Plaintiffs urge that summary judgment not be granted on the FHA claim as to the Closing Agent because even if a defendant's

[65] *Id*. at p. 33.
[66] R. Doc. 270.
[67] *Id*. at p. 2.
[68] *Id*. at pp. 10-14.
[69] *Id*. at p. 11.
[70] *Id*. at pp. 11-12.

role is "limited," "if its own conduct materially participates in the challenged housing transaction, the role is for the jury to evaluate."[71]

Addressing the negligent misrepresentation claim alleged against the Closing Agent, Plaintiffs contend that the evidence shows that a jury could find that the Closing Agent's "settlement statement, title materials, LLC related conduct, document package, and closing process supplied transaction information to Plaintiffs and implemented a structure Plaintiffs deny authorizing or understanding."[72] Plaintiffs argue that they were "completing an authorized family home purchase, while the operative package instead closed a materially different structure: an LLC borrower, personal guaranties, multiple indebtedness mortgage, pledge of leases and rents, loan purpose acknowledgment, and disbursement authorization identifying a variable rate nondisclosable business/investment loan" and that this structure was never explained to them.[73] Plaintiffs state that duty and reliance on the representations or omissions of the Closing Agent are jury issues and urge that the Court deny summary judgment on this claim.[74] Addressing its civil conspiracy claim against the Closing Agent, Plaintiffs state that an agreement among Defendants can be proven circumstantially and that emails among the Defendants supports coordinated implementation of the transaction structure that Plaintiffs allege forms

---

[71] *Id*. at p. 13.
[72] *Id*. at p. 15.
[73] *Id*.
[74] *Id*. at pp. 16-17.

the basis of the conspiracy.[75] For that reason, Plaintiffs urge that the Court deny the Defendants' Motion as to the claim for conspiracy liability.[76]

The Closing Agent replies that Plaintiffs have not met their burden and that, as a result, the Motion should be granted.[77] The Closing Agent states that a "routine and customary closing does not create liability for the participants simply because Plaintiffs wish it were so" and that, as a result, "when evaluating the actual evidence adduced to support each of the four theories Plaintiffs advance against Trieu Law, it is readily apparent that Plaintiffs cannot meet their burden of proof at trial."[78] The Closing Agent contends that Plaintiffs have failed to produce record evidence demonstrating a genuine issue of material fact as to a necessary element of each of the claims Plaintiffs assert against it and, thus, that it is entitled to judgment as a matter of law.[79]

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[80] A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[81] Further, a fact is "material" if it "might affect the outcome of the suit under the governing

[75] *Id*. at pp. 17-18.
[76] *Id*. at p. 19.
[77] R. Doc. 274.
[78] *Id*. at p. 2.
[79] *Id*. at pp. 4-9.
[80] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[81] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

law."[82] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[83] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[84] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[85]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[86] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[87] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[88] The burden then shifts to the nonmoving party who must go beyond

---

[82] *Liberty Lobby*, 477 U.S. at 248.
[83] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[84] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[85] *Id.* at 399 (citing *Liberty Lobby*, 477 U.S. at 248).
[86] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[87] *Id.* at 1265.
[88] *See Celotex*, 477 U.S. at 322–23.

the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[89]

## III. ANALYSIS

The Court addresses the motions by claim alleged by Plaintiffs, and then by individual movant as to that claim.

### 1. Plaintiffs' Claims under the Fair Housing Act (FHA)

Plaintiffs have asserted a claim under the Fair Housing Act against the Closing Agent, Trieu Law, LLC.[90]

The Fair Housing Act ("FHA") makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[91] It likewise provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.[92]

[89] *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).
[90] R. Doc. 231 at p. 16.
[91] 42 U.S.C. § 3604(b).
[92] 42 U.S.C. § 3605(a).

*A. Plaintiffs' Fair Housing Act Claim as to the Closing Agent*

The Closing Agent now moves for summary judgment on Plaintiffs' FHA claim against it. The Closing Agent argues that the "last date the two-year statute of limitations [for FHA claims] could have begun to run was in December 2020, at the closing, and Plaintiffs did not file suit until August 2, 2024, over three and a half years later."[93] In its Uncontested Material Facts in support of its Motion for Summary Judgment, the Closing Agent provided that "the closing went forward on December 4, 2020 at TLL's [Trieu Law] office, with Plaintiffs, their realtor Nga Baird, the Sellers, the Sellers' realtor, and Tran present."[94] Plaintiffs do not explicitly address the Closing Agent's statute of limitations argument in their response to the present Motion and, in their Response to Defendant Trieu Law, LLC's Statement of Uncontested Material Facts, advise that the above Uncontested Material Fact is "Admitted only that a closing occurred at TLL's office and that Sharrock acted as notary. Denied that the closing established Plaintiffs' informed understanding, authorization, or consent to the commercial/LLC loan documents or structure."[95] The Closing Agent's Uncontested Material Facts further assert "At the conclusion of the closing, plaintiffs obtained the keys to the home and moved into the house located at 2540 Long Branch Drive."[96] Plaintiffs admit this uncontested fact.[97]

---

[93] R. Doc. 282-1 at p. 17.
[94] R. Doc. 282-2 at ¶ 53.
[95] *See* R. Docs. 270 and 270-1 at ¶ 53.
[96] R. Doc. 282-2 at ¶ 65.
[97] R. Doc. 270-1 at ¶ 65.

The statute of limitations for FHA claims is two years, and it begins to run "after the occurrence or the termination of an alleged discriminatory housing practice."[98] "Equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[99] "Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law."[100] The Fifth Circuit has recognized that equitable tolling may be appropriate when a plaintiff is unaware of the facts giving rise to the claim because of the defendant's intentional concealment of them.[101] The Fifth Circuit has found that a limitations period may be tolled when two elements are met: "first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim."[102] The Plaintiffs bear the burden of establishing that equitable tolling is appropriate.[103]

Plaintiffs did not respond to the Closing Agent's prescription argument. However, the Closing Agent has presented evidence that Plaintiffs were provided with copies of the document packet at the end of the closing containing the signed act

---

[98] 42 U.S.C. § 3613(a)(1)(A); *Lawrence v. Ctr. Props., LLC*, 847 F. App'x 254, 256 (5th Cir. 2021).
[99] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (citation modified).
[100] *Id.* (citing *Rotella v. Wood*, 528 U.S. 549, 560 (2000)).
[101] *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402,404 (5th Cir. 1995)).
[102] *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 489 (5th Cir. 2016) (quoting *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988)).
[103] *Id.* (citing *Wilson*, 65 F.3d at 404).

of cash sale, the settlement statement, and key statement.[104] The parties do not dispute that the terms of the loan are present in the loan documents themselves, nor that the loan documents are in English.[105] The issue is whether equitable tolling is appropriate due to Plaintiffs' limited English proficiency. The Court is cognizant that the doctrine of equitable tolling should be used sparingly. The evidence presented in this case, viewed in a light most favorable to Plaintiffs, do not merit such equitable tolling. The Closing Agent's representative stated that it's role was "solely to assist in creating the Act of Cash Sale, HUD-1 Settlement Statement, and legal description in conformity with the terms of the sale and financing as presented to me" and that he was not involved "in negotiating the purchase of the house or the financing terms."[106] The record is devoid of evidence that the Closing Agent concealed the complained of conduct. The Court further addresses whether Plaintiffs have shown due diligence. The Closing Agent maintains that "Plaintiffs are legally deemed to have read and understood all of the documents they signed."[107] Plaintiffs' argument in opposition to the motion is that Plaintiffs' did not understand the documents due to their limited English proficiency. Drawing all reasonable inferences in favor of the Plaintiffs, Plaintiffs have failed to show the exercise of due diligence.[108] Plaintiffs

---

[104] R. Doc. 282-9, *Declaration of Christopher Russell*, at ¶ 25.
[105] R. Doc. 284-1 at p. 17.
[106] R. Doc. 282-5, *Declaration of Lee Sharrock*, at ¶¶ 11-12.
[107] R. Doc. 282-1 at p. 29.
[108] Plaintiff My Thi Nu Tran testified in her deposition several times that she did not ask anyone to explain any of the paperwork to her. *See* R. Doc. 284-4 at pp. 50-57 (Q. "Did you ask anybody to explain any of the documents to you? A. Well, they just brough the paperwork over to me and then just—you know, sign, sign. Nobody explain to me. I just sign and then take the key and then gave them the check. Nobody explain—None of them explain anything to me of what I signed.")

have not met their burden to prove concealment such that equitable tolling would toll the two-year statute of limitations.

The second exception to the two-year limitations period for claims under the FHA is the continuing violation theory.[109] "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred."[110] As applied to the FHA, the exception "applies where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period."[111] The Court agrees with the Closing Agent that the continuing violation theory does not apply to any alleged violation by the Closing Agent because it "had no role whatsoever in the on-going servicing and enforcement of the loan."[112] Plaintiffs have not provided any evidence to demonstrate that this exception to the two-year limitations period of FHA claim applies in this case or that the Closing Agent was involved in an ongoing pattern of discrimination that occurred, at least in part, within the limitations period. Thus, the Court finds that the Closing Agent is entitled to summary judgment on Plaintiffs' FHA claim against it as a matter of law.[113]

---

[109] *Pecan Acres Ltd. P'ship I v. City of Lake Charles*, 54 F. App'x 592, 2002 WL 31730433 at *1 (5th Cir. 2002).
[110] *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993).
[111] *Pecan Acres Ltd. P'ship I*, 54 F. App'x 592 at *1 (internal quotations omitted) (citation modified).
[112] R. Doc. 282-1 at p. 19.
[113] Having found that Plaintiffs' claim under the FHA against the Closing Agent are time-barred as a matter of law, the Court need not and does not address the Closing Agent's arguments and Plaintiffs' response regarding the merits of the claim.

**2. Plaintiffs' Claims for Breach of Contract**

Plaintiffs assert breach of contract claims against the Samantha Tuyet Nguyen Tran and Lloyd & Taylor Mortgage, LLC ("the Mortgage Broker").[114]

The elements for breach of contract under Louisiana law are: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee.[115] The Civil Code defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[116] "A contract is formed by consent of the parties established through offer and acceptance."[117]

Plaintiffs assert a claim for breach of contract against the Mortgage Broker Samantha Tran, alleging that Tran "undertook mortgage origination obligations and performed them defectively."[118] Defendants argue that the dispute centers on the Mortgage Loan Origination Agreement ("MLOA").[119] The Mortgage Broker contends that it is entitled to summary judgment on the claim because the undisputed factual record demonstrates that Samantha Tran "performed precisely the services described: she received the file from realtor Nga Baird, collected Plaintiffs' information, prepared and submitted the loan application, communicated with the lender, and coordinated the file through to closing."[120]

---

[114] R. Doc. 231 at p. 30.
[115] *SnoWizard, Inc. v. Robinson*, 897 F.Supp.2d 472, 478 (E.D. La. 2012).
[116] *Id.* (QUOTING LA. CIV. CODE art. 1756).
[117] La. Civ. Code art. 1927.
[118] R. Doc. 267 at p. 13.
[119] R. Doc. 61-25, *Mortgage Loan Origination Agreement*, at p. 13.
[120] R. Doc. 256-1 at p. 8.

The Court first addresses the obligation that Plaintiffs allege the Mortgage Broker to have breached. Plaintiffs contest the validity of the MLOA, arguing that it was not "knowingly signed, understood, authorized, or agreed to."[121] Absent the MLOA, Plaintiffs have failed to identify any contractual obligation the Mortgage Broker owed to them or upon which their claim for breach of contract could be based.[122] The breach of contract claim requires proof of an obligation formed by the mutual assent of the parties; there is no record evidence of any other obligation between Plaintiffs and the Mortgage Broker.[123] Viewing the evidence in the light most favorable to Plaintiffs as non-moving parties, the Court proceeds with a summary judgment analysis of a breach of contract claim based on the MLOA.

The MLOA contains a provision that the Mortgage Broker "agrees to perform all mortgage loan broker services normally and customarily performed in connection with the origination of mortgage loans" and then enumerates several representative tasks normally associated with mortgage origination.[124] Nowhere in the MLOA does it state that the Mortgage Broker agreed to procure for Plaintiffs "a fixed-rate loan, an owner-occupied residential loan, or any other specific loan product."[125] The MLOA

[121] R. Doc. 267 at p. 14.
[122] Plaintiffs' Fifth Amended Complaint alleges a breach of contract claim against Gulf Coast Bank & Trust and against the Mortgage Broker in Count V. As to the Mortgage Broker, the Fifth Amended Complaint alleges, "Plaintiffs and LTM entered into the mortgage-broker / loan-origination agreement reflected in the transaction documents, including the Mortgage Loan Origination Agreement to the extent valid and enforceable, and, in the alternative, entered into an oral and/or implied-in-fact contract under which LTM and Samantha agreed to act as Plaintiffs' mortgage broker in obtaining the residential financing sought by Plaintiffs." *See* R. Doc. 231.
[123] La. Civ. Code art. 1927.
[124] The Mortgage Loan Origination Agreement is at R. Doc. 61-25 and the "Services to be Performed are listed on p. 13.
[125] R. Doc. 272 at p. 3.

specifies the loan amount, 240 month term, and note rate of 4.75%.[126] The MLOA further states "Interest rates and programs are subject to change without notice."[127] In their opposition to the Mortgage Broker's Motion for Summary Judgment, Plaintiffs contend that they must prove that the Mortgage Broker "undertook mortgage origination obligations and failed to perform those obligations accurately, completely, and in good faith" to support their breach of contract claim.[128] Plaintiffs argue that the Mortgage Broker's reliance on the MLOA does not support summary judgment as the "Plaintiffs dispute that the MLOA was knowingly signed, understood, authorized, or agreed to."[129]

Viewing the evidence in a light most favorable to Plaintiffs, as the Court is required to do, Plaintiffs' argument that they did not understand the contents of the MLOA fails to contest—or even address—whether *the Mortgage Broker* failed in her obligations under the MLOA. Plaintiffs further fail in their opposition to identify which, if any, of the contractual provisions in the MLOA that the Mortgage Broker breached or even defectively performed and further fail to provide competent evidence to demonstrate a genuine dispute of material fact as to whether the Mortgage Broker breached or defectively performed any of the her obligations under the MLOA.[130] In contrast, the Mortgage Broker has pointed to record evidence showing that she did, in fact, perform her contractual duties.[131] Thus, the Court finds that the record

[126] R. Doc. 61-25 at p. 8.
[127] *Id.*
[128] R. Doc. 267 at p. 14.
[129] *Id.*
[130] R. Doc. 267 at pp. 14-15.
[131] R. Doc. 256-5, *Declaration of Samantha Tuyet Nguyen Tran*, at ¶¶ 7-15; R. Doc. 256-2, *Deposition of Samantha Tuyet Nguyen Tran*, at pp. 4-5.

evidence establishes no genuine dispute of material fact on Plaintiffs' breach of contract claim against the Mortgage Broker and grants summary judgment in favor of Samantha Tran and Lord & Taylor Mortgage, LLC as a matter of law.

**3. Plaintiffs' Claims for Negligent Misrepresentation**

Plaintiffs raise claims for negligent misrepresentation against the Mortgage Broker, the Realtor, and the Closing Agent.[132]

To establish negligent misrepresentation in Louisiana, the plaintiff must prove: (1) a legal duty on the part of the defendant to provide correct information; (2) breach either by omission or affirmative misrepresentation; and (3) damages based on the plaintiff's reasonable reliance on the misrepresentation.[133]

The Court now addresses whether summary judgment is appropriate as to each claim asserted against by Plaintiff against each Movant.

*A. Plaintiff's Negligent Misrepresentation Claim as to the Mortgage Broker*

Plaintiffs assert a claim for negligent misrepresentation against the Mortgage Broker. The Mortgage Broker moves for summary judgment on that claim, arguing that "Plaintiffs cannot establish the threshold element that Defendants had a legal duty to procure a certain loan type, or that Samantha Tran misrepresented the loan type" or that Plaintiffs received or relied upon any representation by the Mortgage Broker.[134] Plaintiffs counter that Louisiana law does not require Plaintiffs to prove that the Mortgage Broker "guaranteed a fixed rate loan, guaranteed Gulf Coast

---

[132] R. Doc. 231 at p. 34.
[133] *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008).
[134] R. Doc. 256-1 at pp. 14-15.

Bank's underwriting decision, or made a direct written promise to plaintiff."[135] Plaintiffs contend that Samantha Tran's role in the transaction created a duty for her to use reasonable care to communicate material loan information and that she provided misleading or incomplete information concerning "borrower identity, loan classification, property use, and authorization."[136]

As a threshold matter, the Court agrees with Plaintiffs that privity is not required to recover for a negligent misrepresentation provided that Plaintiffs show that they, "as a result of their actual and justifiable reliance on negligently made representations, suffer[ed] economic damages."[137]

The Court must determine whether the Mortgage Broker owed Plaintiffs a duty to provide correct information.[138] Courts employ a case-by-case duty/risk analysis, but, appellate courts have found that where there is a fiduciary relationship between the parties, there is "a duty owed to the tort victim under factual scenarios of both non-disclosure and misinformation."[139] The Louisiana Second Circuit has held that the tort also includes representations made in the course of rendering services based on a contractual relationship where "because of lack of reasonable care or an absence of skill or competence in ascertaining the facts or making the opinion, and/or the manner of communicating the facts or opinion, the representation causes economic loss to be suffered by a third party, who is an intended user of the

[135] R. Doc. 267 at p. 8.
[136] *Id*. at pp. 10-11.
[137] *Barrie v. V.P. Exterminators, Inc*., 625 So. 2d 1007, 1013 (La. 1993).
[138] *Kadlec Med. Ctr*., 527 F.3d at 418.
[139] *Barrie*, 625 So. 2d at 1015.

information and who relies on the information to his detriment."[140] The Court has found a fiduciary relationship between Plaintiffs and the Mortgage Broker,[141] and Plaintiffs have stated in their affidavit that the Mortgage Broker was aware of their "vulnerable position" and that they "relied" on her "for honest, accurate, and transparent assistance."[142] The Mortgage Broker admitted that it "communicated with Plaintiff about the loan structure in Vietnamese" regarding the loan at issue.[143] The Court finds that the Mortgage Broker owed Plaintiffs that duty to provide correct information based on its analysis of the facts of this case.

Having found that the Mortgage Broker owed Plaintiffs this duty, the Court finds genuine disputes of material fact as to whether (1) the Mortgage Broker breached that duty, (2) Plaintiffs reasonably relied on any representations or omissions, and (3) damages were suffered. Regarding breach, while the Mortgage Broker argues that it is not liable because Samantha Tran made no representations to Plaintiffs, as the Court noted above, liability for negligent misrepresentation can be established by omission.[144] As to reliance, the Mortgage Broker contends that record evidence does not establish that the "Vietnamese oral explanations were incomplete or inaccurate [or] establish what specific false statement was made, when

[140] *Kent v. Cobb*, 811 So. 2d 1206, 1212 (La. App. 2 Cir. 3/8/02), *writ denied sub nom. Doug v. Cobb*, 818 So. 2d 772 (La. 6/7/02).
[141] *See infra* § 4.8.
[142] R. Doc. 267-4, *Joint Affidavit of Plaintiffs*, at ¶ 6; see also R. Doc. 267-3, *Deposition of My Thi Nhu Tran*, at p. 15 ("I ask Tuyet, so, how much do I pay per month, and then she told me that a month I need to pay $1,054.") and R. Doc. 267-8, *Deposition of Tung Duc Vo*, at p. 23 ("When I borrowed the money, all I knew that it was through the — someone — it was through a lead or someone who works in the real estate -- in real estate and that person refer me to Ms. Tuyet.").
[143] R. Doc. 267-5 at p. 28.
[144] *See Barrie*, 625 So. 2d at 1013.

it was made, to whom it was made, and how either Plaintiff relied on it."[145] Plaintiffs argue that reliance is a jury question, and provide record evidence that, viewed in the light most favorable to them, creates a genuine dispute of material fact as to reliance.[146] Because these genuine disputes of material fact remain as to Plaintiffs' claim for negligent misrepresentation against the Mortgage Broker, summary judgment on the claim must be denied.

B. *Plaintiff's Negligent Misrepresentation Claim as to the Realtor*

Plaintiffs also assert a claim for negligent misrepresentation against the Realtor. The Realtor argues that summary judgment should be granted on this claim because the Realtor made no representation to Plaintiffs regarding the loan for the home purchase.[147] Furthermore, Baird contends that the claim should be dismissed because Plaintiffs cannot prove that they justifiably relied on any representations or omissions by the Realtor.[148] Plaintiffs respond that a reasonable jury could find that the Baird's communication with Plaintiffs were "materially misleading if she helped move Plaintiffs forward while failing to disclose or correct that the transaction being closed was an LLC based commercial/investment loan Plaintiffs did not understand or knowingly approve" and that Plaintiffs relied through conduct because "they continued with the purchase, tendered funds, appeared at closing, accepted the keys, moved into the home, and made payments under the loan as they understood it"[149]

---

[145] R. Doc. 272 at p. 5.
[146] R. Doc. 267 at p. 12; R. Doc. 267-3 at p. 14 ("Well, you know, I don't speak English. I don't know English. That's why I trust the Vietnamese people.") and at p. 32 ("I just trust them Vietnamese people, and I gave the money, and I pick up the key.").
[147] R. Doc. 258-1 at pp. 6-7.
[148] *Id.* at p. 7.
[149] R. Doc. 268 at pp. 11-12.

The first prong of a negligent misrepresentation claim is the requirement to show that there was "a legal duty on the part of the defendant to provide correct information."[150] "Whether a duty is owed is a question of law."[151] While the Realtor argues that "plaintiffs must show that Ms. Baird specifically undertook the obligation to study and then explain their loan terms to them," and Plaintiffs cannot meet this burden,[152] the Court finds otherwise. Based on the record evidence of Realtor's actions during the transaction, the evidence supports that Baird undertook a duty to provide correct information to Plaintiffs. Plaintiff Tung Duc Vo testified that it was the Realtor "who represent[ed] me in the transaction" and that Nga Baird "told me that I didn't need any credit" and that he "had to put down 25 percent for 20 years with the interest rate of 4.8 percent or 4.85."[153] Plaintiff My Tran also testified that Baird played a role in facilitating the mortgage loan to purchase the home.[154] Based on the facts present in this case, the Court finds that the Realtor undertook the duty to provide correct information to Plaintiffs.

The second prong of a negligent misrepresentation claim is a breach either by omission or affirmative misrepresentation. Plaintiffs argue that evidence in the record demonstrates a genuine dispute of material fact as to whether the Realtor "supplied or failed to correct material transaction information, breached duties

[150] *Kadlec Med. Ctr*, 527 F.3d at 418.
[151] *Barrie*., 625 So. 2d at 1015.
[152] R. Doc. 273 at p. 3.
[153] R. Doc. 268-5 at p. 11.
[154] *See* R. Doc. 268-3 at p. 46 ("At that time, when Nga told me that I was approved and Ms. Tuyet that, you know, agreed and approve the loans and I — we were eligible for a loan that — to buy a house that — less than 250,000, so I just started on it") and at p. 58 ("Well, Nga —Well, Nga told me — Well, you know, Nga told me that Tuyet and Trang approve me for the loan to buy a house at less than — the value less than 250") and at pp. 69-70.

arising from her real estate agent undertaking, or participated in or facilitated actionable wrongful conduct by others."[155] While Nga Baird states that she took "no role in proposing, offering or approving any mortgage or loan,"[156] the Court finds that genuine issues of material fact, based on Plaintiffs' testimony as viewed in the light most favorable to them, regarding to what extent Plaintiffs reasonably relied on any representations or omissions by the Realtor.

As to the Realtor's ratification argument, the Court finds that it does not apply in the present case. "To prove ratification, a defendant must establish that the plaintiff (1) had full knowledge of the fraud or breach at the time of ratification and (2) a voluntary intentional choice to ratify the conduct in light of such knowledge."[157] The Court finds, based on the record evidence cited above, that there exists a dispute as to whether Plaintiffs had full knowledge of any alleged breach at the time of ratification and thus that it is inappropriate to grant summary judgment on this claim based on ratification.

The Realtor contends that Plaintiffs' claim for negligent misrepresentation has prescribed.[158] Actions in tort arising prior to July 1, 2024, are subject to a one-year prescriptive period.[159] Louisiana law provides for equitable tolling of liberative prescription periods under the doctrine *contra non valentem agere non currit praescriptio*, that is, "no prescription runs against a person unable to bring an

[155] R. Doc. 268 at p. 6.
[156] R. Doc. 258-2 at ¶ 16.
[157] *RedHawk Holdings Corp. v. Schreiber*, No. CV 17-819, 2018 WL 4963597, at *4 (E.D. La. Oct. 15, 2018).
[158] R. Doc. 258-1 at p. 2, 15-17.
[159] *See* La. Civ. Code art. 3492, repealed and replaced by article 3493.1 (effective July 1, 2024).

action."[160] One circumstance in which this doctrine applies is "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."[161] Unlike ratification, actual knowledge is not required for prescription to begin to run; constructive notice suffices.[162] The Louisiana Supreme Court has stated that "[w]hatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription."[163]

The Realtor provides evidence that that Plaintiffs received a statement from Gulf Coast Bank addressed to "Tung My LLC" in December 2020 or January 2021, and argues that that evidence should have been alerted Plaintiffs "that they needed to inquire as to the terms of the loan."[164] Plaintiffs do not dispute that they received the statement addressed to "Tung My LLC" in December 2020 or January 2021. Plaintiffs argue that the designation of the LLC in the statement received by Plaintiffs "did not disclose the actionable wrong," "a variable rate structure, a commercial guaranty, a multiple indebtedness mortgage, disputed signatures, allegedly unauthorized documents, or the mismatch between the Vietnamese transaction Plaintiffs understood and the English paper file Defendants now

[160] *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021).
[161] *Id.* (citation modified).
[162] *Id.*
[163] *Cartwright v. Chrysler Corp.*, 255 La. 597, 603–04, 232 So. 2d 285, 287 (1970).
[164] R. Doc. 258-1 at p. 17.

invoke."[165] Prescription, however, begins to run "from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim."[166] It is uncontested that Plaintiffs received a statement from Gulf Coast Bank in either December 2020 or January 2021 addressed to the LLC, which caused Plaintiff My Tran alarm.[167] Plaintiff Tran testified to her receipt of the statement.[168] Plaintiff testified that she then did make an inquiry by confronting her husband and thereafter sending a picture of the statement to the Mortgage Broker.[169] When asked to explain her concern, she testified that was upset about receiving the statement addressed to "My Tung, LLC."[170]

The Court finds that the receipt of this statement and Plaintiffs' actions thereafter in bringing it to her husband's attention and then calling the Mortgage Broker demonstrate that Plaintiffs had constructive notice enough to call for an inquiry about a claim in December 2020 or January 2021. Drawing all reasonable inferences in favor of Plaintiffs, a claim for negligent misrepresentation would have

---

[165] R. Doc. 268 at p. 7.
[166] *In re Taxotere*, 995 F.3d at 391 (emphasis in original).
[167] R. Doc. 258-3, *Deposition of My Thi Nhu Tran*, at pp. 12-13. ("So, when we moved in and then the end of the December, one day when I get home, I got the mails from the mailbox, and then I saw one letter that say My Tung, LLC. So I bring it there, and I slap it down on the table and confront my husband. So I ask him, you know, what is going on with my bank. Gulf Coast Bank is my personal bank. What did you do with it? How come I have it here — and — that's my personal bank and then — you know, Gulf Coast Bank is my personal bank. So what is it with My Tung, LLC letter here? How can you put your name in my personal bank?").
[168] *Id.*
[169] *Id.* ("And I took a photo, and I send it to Ms. Tuyet, because I thought that Ms. Tuyet, you know, let — loan me that amount.").
[170] *Id.* at pp. 13-14 ("Q: You got a piece of mail that said Tung My, LLC? A: My Tung, LLC. So I — always say it LLC, you know. So he text to Ms. Tuyet. So then I was so upset. I snap the phone, and I talk to Ms. Tuyet, so — you lent me – you loan me the money, but how come, you know, it has here My Tung, LLC?").

prescribed in January 2022. Suit was filed in this Court in August 2024.[171] "Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury,"[172] and because Plaintiffs had constructive notice in 2020 or 2021 by means of the Gulf Coast Bank statement addressed to the LLC and, indeed, made an inquiry regarding the contents of the statement shortly following receipt of the statement, their claim for negligent misrepresentation has prescribed. For that reason, the Court grants the Realtor's motion as to the negligent misrepresentation claim.

*C. Plaintiffs' Claim for Negligent Misrepresentation as to the Closing Agent*

The Closing Agent also seeks summary judgment on Plaintiffs' claims against it for negligent misrepresentation.[173] The Closing Agent argues that "Plaintiffs cannot point to any misrepresentations by TLL" which means that "there cannot be any actionable misrepresentation, negligent or intentional, if there was no communication between Sharrock and the Plaintiffs."[174] Plaintiffs argue that summary judgment should not be granted because a jury could conclude based on record evidence that the Closing Agent's "settlement and closing process conveyed that Plaintiffs were completing an authorized family home purchase, while the operative package instead closed a materially different structure: an LLC borrower, personal guaranties, multiple indebtedness mortgage, pledge of leases and rents, loan

[171] R. Doc. 1.
[172] *In re Taxotere*, 995 F.3d at 392.
[173] R. Doc. 282-1 at p. 30.
[174] *Id*. at p. 31.

purpose acknowledgment, and disbursement authorization identifying a variable rate nondisclosable business/investment loan."[175]

For a negligent misrepresentation claim, a plaintiff must show that there was "a legal duty on the part of the defendant to provide correct information."[176] "Whether a duty is owed is a question of law."[177] In this case, Plaintiffs have not established that there was any duty on behalf of the Closing Agent to counsel Plaintiffs on the terms of the loan or its structure. In Louisiana, "[t]he attorney-client relationship is contractual in nature and is based upon the express agreement of the parties as to the nature of work to be undertaken by the attorney."[178] It is undisputed that Lee Sharrock, of Trieu Law, LLC, was assigned to handle the closing and serve as the settlement agent.[179] This assignment did not create a duty to explain the terms of the mortgage to the purchasers of the home.[180]

While Plaintiffs have stated that duty is a jury issue based on record evidence,[181] Plaintiffs have identified no such law that imposes such a duty on closing agents or that any such duty is an issue of fact triable to a jury.[182] The record evidence of the facts of the present case do not give rise to such a duty under Louisiana law.

---

[175] R. Doc. 270 at p. 15.
[176] *Kadlec Med. Ctr*, 527 F.3d at 418.
[177] *Barrie v. V.P. Exterminators, Inc*., 625 So. 2d 1007, 1015 (La. 1993).
[178] *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 29, 262 So. 2d 350, 359 (1972).
[179] R. Doc. 270-1 at ¶¶ 32-33.
[180] *See Bergman v. New England Ins. Co.,* 872 F.2d 672, 675 (5th Cir. 1989) ("It is not unusual for the attorney representing one party to prepare the instruments which are to be signed by all parties. It would stun the practicing bar to learn that when an attorney did so, he or she became accountable as the attorney for all parties-signatory."); *see also Grand Isle Campsites, Inc*., 262 So. 2d at 359 ("it is not the duty of an attorney who is retained to check a title on property and pass an act of sale to investigate the preliminary negotiations of the parties and involve himself in questions of how the parties arrived at the stated price.").
[181] R. Doc. 270 at p. 16 ("Duty And Reliance Are Jury Issues on This Record").
[182] *Barrie*, 625 So. 2d at 1015 ("Whether a duty is owed is a question of law.").

Having found that the Closing Agent owed no duty as a matter of law to provide any such information regarding the mortgage type or interest rate based on these facts, the Court need not address any evidence regarding any justifiable reliance on statements made by the Closing Agent or any evidence of reliance—justifiable or otherwise—on representations or omissions by the Closing Agent. The Court grants the Closing Agent's Motion as to Plaintiffs' claim for negligent misrepresentation.

**4. Plaintiffs' Claims for Breach of Fiduciary Duty**

Plaintiffs assert a claim for breach of fiduciary duty against the Mortgage Broker and against the Realtor.[183]

Under Louisiana law, the elements of a breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the duty by the fiduciary; and (3) damages resulting from the breach.[184]

A fiduciary duty requires a fiduciary relationship.[185] "A fiduciary relationship has been described as one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other.'"[186]

> One is said to act in a fiduciary capacity when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other.[187]

---

[183] R. Doc. 231 at p. 41.
[184] *United States Small Business Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003) (citing *Omnitech Int'l, Inc. v. The Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994)).
[185] *Scheffler v. Adams & Reese, LLP*, 950 So.2d 641, 647 (La. 2007) (citation modified).
[186] *Id.* (quoting *Plaquemines Par. Commission Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1040 (La. 1987)) (citation modified).
[187] *Id.* (quoting *State v. Hagerty*, 251 La. 477, 493 (La. 1967)) (citation modified).

"Whether a fiduciary duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties."[188]

*A. Plaintiffs' Breach of Fiduciary Duty Claim as to the Mortgage Broker*

The Mortgage Broker contends that she is entitled to summary judgment on Plaintiffs' breach of fiduciary claim because Louisiana law does not impose a fiduciary duty on her.[189] The Mortgage Broker argues that the Plaintiffs are requesting that the Court "convert a standard broker-client relationship into a fiduciary one solely because Plaintiffs had limited English proficiency and purportedly relied on Samantha[ ] [Tran's] Vietnamese communications."[190] Plaintiffs respond that the special circumstances of this case support the existence of a fiduciary relationship, such as the fact that Plaintiffs could not read or understand loan documents in English, that no written loan documents were provided in Vietnamese, and that the Mortgage Broker knew that Plaintiff Vo's English was "very limited."[191]

Under Louisiana law, whether a fiduciary duty existed between the parties is a question of law.[192] However, because the existence of a fiduciary duty, or lack thereof, is dependent on the facts and circumstances of the case and the relationship of the parties, the Court must consider the facts and circumstances of the present action to determine if there is a genuine issue of material fact that warrants denial of the motion for summary judgment. While an intermediate Louisiana appellate

---

[188] *Hunters Run Gun Club, LLC v. Baker*, 2019 WL 3400696, at *4 (M.D. La. July 26, 2019) (quoting *Scheffler*, 950 So.2d at 647) (citation modified).
[189] R. Doc. 256-1 at p. 18.
[190] *Id.*
[191] R. Doc. 267 at p. 19.
[192] *Coastal Bridge Co., L.L.C. v. Overall*, 2025-0491 (La. App. 1 Cir. 1/9/26).

court has stated that a mortgage broker did not owe "a duty to advise the [party] as to the use of an escrow account," Louisiana courts have not addressed a factual situation similar to the one at present.[193]

The evidence in this case includes a mortgage broker making representations to borrowers "in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other."[194] The evidence in the record support that the Mortgage Broker in this case "met with Plaintiffs throughout the loan process to explain in Vietnamese the structure, terms, and conditions of the loan," "explained in Vietnamese that Plaintiffs did not qualify for a conventional residential mortgage and the terms of the adjustable-rate mortgage available to them, including the use of an LLC, and changes to the loan resulting from appraisal," was "present as an agent" at the closing, and "discussed general matters related to the closing with Plaintiffs" at the closing.[195] Plaintiffs state in their affidavit that the Mortgage Broker was aware of their "vulnerable position" and that they "relied" on her "for honest, accurate, and transparent assistance."[196] The evidence before the Court raises factual issues which raise an issue whether the Mortgage Broker in this case owed Plaintiffs a fiduciary duty. The Mortgage Broker's conclusory statement that the routine mortgage "origination functions do not, without more, transform Defendants into fiduciaries or impose on them duties beyond those recognized for a

[193] *Barnes v. Bass*, 933 So. 2d 241, 244 (La. App. 3 Cir. 6/7/06), *writ denied*, 939 So. 2d 1278 (La. 10/27/06).
[194] *Scheffler*, 950 So.2d at 647 (quoting *State v. Hagerty*, 251 La. 477, 493 (La. 1967)) (citation modified).
[195] R. Doc. 267-5, *The Mortgage Broker's Responses to Plaintiffs' First Set of Interrogatories*, at p. 4, 6.
[196] R. Doc. 267-4, *Joint Affidavit of Plaintiffs*, at ¶ 6.

standard broker-borrower relationship" fails to cite to any binding authority and does not specifically apply Louisiana law's standard for when a fiduciary relationship comes into being.[197]

The Court agrees with Plaintiffs that the issues of breach of a fiduciary duty, causation, and damages are questions of fact necessarily within the province of the jury as factfinder as to the claims asserted against the Mortgage Broker.[198] Plaintiffs have demonstrated that a material fact exists as to whether the Mortgage Broker breached the fiduciary duty owed to Plaintiffs by her actions in the sale of the house at issue, whether such alleged breach caused any damage, and what, if any, damages were sustained.[199] Accordingly, the Court denies the Mortgage Broker's Motion as to this claim.

*B. Plaintiffs' Breach of Fiduciary Duty Claim as to the Realtor*

Plaintiffs additionally assert a claim for breach of fiduciary duty against the Realtor. The Realtor argues that Plaintiffs have no evidence that the Realtor breached any fiduciary duty owed to them and that, as a result, the Court should grant summary judgment in its favor on this claim.[200] The Realtor additionally contends that Plaintiffs' claim for breach of fiduciary duty has prescribed because it is subject to a one-year prescriptive period due to the allegation of a breach of the duty of care.[201]

---

[197] R. Doc. 272 at p. 6.
[198] R. Doc. 267 at p. 12.
[199] *See, e.g.*, R. Doc. 267-8, *Deposition of Tung Duc Vo*, at pp. 7, 17
[200] R. Doc. 258-1 at p. 10.
[201] *Id*. at pp. 15-16.

Plaintiffs respond that Louisiana law imposes a duty on the Realtor as Plaintiffs' real estate licenses to "promote the client's best interests, seek a transaction at terms acceptable to the client, and exercise reasonable skill and care in performing brokerage services" and to avoid both negligence and fraudulent misrepresentation[s] of material information."[202] Plaintiffs state that, in this case, the Realtor "assumed that role for clients she knew could not evaluate English documents, she had a duty to use reasonable care in communicating material transaction facts and to avoid allowing her clients to proceed under a material misunderstanding she knew or should have recognized."[203] As to prescription, Plaintiffs maintain that their claim is not prescribed because their allegation is not that "Baird made a careless real estate mistake. It is that she was Plaintiffs' Vietnamese speaking buyer agent, knew they sought a family home, knew they could not read English transaction documents, communicated or reinforced financing related information, remained involved through closing, and failed to protect them from an LLC based commercial structure they did not understand, authorize, or knowingly approve."[204]

The Court addresses the Realtor's final argument—liberative prescription—first. "Under Louisiana law, a claim for breach of a fiduciary duty is generally personal and prescribes in ten years, and a negligence claim is delictual and prescribes in one year."[205] However, "if a plaintiff fails to allege self-dealing, breach

[202] R. Doc. 268 at p. 9 (citing La. R.S. 9:3893(A) and (E))
[203] *Id.* at p. 10.
[204] *Id.* at p. 8.
[205] *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 478 (5th Cir. 2002).

of the duty of loyalty, fraud, or breach of trust on the part of his fiduciary, the plaintiff's claim sounds in negligence and is subject to a one-year prescriptive period."[206] The Court finds that Plaintiffs' claim for breach of fiduciary duty is delictual in essence because Plaintiffs allege that the Realtor "had a *duty to use reasonable care* in communicating material transaction facts and to avoid allowing her clients to proceed under a material misunderstanding she knew or should have recognized" and breached that duty.[207] In *Copeland v. Wasserstein, Perella & Co.*, the Fifth Circuit found that a plaintiff's breach of fiduciary duty claim that the defendant "allegedly knew or should have known, but failed to disclose, facts key to shaping [plaintiff's] understanding of the transaction and his willingness to go forward with it" was a delictual claim, subject to the one-year prescription period.[208] While Plaintiffs' Fifth Amended Complaint asserts several allegations of breaches by Baird, Plaintiffs premise them all on Baird's "duty to promote Plaintiffs' best interests and to exercise reasonable care, skill, diligence, loyalty, and good faith in the performance of her duty."[209] This Court agrees that Plaintiffs' claim at its core is a violation of the professional duty of care. Thus, the claim is subject to the one-year liberative prescriptive period for delictual actions arising prior to July 1, 2024.[210]

For the same reasons as those related to Plaintiffs' claim for negligent misrepresentation against the Realtor, the Court finds that the prescriptive period

[206] *Id.*
[207] R. Doc. 268 at p. 10 (emphasis added).
[208] 278 F.3d at 478.
[209] *See* R. Doc. 231 at ¶ 185.
[210] *See* La. Civ. Code art. 3492, repealed and replaced by article 3493.1 (effective July 1, 2024).

began to run in December 2020 or January 2021 due to Plaintiffs' receipt of a statement from Gulf Coast Bank identifying the LLC.[211] Drawing all reasonable inferences in favor of Plaintiffs, a breach of fiduciary duty claim would have prescribed in January 2022. The Court thus finds that Plaintiffs' claim for breach of fiduciary duty against the Realtor has prescribed and grants summary judgment on this claim in Nga Baird and New World Realty, LLC's favor.[212]

**5. Plaintiffs' Claims for Civil Conspiracy**

Plaintiffs assert claims for civil conspiracy against the Mortgage Broker, the Realtor, and the Closing Agent. The Court addresses each in turn.

A claim for civil conspiracy under Louisiana law is rooted in Civil Code Article 2324. That Article does not by itself impose liability for a civil conspiracy.[213] Instead, the actional element under Article 2324 is the tort which the conspirators agreed to and ultimately perpetrate.[214] For a claim of civil conspiracy under Louisiana law a plaintiff must show that: (1) an agreement existed to commit an illegal or tortious act; (2) the act was actually committed; (3) the act caused the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.[215]

---

[211] *See supra* Section 3.B.
[212] Realtor separately argues that Plaintiffs "cannot establish that they justifiably relied on any alleged misrepresentation by Ms. Baird. Nor can they establish any of her supposed breach of fiduciary duty. Plaintiffs have no evidence, for example, that Ms. Bair knew that plaintiffs were entering into a loan agreement that they did not understand or that differed from their understanding of the terms." R. Doc. 258-1 at p. 10. In light of the Court's finding that the claim is time-barred, the Court does not address Defendants' substantive arguments as to this claim.
[213] *Thames v. Thames*, 196 So.3d 653, 655 (La. App. 2 Cir. 2016) (citing *Haygood v. Dies*, 174 So.3d 1211 (La. App. 2d Cir. 2015)).
[214] *Id.* (citing *Haygood*, 174 So.3d at 1211).
[215] *Jeff Mercer, LLC v. State ex rel. Dep't of Transp. & Dev.*, 222 So.3d 1017, 1024 (La. App. 2 Cir. 2017) (collecting cases).

*A. Plaintiffs' Civil Conspiracy Claim as to the Mortgage Broker*

The Mortgage Broker argues that she is entitled to summary judgment on Plaintiffs' claim for civil conspiracy because (1) no underlying actionable tort has been established against the Defendants, and (2) there is no evidence of an agreement to commit an intentional tort.[216] Plaintiffs respond that the "record supports a triable underlying intentional or willful act" and that "the summary judgment record permits a reasonable jury to find coordinated action."[217] They contend that the Mortgage Broker's Motion should be denied "[b]ecause genuine disputes exist as to the disputed loan and LLC documents, the LLC borrower structure, the commercial/investment classification, Plaintiffs' authorization, and [Defendants'] participation in implementing the challenged transaction."[218]

The Court addresses the Mortgage Broker's second argument—no evidence of an agreement between defendants— first. To prove such a conspiracy, a plaintiff must demonstrate that "an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury" and that there was also "an agreement as to the intended outcome or result."[219] Put differently, "the plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing."[220] The Mortgage Broker has pointed to the lack of record evidence that

[216] R. Doc. 256-1 at pp. 21-22.
[217] R. Doc. 267 at pp. 22-23.
[218] *Id*. at p. 24
[219] *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. App. 1 Cir. 4/8/98), *writ denied*, 721 So. 2d 473 (La. 6/19/98).
[220] *Thomas v. N. 40 Land Dev., Inc*., 894 So. 2d 1160, 1174 (La. App. 4 Cir. 1/26/05).

there was any agreement or "meeting of the minds" between Defendants to tortiously wrong Plaintiffs.[221]

While Plaintiffs contend that a "reasonable jury could find that the coordinated use of the disputed structure and documents caused Plaintiffs to enter a materially different and more burdensome transaction than the residential family home financing they sought," Plaintiffs have not pointed to any evidence in the record to support this statement. The record contains no evidence that demonstrates that there was either collusion or a meetings of the minds "for the purpose of committing wrongdoing."[222] While the Court acknowledges that an agreement may be inferred based on the "assistance and encouragement" of Defendants, such evidence is not present here.[223] Drawing all reasonable inferences in favor of the Plaintiffs, Plaintiffs cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[224]

Plaintiffs' arguments that an "agreement or common design may be proven circumstantially" are correct, but Plaintiffs then support that statement with conclusory statements of what a jury "may" or "could" find.[225] These unsubstantiated assertions are not enough to defeat a motion for summary judgment. As a result, the

---

[221] R. Doc. 256-1 at pp. 21-22.
[222] R. Doc. 267 at p. 24; quoting *Thomas*, 894 So. 2d at 1174.
[223] *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995) (applying Louisiana law).
[224] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[225] R. Doc. 267 at p. 24.

Court finds that the Mortgage Broker is entitled to summary judgment on Plaintiffs' claim regarding a civil conspiracy.

*B. Plaintiffs' Civil Conspiracy Claim as to the Realtor*

The Realtor also seeks summary judgment on the claim for liability for a civil conspiracy under Article 2324.[226] Plaintiffs counter that the evidence viewed in the light most favorable to them demonstrates that there is a genuine issue of material fact regarding an agreement among the Defendants.[227] Because the record here, like the Mortgage Broker's motion, contains a lack of evidence regarding any agreement among Defendants, the Court likewise grants summary judgment in favor of the Realtor on the claim for solidary liability under Article 2324 for civil conspiracy. Additionally, no delictual claim against the Realtor survived summary judgment, and for that additional reason, Plaintiffs cannot recover from the Realtor as a result of a civil conspiracy.[228]

*C. Plaintiffs' Civil Conspiracy Claim as to the Closing Agent*

The Closing Agent seeks summary judgment on the claim for liability for a civil conspiracy under Article 2324.[229] Plaintiffs similarly counter that the evidence viewed in the light most favorable to them demonstrates that there is a genuine issue of material fact regarding an agreement among the Defendants.[230] Because the record

---

[226] R. Doc. 258-1 at pp. 11-12.
[227] R. Doc. 268 at pp. 14-15.
[228] *In re Willow Bend Ventures, LLC*, No. CV 18-6910, 2019 WL 2289460, at *5 (E.D. La. May 28, 2019) (Ashe, J.) (finding that a civil conspiracy claim did not survive when the underlying tort claim had been dismissed).
[229] R. Doc. 282-1 at pp. 31-33.
[230] R. Doc. 270 at pp. 17-18 ("TLL also demands more than Rule 56 requires. Plaintiffs need not produce a written agreement or direct admission that TLL joined a scheme.")

here, like the Mortgage Broker's and the Realtor's motions, contains a lack of evidence regarding any agreement among Defendants, the Court likewise grants summary judgment in favor of the Closing Agent on the claim for solidary liability under Article 2324 for civil conspiracy.[231] Additionally, no delictual claim against the Closing Agent survived summary judgment, and for that additional reason, Plaintiffs cannot recover from the Realtor as a result of a civil conspiracy.[232]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Mortgage Broker's Motion for Summary Judgment[233] is **GRANTED in part** and **DENIED in part**. It is **DENIED** as to the Plaintiffs' claim for breach of fiduciary duty and for negligent misrepresentation. It is, in all other respects, **GRANTED**.

**IT IS FURTHER ORDERED** that the Realtor's Motion for Summary Judgment[234] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Closing Agent's Motion for Summary Judgment[235] is **GRANTED**.

New Orleans, Louisiana, September 18, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[231] While Plaintiffs present evidence of emails among the Defendants preparing the closing (R. Doc. 270-9), these emails support neither an argument nor an inference among the Defendants to commit a tort against Plaintiffs. The Court notes that the Closing Agent objects to their consideration (R. Doc. 274 at pp. 2-3); however, the Court need not resolve that objection having found that the claim for conspiracy liability does not survive as to the Closing Agent.
[232] *In re Willow Bend Ventures, LLC*, 2019 WL 2289460, at *5.
[233] R. Doc. 256.
[234] R. Doc. 258.
[235] R. Doc. 282.